UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE,<br><br>    Plaintiff,<br><br>  v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al.*,<br><br>    Defendants. | Civil Action No. 21-1054 (RDM) |

**NOTICE OF DEFENDANTS' INTENDED RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The Federal Bureau of Investigation ("FBI") and U.S. Department of Justice (collectively, "Defendants"), by and through undersigned counsel, submit this Notice of Defendants' Intended Response to Plaintiff's Motion for Summary Judgment. Plaintiff Cato Institute ("Plaintiff") is not entitled to summary judgment on its complaint alleging that Defendants violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by failing to produce requested records because Plaintiff failed to "reasonably describe" records sought in a manner that the FBI can search for, process, and release non-exempt records without an undue burden for the reasons set forth below.

**BACKGROUND**

  **I.**  **FBI Assessments**

On September 29, 2008, then Attorney General Michael Mukasey released the Attorney General's Guidelines for Domestic FBI Operations (the "Guidelines") to assist the FBI with performing its domestic duties. *See* https://www.justice.gov/archive/opa/docs/guidelines.pdf. The

FBI's Domestic Investigations and Operations Guide ("Operations Guide")[1]—issued on December 16, 2008, the public version of which was most recently updated on September 28, 2016—implements the Guidelines. There are two FBI investigative categories authorized by the Guidelines: assessments and predicated investigations. Guidelines § II at 17–18. Guidelines Section II.A.1 provides that "[a]ssessments may be carried out to detect, obtain information about, or prevent or protect against federal crimes or threats to the national security or to collect foreign intelligence." *Id*. at 19; *see also N.Y. Times Co. v. FBI*, 822 F. Supp. 2d 426, 428 (S.D.N.Y. 2011). There are presently five types of assessments "that may be carried out for the purposes of detecting, obtaining information about, or preventing or protecting against Federal crimes or threats to the national security or to collect foreign intelligence": Type 1 & 2 Assessments,[2] Type 3 Assessments, Type 4 Assessments, Type 5 Assessments, and Type 6 Assessments. Operations Guide at 5-7 to 5-8.

As relevant here, Type 1 & 2 Assessments "[s]eek information, proactively or in response to investigative leads, relating to activities—or the involvement or role of individuals, groups, or organizations relating to those activities—constituting violations of Federal criminal law or threats to the national security[.]" *Id*. at 5-8. Type 3 Assessments "[i]dentify, obtain and utilize information about actual or potential national security threats or Federal criminal activities, or the vulnerability to such threats or activities[.]" *Id*. at 5-8. The methods that can be used for an

---

[1] Electronically available at: https://vault.fbi.gov/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29%202016%20Version/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29%202016%20Version%20Part%2001%20of%2002/view.

[2] Type 1 & 2 Assessments were originally different categories of assessments but have since been consolidated into one category. Operations Guide at 5-8 n.5.

assessment include, among others: (1) the use of "online services and resources"; (2) "observation or surveillance not requiring [a] court order"; and (3) interviews of or requests for information from "members of the public and private entities." Guidelines at 20.

## II.   Plaintiff's FOIA Request

On September 10, 2020, Plaintiff, through Patrick G. Eddington, submitted a FOIA request to the FBI seeking "copies of all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the . . . [Operations Guide]) opened since September 29, 2008." Compl. Ex. A. On October 2, 2020, the FBI denied Plaintiff's request as "overly broad" and not in compliance "with the requirements of 28 CFR § 16.3(b),[3] as it does not provide enough detail to enable personnel to locate records 'with a reasonable amount of effort.'" Compl. Ex. B. The FBI provided Plaintiff with an email address and website "[f]or questions on how to reasonable describe [its] request[.]" The FBI also informed Plaintiff of its appeal rights and to direct any appeal to the Director of the Department of Justice's Office of Information Policy. Plaintiff appealed and the Department affirmed the FBI's denial on February 25, 2021. Compl. Ex. E. The Office of Information Policy advised Plaintiff "[i]f you would like to narrow the scope of your request, please contact the FBI directly." *Id*.

## III.   Procedural History

On April 15, 2021, Plaintiff sued Defendants alleging that Defendants violated FOIA by failing to produce records in response to its FOIA request (Count I) and by failing to conduct a reasonable search (Count II). Defendants answered and the FBI disclosed that the assessments potentially responsive to Plaintiff's FOIA request were housed in over 70,000 files, estimated to

---

[3]   That provision provides, in pertinent part, "[r]equesters must describe the records sought in sufficient detail to enable Department personnel to locate them with a reasonable amount of effort." 28 C.F.R. § 16.3(b).

contain several million pages.[4] The parties thereafter engaged in discussions regarding narrowing the scope of Plaintiff's request.

The FBI first proposed processing a sampling of the opening document in a specified number of assessment files to narrow the request. Plaintiff countered with a proposal that the FBI believed was unreasonably burdensome. In response, on September 21, 2021, the FBI offered Plaintiff four new proposals for narrowing:

1) narrow the request to closed cases from specific publicly available case classifications (a list of which was provided to Plaintiff) of interest to Plaintiff;

2) narrow the request to closed cases from a few locations where an assessment was opened (e.g., FBI Headquarters or a few of the 56 field offices);

3) narrow the request to the opening electronic communication and closing electronic communication in closed cases, which pertain to why an assessment was opened and closed; or

4) narrow the request to closed cases opened during a specific date range.

The FBI also informed Plaintiff that it was open to considering one or any combination of the referenced four proposals.

On November 10, 2021, Plaintiff rejected the FBI's proposals. In the November 12, 2021 Joint Status Report (ECF No. 16), Plaintiff requested that the Court schedule a pre-motions conference. On November 19, 2021, the Court scheduled a pre-motions conference for December 3, 2021 and ordered Plaintiff to file a notice setting forth the basis for its anticipated motion for summary judgment by November 22, 2021 and Defendants to file a notice setting forth the intended response by November 29, 2021. In its Notice of Issues for Summary Judgment (ECF No. 17-1), Plaintiff states that it is entitled to summary judgment because its FOIA "request

---

[4] The FBI used its case management system, Sentinel, to determine the number of Type 1 & 2 and Type 3 assessments opened from September 29, 2008 through May 24, 2021 (the date of the FBI's search to determine the number of Type 1 & 2 and Type 3 assessments).

reasonably describes the records sought, and . . . Defendants failure to conduct a search, produce responsive records or issue a determination violate FOIA." Notice of Issues for Summ. J. ¶ 8. Plaintiff has not shown entitlement to summary judgment for the following reasons.

## ANTICIPATED ARGUMENT

An agency's obligation to produce records under FOIA is only triggered by a proper request, which must "reasonably describe" the records sought, *see* 5 U.S.C. § 552(a)(3)(A), and Plaintiff's FOIA request does not do so. As this Court has explained, "to reasonable describe a record, a FOIA request must alert the agency [to] what has 'been requested and the nature of the information sought.'" *Edmond v. United States*, Civ. A. No. 17-2611, 2018 WL 6068417, at *2 (D.D.C. Nov. 19, 2018) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982)). But that alone is not always sufficient. Requests "may still be unreasonable if they remain so broad as to 'impose an unreasonable burden upon the agency.'" *Id*. (quoting *Am. Fed'n of Gov't Emps. v. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990)); *see also Brown v. Wash. Metro. Area Transit Auth.*, Civ. A. No. 19-2853, 2020 WL 806197, at *9 (D.D.C. Feb. 18, 2020) ("This Circuit has . . . considered the burden that production of requested documents would impose on an agency in determining whether an agency response was required.").[5]

Plaintiff's FOIA request is defective in both respects. First, like Requests 3A and 3B in *American Federation of Government Employees*, Plaintiff's request does not "'reasonably describe[]' a class of documents subject to disclosure, as required by 5 U.S.C. § 552(a)(3)(A)."

---

[5] Of course, Plaintiff will likely disagree that the undue burden inquiry emanates from FOIA's "reasonably describes" requirement. Regardless, it is beyond cavil that "[c]ourts . . . have held that agencies are excused from complying with FOIA requests where 'review[ing], redact[ing], and arrang[ing] for inspection [of] a vast quantity of material' presents an unreasonable burden." *Long v. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39, 55-56 (D.D.C. 2015) (citations omitted).

907 F.2d at 209. Rather, Plaintiff requests "all Type 1, Type 2, and Type 3 FBI assessments" as defined in the Operations Guide. An "assessment" is not a specific document but a type of investigative activity that may be used when the FBI obtains an "allegation or information" or an "articulable factual basis" concerning federal crimes or threats to the national security. Operations Guide at Section 5. Even though Plaintiff has not publicly disagreed, *see* Ex. A (FBI 'Assessments': Cato FOIA Lawsuit Edition (incorrectly characterizing an assessment as a "non-investigation investigation")),[6] Plaintiff failed to define the term "Assessment" "leaving unanswered how broadly it thinks an objective agency professional should construe the term[]," *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 62 (D.D.C. 2013), considering an "Assessment" is not a "record," which is defined under FOIA as "information" and not an activity. *See* 5 U.S.C. § 552(f). Indeed, Plaintiff's proposed search also seeks records generated pursuant to sensitive investigative matters, *assessments*, or undisclosed participation, as defined in the Operations Guide.

Second, even if Plaintiff's request can be construed to identify specific records, it is so broad as to impose an unreasonable burden on the FBI for at least two reasons, especially considering Plaintiff's public statement that its FOIA request was only an "attempt to get updated numbers of FBI 'Assessments' by type," *see* Ex. A:

- *Initial Processing*: The FBI estimates that it would take well over a thousand days to retrieve files, review each file for responsiveness, and import all responsive files into its FOIA Document Processing System ("FDPS").

- *Processing Records in FDPS*: To process the responsive records, the FBI would have to coordinate with subject matter experts, such as special agents, intelligence analysts, other FBI employees who are experts in specific operational or technical subject matter, as well as FBI personnel in the office that opened the assessment to ensure the FBI's equities are properly protected.

---

[6]   *See* Ex. A attached hereto and electronically available at https://www.cato.org/blog/fbi-assessments-cato-foia-lawsuit-edition (last accessed Nov. 26, 2021).

This would take significant time away from the FBI fulfilling its mission. Processing is estimated to take several decades—based on processing the estimated several million pages at the FBI's standard rate of 500 pages per month—at a significant cost to the FBI.

## CONCLUSION

For the foregoing reasons, Plaintiff will not be able to establish entitlement to summary judgment.

Dated: November 29, 2021
Washington, DC

        Respectfully submitted,

        MATTHEW M. GRAVES, D.C. Bar #481052
        United States Attorney

        BRIAN P. HUDAK
        Acting Chief, Civil Division


        By:    /s/ *Michael A. Tilghman II*
            MICHAEL A. TILGHMAN II
            D.C. Bar #988441
            Assistant United States Attorney
            555 Fourth Street, NW
            Washington, DC 20530
            (202) 252-7113
            Michael.Tilghman@usdoj.gov

        *Attorneys for the United States of America*