UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-1054 (RDM) |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION, ) | |
| *et al*., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 1

LEGAL STANDARD............................................................................................................. 4

ARGUMENT ........................................................................................................................ 5

     I.   The Meaning of the Term "Reasonably Describes" as used in FOIA ............................. 5

     II.  Plaintiff's Request Is Improper Because It Would Impose an Undue Burden on the FBI
         to Fulfill. ......................................................................................................... 8

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Gov't Emps., Local 2782 v. Dep't of Commerce,*
  907 F.2d 203 (D.C. Cir. 1990) ............................................................................... 7, 9

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .................................................................................................. 4

*Brayton v. Office of U.S. Trade Rep.,*
  641 F.3d 521 (D.C. Cir. 2011) ................................................................................. 4

*Bristol-Myers Co. v. FTC,*
  424 F.2d 935 (1970) .................................................................................................. 5

*Brown v. Wash. Metro. Area Transit Auth.,*
  Civ. A. No. 19-2853, 2020 WL 806197 (D.D.C. Feb. 18, 2020) ........................... 7-8

*Byrnes v. Dep't of Just.,*
  Civ. A. No. 19-0761, 2021 WL 5422281 (D.D.C. Sept. 29, 2021) ......................... 7

*Cause of Action Inst. v. Dep't of Just.,*
  999 F.3d 696 (D.C. Cir. 2021) ................................................................................. 1

*Chiquita Brands Int'l, Inc. v. SEC,*
  806 F.3d 289 (D.C. Cir. 2015) ................................................................................. 6

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) .................................................................................................. 4

*Crisman v. Dep't of Just.,*
  332 F. Supp. 3d 139 (D.D.C. 2018) (TSC) ............................................................. 12

*Defenders of Wildlife v. U.S. Border Patrol,*
  623 F. Supp. 2d 83 (D.D.C. 2009) ........................................................................... 4

*Edmond v. United States,*
  Civ. A. No. 17-2611, 2018 WL 6068417 (D.D.C. Nov. 19, 2018) ......................... 8

*Evans v. BOP,*
  951 F.3d 578 (D.C. Cir. 2020) ................................................................................. 5

*FCC v. AT&T Inc.,*
  562 U.S. 397 (2011) .................................................................................................. 6

*Founding Church of Scientology, Inc. v. Nat'l Sec. Agency*,
  610 F.2d 824 (D.C. Cir. 1979) ……………………………………………………9

*Goland v. CIA*,
  607 F.2d 339 (D.C. Cir. 1978) .................................................................................. 9

*Halpern v. FBI*,
  181 F.3d 279 (2d Cir. 1999).................................................................................... 8

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
  608 F.2d 1381 (D.C. Cir. 1979) .............................................................................. 4

*Int'l Counsel Bureau v. Dep't of Defense*,
  723 F. Supp. 2d 54 (D.D.C. 2010) (JDB) .............................................................. 13

*Irons v. Schuyler*,
  465 F.2d 608 (D.C. Cir. 1972) ................................................................................ 5

*Keeping Gov't Beholden, Inc. v. Dep't of Just.*,
  Civ. A. No. 17-1569, 2021 WL 5918627 (D.D.C. Dec. 13, 2021) .................................. 4, 7, 10

*King v. Dep't of Just.*,
  830 F.2d 210 (D.C. Cir. 1987) ................................................................................ 5

*Kowalczyk v. Dep't of Just.*,
  73 F.3d 386 (D.C. Cir. 1996) .................................................................................. 8

*Leopold v. Dep't of Just.*,
  301 F. Supp. 3d 13 (D.D.C. 2018) ........................................................................... 7

*Leopold v. Immigration & Customs Enf't*,
  Civ. A. No. 18-2415, 2021 WL 4243401 (D.D.C. Sept. 17, 2020) ........................................ 4

*Long v. Immigration & Customs Enforcement*,
  149 F. Supp. 3d 39 (D.D.C. 2015) ...................................................................... 12-13

*Marks v. Dep't of Just.*,
  578 F.2d 261 (9th Cir. 1978) .............................................................................. 7, 8

*McGehee v. CIA*,
  697 F.2d 1095 (D.C. Cir. 1983) .............................................................................. 7

*Media Research Ctr. v. U.S. Dep't of Just.*,
  818 F. Supp. 2d 131 (D.D.C. 2011) .......................................................................... 4

*Moore v. Aspin*,
  916 F. Supp. 32 (D.D.C. 1996) .......................................................................... 4

*Moore v. Bush*,
  601 F. Supp. 2d 6 (D.D.C. 2009) ..................................................................... 4-5

*Nat'l Sec. Counselors v. CIA*,
  960 F. Sup. 2d 101 (D.D.C. 2013) ...................................................................... 8

*Nat'l Sec. Counselors v. CIA*,
  969 F.3d 406 (D.C. Cir. 2020) ........................................................................ 7, 9

*Nation Magazine v. United States Customs Service*,
  71 F.3d 892 (D.C. Cir. 1995) ......................................................................... 9, 10

*People for Am. Way Foundation v. United States Dep't of Just.*,
  451 F. Supp. 2d 6 (D.D.C. 2006) ................................................................... 13-15

*Public Emples. For Envtl. Responsibility v. EPA*,
  314 F. Supp. 3d 68 (D.D.C. 2018) ................................................................. 8, 10

*Rojas-Vega v. U.S. Immigration & Customs Enf't*,
  302 F. Supp. 3d 300 (D.D.C. 2018) ................................................................... 4

*Ruotolo v. Dep't of Just., Tax Div.*,
  53 F.3d 4 (2d Cir. 1995) ..................................................................................... 8

*Strum v. EPA*,
  Case Nos. 91-354040, 91-35577, 1992 WL 197660 (9th Cir. Aug. 17, 1992) .......................... 8

*Truitt v. Dep't of State*,
  897 F.2d 540 (D.C. Cir. 1990) ............................................................................ 6

*Wolf v. CIA*,
  569 F. Supp. 2d 1 (D.D.C. 2008) ...................................................................... 10

*Yeager v. DEA*,
  678 F.2d 315 (D.C. Cir. 1982) ............................................................................ 8

**Statutes**

5 U.S.C. § 552 ....................................................................................................... 1

5 U.S.C. § 552(a)(3)(A) ..................................................................................... 5, 8

5 U.S.C. § 552(c) ......................................................................................... 1, 11, 12

**Other Authorities**

Attorney General's Memorandum on the 1974 Amendments to FOIA ......................................... 6

H. Rep. No. 93-876 ................................................................................................................. 6, 7

Pub. L. No. 90-23, 81 Stat. 54 (1967) ........................................................................................ 5

**Regulations**

28 C.F.R. § 16.3(b) ................................................................................................................... 3

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................ 4

## INTRODUCTION

Plaintiff Cato Institute ("Plaintiff") is a non-profit organization that requests for this Court to compel Defendant Federal Bureau of Investigation (the "FBI") to comply with its request submitted under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for all Type 1, 2 and 3 Assessments since September 29, 2008—located electronically or in hard copy format across the FBI's national and internal offices—irrespective of whether the records are exempt from FOIA under 5 U.S.C. § 552(c). Plaintiff does not seek to compensate the FBI for the gigantean effort that the FBI estimates would cost it at least $31,586,045.00 and approximately 1,301,444 hours to complete; it claims entitlement to a fee waiver because the requested information is in the public's interest. FOIA, however, "does not allow a requester to go fishing for a file and reel in the file cabinet," *Cause of Action Inst. v. Dep't of Just.*, 999 F.3d 696, 706 (D.C. Cir. 2021) (Judge Rao, concurring), as Plaintiff attempts to do here. Rather FOIA requires a Plaintiff to submit a FOIA request that does not require an unreasonably burdensome search and permits agencies, like the FBI, to refuse to honor requests that would require such a search and undue processing burden. Because fulfilling Plaintiff's FOIA request would require the FBI to engage in an unreasonably burdensome search and Plaintiff's request would be unduly burdensome to process, the Court should grant Defendants' Motion for Summary Judgment.

## BACKGROUND

### I.  FBI Assessments

On September 29, 2008, then Attorney General Michael Mukasey released the Attorney General's Guidelines for Domestic FBI Operations (the "Guidelines") to assist the FBI with performing its domestic duties. Statement of Undisputed Material Facts ("SUMF") ¶ 1. There are two FBI investigative categories authorized by the Guidelines: assessments and predicated investigations. SUMF ¶ 2. Guidelines Section II.A.1 provides that "[a]ssessments may be carried

out to detect, obtain information about, or prevent or protect against federal crimes or threats to the national security or to collect foreign intelligence." SUMF ¶ 3. There are presently five types of assessments "that may be carried out for the purposes of detecting, obtaining information about, or preventing or protecting against Federal crimes or threats to the national security or to collect foreign intelligence": Type 1 & 2 Assessments, Type 3 Assessments, Type 4 Assessments, Type 5 Assessments, and Type 6 Assessments. SUMF ¶ 4.

As relevant here, the FBI's Domestic Investigations and Operations Guide ("Operations Guide") implements the Guidelines. SUMF ¶ 1. The Operations Guide "defines Type 1 & 2 Assessments as 'seeking information, proactively or in response to investigative leads, relating to activities—or the involvement or role of individuals, groups, or organizations relating to those activities—constituting violations of Federal criminal law or threats to the national security (i.e., the prompt checking of leads on individuals, activity, groups, or organizations.'" SUMF ¶¶ 1, 5. The Guidelines "originally separated Type 1 and 2 Assessments" but those "Assessments were later merged into one type (named a 'Type 1 & 2 Assessment')." SUMF ¶ 6.

The Operations Guide "defines Type 3 Assessments as 'identify[ing], obtain[ing] and utilize[ing] information about actual or potential national security threats or Federal criminal activities, or the vulnerability to such threats or activities.'" SUMF ¶ 7. "Type 3 Assessments may be used to analyze or determine whether particular national security or criminal threats exist within an Area of Responsibility [assigned to an FBI office]. . . and whether there are victims or targets within [an Area of Responsibility] who are vulnerable to any such actual or potential threats." SUMF ¶ 8. The methods that can be used for an assessment include, among others: (1) the use of "online services and resources"; (2) "observation or surveillance not requiring [a] court order";

and (3) interviews of or requests for information from "members of the public and private entities."

SUMF ¶ 9.

## II.   <u>Plaintiff's FOIA Request</u>

On September 10, 2020, Plaintiff, through Patrick G. Eddington, submitted a FOIA request to the FBI seeking "copies of all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the . . . [Operations Guide]) opened since September 29, 2008." SUMF ¶ 10. On October 2, 2020, the FBI denied Plaintiff's request as "overly broad" and not in compliance "with the requirements of 28 CFR § 16.3(b),[1] as it does not provide enough detail to enable personnel to locate records 'with a reasonable amount of effort.'" SUMF ¶ 11. The FBI provided Plaintiff with an email address and website "[f]or questions on how to reasonable describe its request[.]" SUMF ¶ 12. The FBI also informed Plaintiff of its appeal rights and to direct any appeal to the Director of the Department of Justice's Office of Information Policy. SUMF ¶ 13. Plaintiff appealed and the Office of Information Policy affirmed the FBI's denial on February 25, 2021. SUMF ¶ 14. The Office of Information Policy advised Plaintiff "[i]f you would like to narrow the scope of your request, please contact the FBI directly." SUMF ¶ 15.

## III.   <u>Procedural History</u>

On April 15, 2021, Plaintiff sued Defendants FBI and the Department of Justice (collectively, "Defendants"), alleging that Defendants violated FOIA by failing to produce records in response to its FOIA request (Count I) and by failing to conduct a reasonable search (Count II). SUMF ¶ 16. The FBI subsequently provided Plaintiff narrowing proposals to which Plaintiff did not agree and Plaintiff requested that the parties proceed to briefing. SUMF ¶ 17.

---

[1]     That provision provides, in pertinent part, "[r]equesters must describe the records sought in sufficient detail to enable Department personnel to locate them with a reasonable amount of effort." 28 C.F.R. § 16.3(b).

**LEGAL STANDARD**

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). "The Court reviews an agency's decision to withhold records *de novo*" and, in doing so, "should 'respect the expertise of an agency' and take care not to 'overstep the proper limits of the judicial role in FOIA review.'" *Leopold v. Immigration & Customs Enf't*, Civ. A. No. 18-2415, 2021 WL 4243401, at *4 (D.D.C. Sept. 17, 2020) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In a FOIA case, that is when an "agency establishes that it has 'fully discharged its [FOIA] obligations[.]'" *Keeping Gov't Beholden*, *Inc. v. Dep't of Just.*, Civ. A. No. 17-1569, 2021 WL 5918627, at *4 (D.D.C. Dec. 13, 2021) (quoting *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996)).

Generally, once the moving party has met its burden on summary judgment, the nonmoving party can overcome summary judgment by "set[ting] forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. However, in the FOIA context, if a plaintiff does not provide evidence that an agency has acted in bad faith, "'a court may award summary judgment solely on the basis of information provided by the agency in declarations,' provided that the declarations are not 'conclusory, merely reciting statutory standards, or . . . too vague or sweeping.'" *Rojas-Vega v. ICE*, 302 F. Supp. 3d 300, 306 (D.D.C. 2018) (quoting *Moore v. Bush*,

601 F. Supp. 2d 6, 12 (D.D.C. 2009), and *King v. Dep't of Just.*, 830 F.2d 210, 219 (D.C. Cir. 1987)).

## ARGUMENT

**I.      The Meaning of the Term "Reasonably Describes" as used in FOIA**

Generally, "[u]nder FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records.'" *Evans v. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(3)(A)).[2] A brief overview of the history of 5 U.S.C. § 552(a)(3)(A) clarifies the meaning of the term "reasonably describes."

The counterpart to § 552(a)(3)(A) that existed in the 1967 enactment of FOIA stated: "Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person." Pub. L. No. 90-23, 81 Stat. 54 (1967). The D.C. Circuit explained in *Irons v. Schuyler*, 465 F.2d 608 (D.C. Cir. 1972), that the "identifiable records" requirement "calls for a reasonable description enabling [a] Government employee to locate the requested records." *Id.* at 612 (quoting *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 938 (1970)). Accordingly, it held that a request—for "all unpublished manuscript decisions of the Patent Office, together which such indices as are available"—was not a request for "identifiable records" because "the contours of the records . . . described are so broad in the context of the Patent office files as not to come within a reasonable interpretation of 'identifiable records[.]'" *Id.* at 610,

---

[2]      Agencies are not required to produce records made available under 5 U.S.C. § 552(a)(1) and (a)(2) or precluded from disclosure under 5 U.S.C. § 552(a)(3)(E). *See* 5 U.S.C. § 552(a)(3)(A).

613. In other words, the D.C. Circuit found Plaintiff's request was not for "identifiable records" on account of the burden of locating the requested records.

Congress inserted the term "reasonably describes" "in 1974 in replacement of the words 'request for identifiable records,' the terminology of Section 3 of FOIA as originally enacted in 1967." *Truitt v. Dep't of State*, 897 F.2d 540, 544 (D.C. Cir. 1990). The House Judiciary Committee explained that the change in language was "designed to ensure that a requirement for a specific title or file number cannot be the only requirement of an agency for the identification of documents." H. Rep. No. 93-876 at 125. "A 'description' of a requested document would be sufficient if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Id*. at 126.

The Attorney General's Memorandum on the 1974 Amendments to FOIA promulgated by Attorney General Edward H. Levi (the "Attorney General's Memorandum") in 1975[3] contains the Executive Branch's contemporaneous interpretation of the 1974 amendments to FOIA, which the Supreme Court and the D.C. Circuit have viewed as "a reliable guide in interpreting FOIA." *Chiquita Brands Int'l*, *Inc. v. SEC*, 806 F.3d 289, 295-96 (D.C. Cir. 2015) (quoting *FCC v. AT&T Inc*., 562 U.S. 397, 409 (2011)). The Attorney General's Memorandum explains the change from "identifiable" to "reasonably describes" as "serv[ing] basically to clarify rather than to alter the law as it has been understood by several courts and many agencies." Attorney General's Mem. at 22. "It is not enough that the request provide enough data to locate the record; it must enable it to be located in a manner which does not involve an unreasonable amount of effort." *Id*. at 23. That is, for a FOIA request to "reasonably describe" the records sought, the request must (1) be

---

[3]     The Attorney General's Memorandum was reprinted in the House Committee on Government Operations and Senate Committee on the Judiciary, *Freedom of Information Act and Amendments of 1974 (P.L. 93-502)*, 94th Cong., 1st Sess., 507, 518-19 (Jt. Comm. Print 1975).

stated with specificity and (2) not be likely to result in an undue burden on agencies for them to produce the records sought, a requirement which captures Congress's intent that a request be described in a manner that enables "a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." H. Rep. No. 93-876 at 126.

The D.C. Circuit, this Court, and other circuits have since agreed with the referenced interpretation. *See, e.g., Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) ("when the request as drafted would require an agency to undertake an unreasonably burdensome search, the agency can decline to process the request"); *Am. Fed'n of Gov't Emps., Local 2782 ("AFGE") v. Dep't of Commerce*, 907 F.2d 203, 208-09 (D.C. Cir. 1990) ("An agency need not honor a request that requires 'an unreasonably burdensome search."); *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983) (citing *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978)) (explaining that FOIA's reasonably describes provision "pertains to the subject matter, location, and form of materials sought by a request"); *Keeping Gov't Beholden, Inc.*, 2021 WL 5918627, at *5 (quoting *AFGE*, 907 F.2d at 209) ("the D.C. Circuit has held that, even if the agency can identity documents responsive to a request, a request does not reasonably describe documents if the request is 'so broad as to impose an unreasonable burden upon the agency'"); *Byrnes v. Dep't of Just.*, Civ. A. No. 19-0761, 2021 WL 5422281, at *10 (D.D.C. Sept. 29, 2021) (quoting *Leopold v. Dep't of Just.*, 301 F. Supp. 3d 13, 23 (D.D.C. 2018)) (finding that "[a] FOIA request must reasonably describe the records sought" and "[a]s such, the requester must 'frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome.'"); *Brown v. Wash. Metro. Area Transit Auth.*, Civ. A. No. 19-2853, 2020 WL 806197, at *9 (D.D.C. Feb. 18, 2020) ("This Circuit has . . . considered the burden that production of requested documents would impose on an

agency in determining whether an agency response was required."); *Edmond v. United States*, Civ. A. No. 17-2611, 2018 WL 6068417, at *2 (D.D.C. Nov. 19, 2018) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982)) (Requests "may still be unreasonable if they remain so broad as to 'impose an unreasonable burden upon the agency.'"); *Public Emples. For Envtl. Responsibility v. EPA*, 314 F. Supp. 3d 68, 75 (D.D.C. 2018) (collecting cases)  ("The law is settled that [a]n agency need not honor a request that requires 'an unreasonably burdensome search."); *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 158 (D.D.C. 2013) (finding that the FOIA request to the Central Intelligence Agency did not reasonably describe the records sought, in part, because the request would require an unreasonable search burden); *Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999) (citing *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996)) ("When the request demands all agency records on a given subject then the agency is obliged to pursue any 'clear and certain' lead it cannot in good faith ignore. But an agency need not conduct a search that plainly is unduly burdensome."); *Ruotolo v. Dep't of Just., Tax Div.*, 53 F.3d 4, 9 (2d Cir. 1995)); *Van Strum v. EPA*, Case No. 91-35404, 1992 WL 197660, at *1 (9th Cir. Aug. 17, 1992) (citing *Marks*, 578 F.2d at 263) ("An agency is justified in denying or seeking clarification of FOIA requests that are so broad that the corresponding search for documents would place an inordinate burden on agency resources.").[4]

## II.    Plaintiff's Request Is Improper Because It Would Impose an Undue Burden on the FBI to Fulfill.

Plaintiff's FOIA request seeks "copies of all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the . . . [Operations Guide]) opened since September 29, 2008," SUMF ¶ 10, and would impose an undue burden on the FBI to fulfill.  FOIA defines the word "search" as "to review,

---

[4]    Despite the referenced rulings and the amendments to FOIA, the language of 5 U.S.C. § 552(a)(3)(A) has remained unchanged since the 1974 amendments. *See* 5 U.S.C. § 552(a)(3)(A).

manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D). The Circuit has held that a search would be unreasonably burdensome when an agency has not previously segregated the requested class of records and would have to engage in a massive undertaking to locate responsive records. *See Founding Church of Scientology, Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) ("When the agency has not previously segregated the requested class of records production may be required only 'where the agency (can) identify that material with reasonable effort.").

For example, in *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978), the Circuit deemed a search unreasonable where the agency would have had to conduct "'a page-by-page search' through . . . 84,000 cubic feet of documents'" in a records center. *Goland*, 607 F.2d at 353. In *AFGE*, the Circuit held that a search was unreasonable where an agency would have had "to locate 'every chronological office file and correspondence file, internal and external, for every branch office, staff [etc.]'" in hopes of discovering information about an agency's promotion practices and that a request to inspect "every division or staff administrative office file in [an agency] which records, catalogues, or stores" promotion forms or memorandums was unreasonable. *AFGE*, 907 F.2d at 208. In *Nation Magazine v. United States Customs Service*, 71 F.3d 885 (D.C. Cir. 1995), the Circuit held that a search was unreasonable where an agency would have had "to search through 23 years of unindexed files for records pertaining to" former Presidential candidate H. Ross Perot. *Nation Magazine*, 71 F.3d at 892. And in *Nat'l Sec. Counselors*, the Circuit affirmed the district court's determination that a search was unreasonable where agency records were decentralized and therefore the agency "would be required to search every office for any documents containing the word Watson, which would amount to a 'massive undertaking." *Nat'l Sec. Counselors*, 969 F.3d at 410. The FBI would likewise be required to engage in a massive undertaking to search for

records in response to Plaintiff's FOIA request, which serves as an appropriate basis for not honoring the request.

The FBI offers the Declaration of Michael G. Seidel to establish the undue burden fulfilling Plaintiff's FOIA request would impose in terms of time and expense. *See Public Emples. For Envtl. Responsibility*, 314 F. Supp. 3d at 75 (quoting *Nation Magazine*, 71 F.3d at 892) ("An agency claiming a search would be unreasonably burdensome is required . . . to 'provide sufficient explanation as to why such a search would be unreasonably burdensome' in a 'detailed affidavit[].'"); *Keeping Gov't Beholden*, *Inc.*, 2021 WL 5918627, at *15 (quoting *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008)) ("[c]ourts often look for a detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness."). Mr. Seidel is the Section Chief of the FBI's Record/Information Dissemination Section ("RIDS"), Information Management Division. SUMF ¶ 18. He explains that "Type 1, 2, and 3 Assessment records are in the FBI's Central Records System ('CRS')," which "is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its mission and integrated functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions." SUMF ¶ 19.

"To determine the magnitude of Plaintiff's request, . . . RIDS conducted basic queries of the CRS's indices . . . [using its Sentinel automated system], which allowed the FBI to query the indices for Type 1 & 2 and Type 3 Assessments for the time frame requested by Plaintiff — September 29, 2008 through May 24, 2021."[5] SUMF ¶ 20. However, not all Type 1, 2, and 3

---

[5]     Plaintiff requested records from September 29, 2008, to the present. However, the FBI uses May 24, 2021, as the end date because that is when the FBI conducted an initial search to estimate the volume of potentially responsive records. SUMF ¶ 20 n.3.

records are subject to the requirements of FOIA. Specifically, 5 U.S.C. § 552(c) renders excludable under FOIA certain law enforcement records the release of which are reasonably likely to interfere with law enforcement proceedings and certain classified records. *See* 5 U.S.C. § 552(c)(1), (2). To respond to Plaintiff's FOIA request, the FBI would have to search through the 75,746 potentially responsive files it located to determine whether they are responsive to Plaintiff's request or excludable under 5 U.S.C. § 552(c). The search would require a multi-step process consisting of a preliminary review, scoping, and vetting that would require removing FBI employees from mission critical objectives to facilitate a response to Plaintiff's request.

First, a RIDS analyst must conduct a preliminary review to determine whether each file contains an Assessment and whether "each Assessment is within the time frame of Plaintiff's request[.]" SUMF ¶ 21. "RIDS estimates it takes an analyst approximately 30 seconds per file to conduct this preliminary review" and estimates it would require "approximately 37,873 minutes (approximately 631 hours) to conduct a preliminary review of the approximately 75,746 potentially responsive Assessments" at a cost of $15,314.00.[6] SUMF ¶ 22.

Second, a RIDS analysis must scope each potentially responsive case file "to determine whether physical portions of the file or media exists in hard copy form." SUMF ¶ 23. Notably, the review of records not available electronically in Sentinel—because files in the records are maintained in hard copy form—cannot be completed until a RIDS "analyst retrieves the file from the physical location where it is stored, such as [the FBI's Headquarters], Field Offices, and Legats across the nation and oversees." SUMF ¶ 24. RIDS estimates that this scoping process would take

---

[6]    RIDS has estimated its costs based on the hourly rate for a Grade 7, Step 1 analyst hourly rate of $24.27, which is the figure that it uses for processing calculations. SUMF ¶ 22 n.4.

"10 minutes per file" for a total of "approximately 757,460 minutes (approximately 12,624 hours)" at a cost of $306,384.00. SUMF ¶ 25.

Third, a RIDS's analyst must review each file to identify whether there are certain records that qualify for an exclusion under 5 U.S.C. § 552(c). SUMF ¶ 26. RIDS's "preliminary search query determined that approximately 25,768 indexed files would potentially require exclusion vetting" and to accomplish exclusion vetting, "analysts must coordinate with the appropriate FBI employee(s), including Special Agents . . . and other [FBI Headquarter] Division employees worldwide, receive feedback, and carefully evaluate that feedback against statutory criteria to make informed determinations." SUMF ¶ 27. "Given the nature and function of Assessment-type records, exclusion review scenarios can be encountered, even in closed assessments, as a closed assessment may have developed and still be part of an ongoing investigation" and "other closed assessments may also qualify for exclusion if they pertain to confidential sources or the assessments' very existence is a classified fact[.]" SUMF ¶ 28. RIDS estimates that it would take "approximately 675,122 minutes (approximately 11,252 hours) to initiate coordination with FBI employees worldwide" regarding approximately 25,768 Assessments at a cost of approximately $273,086.00. SUMF ¶ 29. RIDS estimates that it would take "51,536 days [(approximately 1,236,864 hours)] for FBI employees to respond back to RIDS with vetting feedback for approximately 25,768 Assessments" at a cost of approximately $30,018,689.00. SUMF ¶ 30.

In addition to an unreasonable search burden, Plaintiff's request would place an undue burden on the FBI to process responsive records by retrieving those records, uploading the records, and processing them. *Crisman v. Dep't of Just.*, 332 F. Supp. 3d 139, 153 (D.D.C. 2018) ("FOIA does not require an agency to 'honor a request that requires the agency 'to locate, review, redact, and arrange for inspection a vast quantity of material'"); *Long v. Immigration & Customs*

*Enforcement*, 149 F. Supp. 3d 39, 55-56 (D.D.C. 2015) ("Courts also have held that agencies are excused from complying with FOIA requests where 'review[ing], redact[ing], and arrang[ing] for inspection [of] a vast quantity of material' presents an unreasonable burden"); *Int'l Counsel Bureau v. Dep't of Defense*, 723 F. Supp. 2d 54, (D.D.C. 2010) (citing *AFGE* as holding the same). RIDS estimates that the total number of pages that it would have to process, if all pages were deemed responsive, is approximately 11,205,320. SUMF ¶ 31. To retrieve those pages for processing, "RIDS estimates it would take approximately 2,272,380 minutes (approximately 37,873 hours) to download the 75,746 potentially responsive Assessments from Sentinel (if all records are electronically available)" at a cost of approximately $919,178.00. SUMF ¶ 32. "If all the potentially responsive records, approximately 75,746 Assessment[] files, are ultimately determined responsive to Plaintiff's request, RIDS would have to import approximately 11,205,320 pages into [its document processing system] for further processing and application of exemptions," a task the FBI estimates would take "about 112,053 minutes (approximately 1,867 hours)" at a cost of $45,312.00. SUMF ¶ 33. "RIDS estimates that it will require approximately 22,410 months (approximately 1,867 years) to review, redact, and arrange for inspection approximately 11,205,320 pages, for approximately 75,746 Assessments." SUMF ¶ 34. Thus, "RIDS estimates the total expense for the FBI to complete the search and vetting phase, and retrieve and import records for processing[] is approximately $31,586,045.00, and would require approximately 1,301,444 hours (or 54,227 days)" in addition to the "22,410 months (approximately 1,867 years) to process Plaintiff's request[.]"SUMF ¶ 35.

In *People for American Way Foundation v. Department of Justice*, 451 F. Supp. 2d 6, 13 (D.D.C. 2006), the plaintiff requested certain documents related to post-9/11 immigrant detainees. *Id*. at 8. The defendant maintained that a search for responsive records would consist of searching

"at least 44,000 files for documents that are (1) not easily identifiable from its case management database, and (2) scattered across more than eighty different U.S. Attorney's Offices nationwide." *Id*. at 8. The plaintiff responded, in part, by stating that the defendant's proffered search was not required by its FOIA request; "the FOIA request could be adequately addressed by conducting an electronic search of the Public Access to Courts Electronic Records service ('PACER'), which would mitigate any burden." *Id*.

The Court found that the defendant "met its burden of providing a sufficient explanation for its contention that a manual search of 44,000 files would be unduly burdensome" because: (1) the number of files needed to be searched was ten times the number searched by United States Attorneys Offices annually; (2) "the length of each file may vary from as little as ten to as many as 200,000 pages, and the files may be scattered among different buildings or located in storage"; (3) the search would require retrieval of "files from archived record depositories and a manual, at times page-by-page, review of the files to ascertain their responsiveness"; and (4) many of the individuals who would have been involved in the search effort were "also involved in litigation and litigation support," meaning that the search "would overwhelm the resources of the United States Attorney's Offices and disrupt the law enforcement mission to which they are dedicated." *Id*. at 15.

The Court, however, ultimately determined that the defendant "failed to show that [the] plaintiff's proffered alternative of using PACER initially to identify responsive agency records is unavailable under the law or unreasonably burdensome to perform" and required the defendant "to perform the PACER portion of the search." *Id*. at 16. The Court determined that "the overall reasonableness of the search that plaintiff argue[d] [could not] be assessed until the initial PACER component [was] completed." *Id*. at 15.

The amount of effort and cost needed for the FBI to search for and process responsive records dwarfs the "25,000 hours to manually search[] all 44,000 files encompassed in the request" in *People for American Way Foundation*, where the court found the agency had "met its burden" of explaining why a manual search would be unreasonably burdensome. 451 F. Supp. 2d at 13. And, unlike in *People for American Way Foundation*, Plaintiff has not offered a reasonable search that it believes would adequately address its FOIA request.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment.


Dated: March 18, 2022
      Washington, DC

                    Respectfully submitted,

                    MATTHEW M. GRAVES, D.C. Bar #481052
                    United States Attorney

                    BRIAN P. HUDAK
                    Acting Chief, Civil Division


                    By: _____/s/_____
                        MICHAEL A. TILGHMAN II
                        Assistant United States Attorney
                        555 Fourth Street, NW
                        Washington, DC 20530
                        (202) 252-252-7113

                    *Attorneys for the United States of America*