UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 21-1054 (RDM)<br>)<br>)<br>)<br>)<br>) |

## **DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Civil Rule 7(h), Defendants the Federal Bureau of Investigation (the "FBI") and Department of Justice (collectively, "Defendants") submit the following statement of undisputed material facts in support of Defendants' Motion for Summary Judgment.

1. On September 29, 2008, then Attorney General Michael Mukasey released the Attorney General's Guidelines for Domestic FBI Operations (the "Guidelines") to assist the FBI with performing its domestic duties. *See* https://www.justice.gov/archive/opa/docs/guidelines.pdf. The FBI's Domestic Investigations and Operations Guide ("Operations Guide")—issued on December 16, 2008, the public version of which was most recently updated on September 28, 2016—implements the Guidelines.[1]

2. There are two FBI investigative categories authorized by the Guidelines: assessments and predicated investigations. Guidelines § II at 17–18.

---

[1] Electronically available at: https://vault.fbi.gov/FBI%20Domestic%20Investigations%20 and%20Operations%20Guide%20%28DIOG%29/FBI%20Domestic%20Investigations%20and% 20Operations%20Guide%20%28DIOG%29%202016%20Version/FBI%20Domestic%20Investi gations%20and%20Operations%20Guide%20%28DIOG%29%202016%20Version%20Part%20 01%20of%2002/view.

3. Guidelines Section II.A.1 provides that "[a]ssessments may be carried out to detect, obtain information about, or prevent or protect against federal crimes or threats to the national security or to collect foreign intelligence." *Id.* at 19; *see also N.Y. Times Co. v. FBI*, 822 F. Supp. 2d 426, 428 (S.D.N.Y. 2011).

4. There are presently five types of assessments "that may be carried out for the purposes of detecting, obtaining information about, or preventing or protecting against Federal crimes or threats to the national security or to collect foreign intelligence": Type 1 & 2 Assessments, Type 3 Assessments, Type 4 Assessments, Type 5 Assessments, and Type 6 Assessments. Operations Guide at 5-7 to 5-8.

5. The Operations Guide "defines Type 1 & 2 Assessments as 'seeking information, proactively or in response to investigative leads, relating to activities—or the involvement or role of individuals, groups, or organizations relating to those activities—constituting violations of Federal criminal law or threats to the national security (i.e., the prompt checking of leads on individuals, activity, groups, or organizations.'" Seidel Decl. ¶ 13.

6. The Operations Guide "originally separated Type 1 and 2 Assessments" but those "Assessments were later merged into one type (named a 'Type 1 & 2 Assessment')." Seidel Decl. ¶ 13.

7. The Operations Guide "defines Type 3 Assessments as 'identify[ing], obtain[ing] and utilize[ing] information about actual or potential national security threats or Federal criminal activities, or the vulnerability to such threats or activities.'" Seidel Decl. ¶ 14 (quoting Guidelines, Part II.A.3.b.).

8. "Type 3 Assessments may be used to analyze or determine whether particular national security or criminal threats exist within an Area of Responsibility [assigned to an FBI

office] . . . and whether there are victims or targets within [an Area of Responsibility] who are vulnerable to any such actual or potential threats." Seidel Decl. ¶ 14.

9. The methods that can be used for an assessment include, among others: (1) the use of "online services and resources"; (2) "observation or surveillance not requiring [a] court order"; and (3) interviews of or requests for information from "members of the public and private entities." Guidelines at 20.

10. On September 10, 2020, Plaintiff, through Patrick G. Eddington, submitted a FOIA request to the FBI seeking "copies of all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the . . . [Operations Guide]) opened since September 29, 2008." Compl. (ECF No. 1) Ex. A.

11. On October 2, 2020, the FBI denied Plaintiff's FOIA request as "overly broad" and not in compliance "with the requirements of 28 CFR § 16.3(b),[2] as it does not provide enough detail to enable personnel to locate records 'with a reasonable amount of effort.'" Compl. Ex. B.

12. On October 2, 2020, the FBI provided Plaintiff with an email address and website "[f]or questions on how to reasonable describe its request[.]" Compl. Ex. B.

13. On October 2, 2020, the FBI also informed Plaintiff of its appeal rights and to direct any appeal to the Director of the Department of Justice's Office of Information Policy. Compl. Ex. B.

14. Plaintiff appealed and the Office of Information Policy affirmed the FBI's denial on February 25, 2021. Compl. Exs. C, E.

15. The Office of Information Policy advised Plaintiff "[i]f you would like to narrow the scope of your request, please contact the FBI directly." Compl. Ex. E.

---

[2] That provision provides, in pertinent part, "[r]equesters must describe the records sought in sufficient detail to enable Department personnel to locate them with a reasonable amount of effort." 28 C.F.R. § 16.3(b).

16. On April 15, 2021, Plaintiff sued Defendants, alleging that Defendants violated FOIA by failing to produce records in response to its FOIA request (Count I) and by failing to conduct a reasonable search (Count II). *See* Compl. ¶¶ 27-34.

17. The FBI provided Plaintiff narrowing proposals to which Plaintiff did not agree and Plaintiff requested that the parties proceed to briefing. *See* Nov. 12, 2021 Joint Status Report (ECF No. 16) (stating, in part, that "on September 21, 2021, the FBI provided Plaintiff four new proposals for narrowing Plaintiff's request" and that "[o]n November 10, 2021, Plaintiff rejected the FBI's proposals and informed the FBI that it wants to proceed to briefing.").

18. Michael G. Seidel is the Section Chief of the FBI's Record/Information Dissemination Section ("RIDS"), Information Management Division. Seidel Decl. ¶ 1.

19. "Type 1, 2, and 3 Assessment records are in the FBI's Central Records System ('CRS')," which "is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its mission and integrated functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions." Seidel Decl. ¶ 15.

20. "To determine the magnitude of Plaintiff's request, . . . RIDS conducted basic queries of the CRS's indices . . . [using its Sentinel automated system], which allowed the FBI to query the indices for Type 1 & 2 and Type 3 Assessments for the time frame requested by Plaintiff —September 29, 2008 through May 24, 2021."[3] Seidel Decl. ¶ 20.

---

[33] Plaintiff requested records from September 29, 2008, to the present. However, the FBI uses May 24, 2021, as the end date because that is when the FBI conducted an initial search to estimate the volume of potentially responsive records. Seidel Decl. ¶ 20 n.2.

21. To respond to Plaintiff's FOIA request, a RIDS analyst must conduct a preliminary review to determine whether each file contains an Assessment and whether "each Assessment is within the time frame of Plaintiff's request[.]" Seidel Decl. ¶ 27.

22. "RIDS estimates it takes an analyst approximately 30 seconds per file to conduct this preliminary review" and estimates it would require "approximately 37,873 minutes (approximately 631 hours) to conduct a preliminary review of the approximately 75,746 potentially responsive Assessments" at a cost of $15,314.00."[4] Seidel Decl. ¶¶ 27, 34.

23. To respond to Plaintiff's FOIA request, a RIDS analysis must scope each potentially responsive case file "to determine whether physical portions of the file or media exists in hard copy form." Seidel Decl. ¶ 28.

24. The review of records not available electronically in Sentinel—because files in the records are maintained in hard copy form—cannot be completed until a RIDS "analyst retrieves the file from the physical location where it is stored, such as [the FBI's Headquarters], Field Offices, and Legats across the nation and oversees." Seidel Decl. ¶ 28.

25. RIDS estimates that its scoping process to determine responsiveness would take "10 minutes per file" for a total of "approximately 757,460 minutes (approximately 12,624 hours)" at a cost of $306,384.00. Seidel Decl. ¶¶ 28, 35.

26. To respond to Plaintiff's FOIA request, a RIDS's analyst must review each file to identify whether there are certain records that qualify for an exclusion under 5 U.S.C. § 552(c). Seidel Decl. ¶ 29.

---

[4] RIDS has estimated its costs based on the hourly rate for a Grade 7, Step 1 analyst hourly rate of $24.27, which is the figure that it uses for processing calculations. Seidel Decl. ¶ 37 n.9.

27. RIDS's "preliminary search query determined that approximately 25,768 indexed files would potentially require exclusion vetting" and to accomplish exclusion vetting, "analysts must coordinate with the appropriate FBI employee(s), including Special Agents . . . and other [FBI Headquarter] Division employees worldwide, receive feedback, and carefully evaluate that feedback against statutory criteria to make informed determinations." Seidel Decl. ¶ 31.

28. "Given the nature and function of Assessment-type records, exclusion review scenarios can be encountered, even in closed assessments, as a closed assessment may have developed and still be part of an ongoing investigation" and "other closed assessments may also qualify for exclusion if they pertain to confidential sources or the assessments' very existence is a classified fact[.]" Seidel Decl. ¶ 30.

29. RIDS estimates that it would take "approximately 675,122 minutes (approximately 11,252 hours) to initiate coordination with FBI employees worldwide" regarding approximately 25,768 Assessments at a cost of approximately $273,086.00. Seidel Decl. ¶ 36.

30. RIDS estimates that it would take "51,536 days [(approximately 1,236,864 hours)] for FBI employees to respond back to RIDS with vetting feedback for approximately 25,768 Assessments" at a cost of approximately $30,018,689.00. Seidel Decl. ¶ 36.

31. RIDS estimates that the total number of pages that it would have to process, if all pages were deemed responsive, is approximately 11,205,320. Seidel Decl. ¶ 26.

32. To retrieve 11,205,320 pages for processing, "RIDS estimates it would take approximately 2,272,380 minutes (approximately 37,873 hours) to download the 75,746 potentially responsive Assessments from Sentinel (if all records are electronically available)" at a cost of approximately $919,178.00. Seidel Decl. ¶¶ 38-40.

33. "If all the potentially responsive records, approximately 75,746 Assessment[] files, are ultimately determined responsive to Plaintiff's request, RIDS would have to import approximately 11,205,320 pages into [its document processing system] for further processing and application of exemptions," a task the FBI estimates would take "about 112,053 minutes (approximately 1,867 hours)" at a cost of $45,312.00. Seidel Decl. ¶¶ 41-42.

34. "RIDS estimates that it will require approximately 22,410 months (approximately 1,867 years) to review, redact, and arrange for inspection approximately 11,205,320 pages, for approximately 75,746 Assessments." Seidel Decl. ¶ 46.

35. "RIDS estimates the total expense for the FBI to complete the search and vetting phase, and retrieve and import records for processing[] is approximately $31,586,045.00, and would require approximately 1,301,444 hours (or 54,227 days)" in addition to the "22,410 months (approximately 1,867 years) to process Plaintiff's request[.]" Seidel Decl. ¶ 47.

Dated: March 18, 2022
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division


By: _____/s/_____
MICHAEL A. TILGHMAN II
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
(202) 252-252-7113

*Attorneys for the United States of America*