UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CATO INSTITUTE,                           )
                                          )
          Plaintiff,                      )
                                          )
     v.                                   )          Civil Action No. 21-1054 (RDM)
                                          )
FEDERAL BUREAU OF INVESTIGATION,          )
*et al.*,                                 )
                                          )
          Defendants.                     )
                                          )

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit, from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("FOIPA") litigation cases nationwide. Prior to joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration ("DEA"), from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to September 2006 culminating in my assignment as Chief, General

Litigation Branch, U.S. Army Litigation Division, where I oversaw FOIPA litigation for the U.S. Army.  I am an attorney licensed in the State of Ohio and the District of Columbia.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 237 FBI employees, supported by approximately 87 contractors, who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA request seeking "copies of all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the Domestic Investigations and Operations Guide, DIOG) opened since September 29, 2008."

(4)     The FBI submits this declaration in support of Defendants' Motion for Summary Judgment.

**ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST**

(5)    By electronic FOIA ("eFOIA"),[1] dated September 10, 2020, Cato Institute

("Plaintiff") submitted a FOIA request to the FBI, through Patrick G. Eddington, seeking "copies

of all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the Domestic Investigations

and Operations Guide, DIOG) opened since September 29, 2008."  Plaintiff provided additional

instruction as to where the FBI should search for responsive records, to include instruction to

search the FBI's electronic surveillance ("ELSUR") indices, technical surveillance ("TESURS"),

microphone surveillance ("MISURS"), FBI field offices, and FBI's SharePoint System.

Additionally, Plaintiff requested a waiver of all fees associated with processing its request.

Finally, Plaintiff requested its request be granted expedited processing pursuant to 28 C.F.R. §

16.5(e)(1)(ii).  **(Ex. A.)**

(6)    By letter dated October 2, 2020, the FBI advised Plaintiff that it assigned

its request FOIPA Request Number NFP-124015.  Additionally, the FBI advised Plaintiff that its

request was overly broad, and the request does not comport with the requirements of 28 C.F.R. §

16.3(b), as the request does not provide enough detail to enable personnel to locate records

"within a reasonable amount of effort."  Finally, the FBI advised Plaintiff that it could appeal the

FBI's response to the Department of Justice ("DOJ"), Office of Information Policy ("OIP"),

within ninety (90) days of the date of its letter, he could contact the FBI's Public Liaison, or it

could seek dispute resolution services by contacting the Office of Government Information

Services ("OGIS").  **(Ex. B.)**

---

[1] The FBI's eFOIPA system allows for electronic receipt of Freedom of Information/Privacy Act
(FOIPA) requests as well as electronic responses to those requests when possible. *See*
https://efoia.fbi.gov.

(7)     On October 2, 2020, through OIP's electronic FOIA online system, Plaintiff submitted an appeal to OIP contesting the FBI's determination in its October 2, 2020 response letter.  **(Ex. C.)**

(8)     By letter dated October 2, 2020, OIP acknowledged receipt of Plaintiff's appeal and assigned it appeal number A-2021-02171.  **(Ex. D.)**

(9)     By letter dated February 25, 2021, OIP affirmed the FBI's October 2, 2020 determination.  OIP advised Plaintiff "a proper FOIA request for records must reasonably describe records sought." *See* 5 U.S.C. § 552(a)(3)(A).  Additionally, OIP advised Plaintiff that its request "is not reasonably described because you did not characterize the records sought in such a way that they could be located without searching through millions of records." Additionally, OIP advised Plaintiff of its right to file a lawsuit in federal district court if Plaintiff was dissatisfied with its action on Plaintiff's appeal.  Finally, OIP advised Plaintiff that it could use the mediation services of OGIS to help resolve disputes between FOIA requesters and Federal agencies, and that using OGIS services does not affect Plaintiff's right to pursue litigation.  **(Ex. E.)**

(10)    On April 15, 2021, Plaintiff filed the Complaint in the instant action. (ECF No. 1.)

(11)    Plaintiff's wide-ranging request seeks copies of all Type 1, Type 2, and Type 3 Assessments opened since September 29, 2008. As detailed, complying with Plaintiff's request would impose an unreasonable burden on the FBI by requiring RIDS and mission critical FBI staff to gather millions of pages of FBI records to locate, scope for responsiveness, properly vet, and process them for public dissemination. The search for these Assessment type records would be enterprise wide in scope, including FBIHQ, all of the FBI's 56 Field Offices, as well as

4

FBI Offices overseas, known as "Legats," where potentially responsive records would reasonably be located. RIDS estimates the total expense for the FBI to complete the search and vetting phase, retrieve and import records for processing, is approximately $31,586,045.00, and would require approximately 1,301,444 hours (or 54,227 days).

*DIOG Description of Assessment Types 1, 2, and 3*

(12)     Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM"), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency; to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security; and to further the foreign intelligence objectives of the United States. The FBI conducts authorized investigative methods and activities in Assessments in furtherance of its law enforcement, national security, and intelligence missions.

(13)     The DIOG defines Type 1 & 2 Assessments as "seek[ing] "information, proactively or in response to investigative leads, relating to activities – or the involvement or role of individuals, groups, or organizations in those activities – constituting violations of Federal criminal law or threats to the national security (i.e., the prompt checking of leads on individuals, activity, groups, or organizations)." The DIOG issued on December 16, 2008, originally separated Type 1 and 2 Assessments. Type 1 and 2 Assessments were later merged into one type (named a "Type 1 & 2 Assessment"). *See* DIOG, issued March 3, 2016, available at https://vault.fbi.gov (last visited February 11, 2022).

(14)     The DIOG defines Type 3 Assessments as "identify[ing], obtain[ing] and utilize[ing] information about actual or potential national security threats or Federal criminal

5

activities, or the vulnerability to such treats or activities." *See* AGG-Dom, Part II.A.3.b.  Type 3

Assessments may be used to analyze or determine whether particular national security or

criminal threats exist within an Area of Responsibility ("AOR") and whether there are victims or

targets within the AOR who are vulnerable to any such actual or potential threats.  The

authorized purpose and clearly defined objective(s) of a Type 3 Assessment must be based on or

related to actual or potential Federal criminal or national security targets, threats, or

vulnerabilities.  *See* DIOG, issued March 3, 2016.

*The FBI's Central Records System*

(15)    Type 1, 2 and 3 Assessment records reside in the FBI's Central Records

System ("CRS"). The CRS is an extensive system of records consisting of applicant,

investigative, intelligence, personnel, administrative, and general files compiled and maintained

by the FBI in the course of fulfilling its mission and integrated functions as a law enforcement,

counterterrorism, and intelligence agency to include performance of administrative and

personnel functions.  The CRS spans the entire FBI organization and encompasses the records of

FBIHQ, FBI field offices, and FBI legal attaché offices ("legats") worldwide and is searchable

by the CRS's general indices.

(16)    The general indices are arranged in alphabetical order and comprise an

index on a variety of subjects including individuals, organizations, events, and other subjects of

investigative interest that are indexed for future retrieval.

(17)    FBI employees may index information in the CRS by individual (persons),

by organization (entities, places, and things), and/or by event (*e.g.,* a terrorist attack or bank

robbery).  Indexing information in the CRS is done at the discretion of FBI investigators when

information is deemed of sufficient significance to warrant indexing for future retrieval.

Accordingly, the FBI does not index every individual name or other subject in the general indices.

(18)     The FBI automated its indices with the Automated Case Support system ("ACS"), an electronic, integrated case management system that became effective for FBIHQ and all FBI field offices and Legats on October 1, 1995. As part of the ACS implementation process, in addition to indices, over 105 million CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices. ACS had an operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its mission and myriad functions.

(19)     Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012. Sentinel provides a web-based interface to FBI users and includes the same automated applications that were utilized in ACS. After July 1, 2012, all FBI generated records are created electronically in case files via Sentinel; however, Sentinel did not replace the relevance of ACS as an important FBI search mechanism as information continued to be indexed for future retrieval.

*The FBI's Preliminary Queries for Potentially Responsive Records*

(20)     To determine the magnitude of Plaintiff's request, and in a good faith effort to present Plaintiff with narrowing options, RIDS conducted basic queries of the CRS's indices on May 24, 2021 via Sentinel, which allowed the FBI to query the indices for Type 1 & 2 and Type 3 Assessments for the time frame requested by Plaintiff – September 29, 2008 through

May 24, 2021.[2]  The Sentinel indices search encompassed migrated records from ACS, the case

management system in place in 2008.  As a result of these preliminary search efforts, the

Sentinel indices revealed approximately 75,746 files that could contain a Type 1 & 2 and Type 3

Assessment.  Of the 75,746 potentially responsive files, approximately 64,362 files correspond to

potential Type 1 & 2 Assessments, while approximately 11,384 files correspond to potential

Type 3 Assessments.  These assessments were located across the FBI's 56 Field Offices, 27

Legats, and 7 FBIHQ Divisions.

      (21)    Plaintiff also requested the FBI search other systems or locations for

responsive records.  Specifically, Plaintiff requested searches of Electronic Surveillance

("ELSUR"), Technical Surveillance ("TESUR"), Microphone Surveillance ("MISUR"), FBI

field offices, and FBI SharePoint.  Given the nature of Plaintiff's request, the CRS is the only

system of records where responsive records could reasonably be expected to be found.  As

discussed in ¶ 15 *supra*, the CRS spans the entire FBI organization and encompasses the records

of FBIHQ and FBI field offices.  The ELSUR, TESUR and MISUR indices comprise records

related to surveillance sought, administered, or conducted by the FBI.  These indices include

records of: (a) targets of electronic surveillance obtained pursuant to court order, consensual

monitoring, or other authority; (b) owners, lessors, or licensors of the premises where the FBI

conducted electronic surveillance; (c) and individuals identified as participants of recorded

communications.  Although these indices are separate systems of records, the data housed within

these indices is also available in the CRS, as targets of surveillance are also indexed in the CRS.

---

[2] The search cut-off date for Plaintiff's request is May 24, 2021 when the initial search was
conducted.  A search "cut-off" date is the date that the agency commenced a search for records
responsive to a FOIA request. *See* DOJ regulations at 28 C.F.R. Section 16.4.  DOJ provides
notice of its use of a search cut-off date in its published FOIA reference guide on its FOIA
website.

These types of surveillance are investigative techniques pursued in furtherance of FBI investigations and the opening of an investigation (and subsequent indexing of targets of the investigation) would be a prerequisite to the initiation of surveillance. Thus, searches of the CRS, employing the Sentinel indices, are reasonably expected to locate records relating to electronic, technical, or microphonic surveillance.

(22)    The identification of records indexed to the subject of a FOIPA request does not automatically end the FBI's search efforts. Index searches are the means by which potentially responsive records are located, but ultimately, a FOIPA analyst must consider potentially responsive indexed records against the specific parameters of a FOIPA request to make a responsiveness determination. This is a manual review process. Once indexed records are gathered, analyzed against the request, and vetted, the total pool of records responsive to an individual request can be established. Paragraphs 26 through 37, *infra,* provide a detailed description of each step involved.

(23)    As discussed in ¶ 20 *supra*, the CRS search queries resulted in approximately 75,746 files that could contain Assessments potentially responsive to Plaintiff's request. These 75,746 case files referencing individual Assessments contain pertinent documents of interest and those documents are "serialized," or assigned a document number in the order in which the document is added to the file, typically in chronological order. Each document is commonly referred to as a "serial."

(24)    As stated in ¶ 22 *supra*, although the FBI was able to identify the number of files containing potentially responsive records, this does not conclude the search as additional steps are required to determine whether the indexed records are responsive to Plaintiff's request for specific Assessment types.

9

*The FBI's Calculation of the Estimated Number of Potentially Responsive Pages*

(25)     The FBI estimates per its Sentinel query that it would have to scope

through an estimated 11,205,320 pages to locate the responsive Assessments requested by type.

To arrive at this estimated page count, RIDS first reviewed the first five (5) files of Type 1 & 2

Assessments and the first five (5) files of Type 3 Assessments to determine the average amount

of serials per file.  Second, RIDS used its standard estimate of 10 pages for each serial.  Using

these figures, RIDS estimated the average number of pages per file for Type 1 & 2 Assessments

is about 28 pages.[3]  To determine the estimated total number of pages for Type 1 & 2

Assessments, RIDS then multiplied 28 pages by the previously identified approximately 64,362

Type 1 & 2 Assessments, resulting in approximately 1,802,136 pages of potentially responsive

records.  RIDS then calculated the estimated average number of pages per file for Type 3

Assessments.  RIDS estimated the average number of pages per file for Type 3 Assessments is

approximately 826 pages.[4]  To determine the estimated number of pages for Type 3

Assessments, RIDS then multiplied 826 pages by the previously identified approximately 11,384

Type 3 Assessments thus resulting in approximately total 9,403,184 pages of potentially

responsive records.  Finally, RIDS added 1,802,136 total pages of potentially responsive Type 1

& 2 Assessments and 9,403,184 total pages of potentially responsive Type 3 Assessments to

arrive at the sum of approximately 11,205,320 total pages of potentially responsive Type 1 & 2

---

[3] To determine the estimated average number of pages per file of Type 1 & 2 Assessments, RIDS added the estimated number of pages for Files 1, 2, 3, 4 and 5, resulting in a total of 140 pages. RIDS then divided 140 pages by 5 (the total number of files) thus resulting in an estimated average of approximately 28 pages.

[4] To determine the estimated average number of pages per file of Type 3 Assessments, RIDS added the estimated number of pages for Files 1, 2, 3, 4 and 5, resulting in a total of 4,130 pages. Then, RIDS divided 4,130 pages by 5 (the total number of files) thus resulting in an estimated average of approximately 826 pages.

and Type 3 Assessments. The following chart depicts these calculations.

| Type 1 & 2 Assessments | Number of Serials | Calculations | Estimated Number of Pages |
|---|---|---|---|
| File 1 | 2 serials | 10 pages per serial x 2 serials | 20 pages |
| File 2 | 2 serials | 10 pages per serial x 2 serials | 20 pages |
| File 3 | 4 serials | 10 pages per serial x 4 serials | 40 pages |
| File 4 | 4 serials | 10 pages per serial x 4 serials | 40 pages |
| File 5 | 2 serials | 10 pages per serial x 2 serials | 20 pages |
| 140 estimated pages for sampled files divided by 5 files = average of 28 pages per file multiplied by 64,362 Type 1 & 2 Assessments = **1,802,136 estimated pages of potentially responsive records** | | | |

| Type 3 Assessments | Number of Serials | Calculations | Estimated Number of Pages |
|---|---|---|---|
| File 1 | 28 serials | 10 pages per serial x 28 serials | 280 pages |
| File 2 | 83 serials | 10 pages per serial x 83 serials | 830 pages |
| File 3 | 274 serials | 10 pages per serial x 274 serials | 2,740 pages |
| File 4 | 17 serials | 10 pages per serial x 17 serials | 170 pages |
| File 5 | 11 serials | 10 pages per serial x 11 serials | 110 pages |
| 4,130 estimated pages for sampled files divided by 5 files = average of 826 pages per file multiplied by 11,384 Type 3 Assessments = **9,403,184 estimated pages of potentially responsive records** | | | |

*Search and Vetting Phase: Estimated Time and Cost to Comply with Plaintiff's Request*

(26)  To determine the responsiveness of a record to an individual FOIA request, RIDS must complete several steps.  This includes an adequate initial search, reviewing/scoping records for responsiveness, gathering records (to also include gathering and

11

scoping physical records (i.e., media, audio, etc.), and coordinating review and vetting of potentially responsive records with FBI personnel.  The FBI personnel may include Governments Information Specialist (hereinafter FOIA analysts), FBI Special Agents from Field Offices and Legats worldwide, as well as other administrative personnel deemed necessary. Below is a detailed description of search procedures and responsiveness determinations the FBI would employ to locate the specific Assessment type records responsive to Plaintiff's request.

(27)    First, a FOIPA analyst in RIDS must conduct a preliminary scoping review of each file for responsiveness to the FOIA request.  Each file may also contain a "subfile" or multiple subfiles that are associated with the identified case file.  An analyst confirms that each file (and any subfiles) meets the subject and the timeframe of the FOIA request.  As relevant to Plaintiff's request, an analyst must confirm that each file is categorized as an "Assessment" (either Type 1 & 2 or Type 3) and that each Assessment is within the time frame of Plaintiff's request (September 29, 2008 to May 24, 2021).  RIDS estimates it takes an analyst approximately 30 seconds per file to conduct this preliminary review.  As such, RIDS estimates it would require approximately 37,873 minutes (approximately 631 hours) to conduct the preliminary scoping review of the 75,746 files for the responsive Assessments requested.[5]

(28)    Second, an analyst must also review each file (and any subfiles) one-by-one to determine whether physical portions of the file or media exists in hard copy form.  Prior to the introduction of the FBI's electronic case management system, Sentinel, in July 2012, official FBI records were generated and maintained in paper form.  Portions of records within case files

---

[5] In order to determine the approximate review time, the FBI divided approximately 75,746 Assessments by 2 (approximately 30 seconds per file) thus resulting in approximately 37,873 minutes of review time for each potentially responsive file.

contain physical (paper) FBI records that are not electronically available within Sentinel.

Additionally, some media located within a case file is not converted to an electronic record

within Sentinel, therefore physical, or hard-copy, media (e.g., CD, DVD, cassette tape, etc.) is

located within the hard copy case file. In those instances where an electronic copy is not

available in Sentinel, the review of these records for a responsiveness determination cannot be

completed until a FOIPA analyst retrieves the file from the physical location where it is stored,

such as FBIHQ, Field Offices, and Legats across the nation and oversees. RIDS estimates the

time required for this physical file scoping is approximately 10 minutes per file. For

approximately 75,746 Assessments, RIDS estimates it would take approximately 757,460

minutes (approximately 12,624 hours) to scope each case file for physical records or media. In

order to determine the approximate scoping time, RIDS multiplied 75,746 Assessments by 10

minutes per file thus resulting in approximately 757,460 minutes (12,624 hours) for this

component of scoping.

(29)    Third, an analyst must review each file to identify whether there are

certain records that are not subject to the FOIA. Specifically, a FOIPA analyst reviews national

security and law enforcement records to determine whether they meet precise statutory criteria.

Congress provided that federal law enforcement agencies "may treat the records as not subject to

the requirements of [the FOIA]." *See* 5 U.S.C. § 552(c). These provisions, which are referred to

as "exclusions," provide protection in three limited sets of circumstances where even

acknowledging the existence the records could cause harm to law enforcement or national

security interests.

(30)    An exclusion may apply whenever a request seeks investigative or

national security information in three categories: (i) access to records described in subsection 5

13

U.S.C. § 552(b)(7)(A);[6] (ii) informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier requested by a third party; (iii) or involves access to records maintained by the FBI pertaining to foreign intelligence or counterintelligence, or international terrorism, and the existence of the records is itself classified information as provided in 5 U.S.C. § 552(b)(1).[7] *See* 5 U.S.C. § 552(c)(1), (c)(2), and (c)(3). Given the nature and function of Assessment-type records, exclusion review scenarios can be encountered, even in closed assessments, as a closed assessment may have developed and still be part of an ongoing investigation. Furthermore, other closed assessments may also qualify for exclusion if they pertain to confidential sources or the assessments' very existence is a classified fact, hence the need for vetting certain closed assessment files. If the determination is made that certain law enforcement records meet the 5 U.S.C. § 552 (c)(1), (c)(2), and/or (c)(3) criteria, those records qualify for an exclusion, making them "not responsive" to the FOIA request.

(31)    The preliminary search query determined that approximately 25,768 indexed files would potentially require exclusion vetting. To accomplish this critical task, FOIA analysts must coordinate with the appropriate FBI employee(s), including Special Agents ("SAs")[8] and other FBIHQ Division employees worldwide, receive feedback, and carefully evaluate that feedback against statutory criteria to make informed determinations. This is a two-

---

[6] 5 U.S.C. § 552 (b)(7)(A) protects records and/or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings.

[7] 5 U.S.C. § 552 (b)(1) protects records and/or information specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive Order.

[8] SAs have firsthand knowledge and up-to-date information of those investigations and can better assess the impact of processing records pursuant to the FOIA on those ongoing investigative efforts.

step proeess.  First, RIDS estimates it would take approximately 675,122 minutes (approximately 11,252 hours or approximately 469 days) to initiate coordination with FBI employees concerning the law enforcement sensitivities within approximately 25,768 Assessments.  Second, RIDS estimates the time for FBI employees' responses at approximately 10 days for five (5) files. RIDS divided 25,768 potentially responsive Assessments by five (5) resulting in 5,154.  RIDS then multiplied 5,154 by 10 days resulting in approximately 51,536 days to receive this crucial vetting feedback on approximately 25,768 Assessments.

(32)    As outlined above, Plaintiff's request is so wide ranging in scope that it would be unduly burdensome to locate, scope, and vet records to assemble a pool of responsive material subject to the FOIA for processing.

*The Estimated Time and Cost of Search and Vetting is Unreasonably Burdensome*

(33)    The significant estimated time and cost to [9] fulfill Plaintiff's request is unreasonable, or in terms of the DOJ regulatory standard, responsive records for this lengthy time span and enterprise scope cannot be located with a "reasonable amount of effort."[10]

(34)    RIDS estimates the expense to conduct a preliminary review of the approximately 75,746 Assessments for responsiveness is approximately $15,314.00.  As discussed in ¶ 27 *supra*, RIDS estimated approximately 37,873 minutes (approximately 631 hours) to conduct a preliminary review of approximately 75,746 potentially responsive Assessments.  RIDS multiplied 631 hours by $24.27 resulting in a cost of $15,314.00.

_____

[9] RIDS estimates the cost of one Grade 7, Step 1 analyst to review, scope, and vet potentially responsive records is approximately $24.27 per hour, which is the same rate that RIDS uses to calculate processing costs.  The expense estimates are calculated from the U.S. Office of Personnel Management ("OPM"), 2022 General Schedule ("GS") salary table for the locality area of Washington D.C.

[10] *See* 28 C.F.R. § 16.3(b).

(35)    RIDS estimates the expense to scope physical files for approximately 75,746 potentially responsive Assessments is approximately $306,384.00.  As discussed in ¶ 28 *supra*, RIDS estimated approximately 757,460 minutes (approximately 12,624 hours) to scope 75,746 Assessments.  RIDS multiplied 12,624 hours by $24.27 resulting in approximately $306,384.00.

(36)    RIDS estimates the expense to vet approximately 25,768 potentially responsive Assessments is approximately $30,291,775.00.  As discussed in ¶¶ 30-31 *supra*, RIDS estimated approximately 675,122 minutes (approximately 11,252 hours) to initiate coordination with FBI employees worldwide for vetting process of approximately 25,768 Assessments.  RIDS multiplied 11,252 hours by $24.27 resulting in approximately $273,086.00. Additionally, RIDS estimated approximately 51,536 days for FBI employees to respond back to RIDS with vetting feedback for approximately 25,768 Assessments.  RIDS multiplied 51,536 days by 24 hours per day resulting in approximately 1,236,864 hours.  RIDS then multiplied 1,236,864 hours by $24.27 resulting in approximately $30,018,689.00.  Finally, RIDS added the approximately $273,086.00, to coordinate with FBI employees, and the approximately $30,018,689.00, for FBI employees' response time, resulting in a sum of approximately $30,291,775.00 to conduct the internal vetting process.

(37)    Collectively, as described in ¶¶ 34-36 *supra*, RIDS estimates an expense of approximately $30,613,473 to the FBI for RIDS to review and scope approximately 75,746 potentially responsive Assessments, and vet approximately 25,768 potentially responsive Assessments.  Additionally, the estimated time to complete this collective process for the search and vetting phase is approximately 1,261,371 hours (approximately 52,557 days).

16

*Retrieving Records for Processing*

(38)     After the total pool of responsive records is finally identified per the process outline above, RIDS must gather all the records for ingest into the FOIPA Document Processing System ("FDPS") to start the FOIA processing phase.  FDPS is the internal repository and application utilized by the RIDS to process, track, and respond to FOIA requests received by the FBI.  RIDS estimates it would take approximately 2,272,380 minutes (approximately 37,873 hours) to download the 75,746 potentially responsive Assessments from Sentinel (if all records are electronically available).  RIDS estimates it would take approximately 30 minutes per file to download responsive files from Sentinel.  RIDS multiplied 75,746 potentially responsive Assessments by 30 minutes per file resulting in approximately 2,272,380 minutes (37,873 hours) to download the records for processing.

(39)     If physical records or media must be gathered, RIDS estimates it would take approximately two (2) minutes per file to just order a file for retrieval.  Theoretically, if approximately 10,000 files out of the approximate 75,746 potentially responsive Assessments contained physical records or media and needed to be ordered, it would take approximately 20,000 minutes (approximately 333 hours) to order the files.  RIDS multiplied approximately 10,000 files by two (2) minutes per file resulting in 20,000 minutes (333 hours).

(40)     Additionally, in terms of cost, RIDS estimates the expense to retrieve approximately 75,746 potentially responsive Assessments is approximately $919,178.00.  As discussed in ¶ 38 *supra*, RIDS estimated approximately 2,272,380 minutes (approximately 37,873 hours) to collect 75,746 potentially responsive Assessments (if all records are electronically available).  RIDS multiplied 37,873 hours by $24.27 per hour resulting in approximately $919,178.00.  Additionally, if theoretically, 10,000 files out of the 75,746

Assessments needed to be ordered, RIDS estimates the additional expense to collect approximately 10,000 files is approximately $8,082.00. RIDS estimates it would take approximately 20,000 minutes (333 hours) to order 10,000 files. RIDS multiplied 333 hours by $24.27 per hour resulting in approximately $8,082.00.

*Importing Records*

(41)     If all the potentially responsive records, approximately 75,746 Assessments files, are ultimately determined responsive to Plaintiff's request, RIDS would have to import approximately 11,205,320 pages into FDPS for further for processing and application of FOIA exemptions. RIDS estimates the time required to import approximately 11,205,320 pages is about 112,053 minutes (approximately 1,867 hours). RIDS estimated for approximately 500 pages it would take approximately 5 minutes to import into FDPS. RIDS divided 11,205,320 pages by 500-page work items resulting in approximately 22,410 work items. Then, RIDS multiplied approximately 22,410 work items by 5 minutes resulting in approximately 112,053 minutes (1,867 hours) for importing.

(42)     Additionally, RIDS estimates the expense to import approximately 75,746 Assessments (approximately 11,205,320 pages) is $45,312.00. As discussed in ¶ 41 *supra*, RIDS estimates approximately 112,053 minutes (approximately 1,867 hours) to import approximately 11,205,320 pages. RIDS multiplied approximately 1,867 hours by $24.27 per hour resulting in $45,312.00.

(43)     Overall, the FBI estimates an expense of approximately $31,586,045.00 to complete the search and vetting phase for 75,746 files plus retrieving and importing responsive Assessment records into FDPS for processing and this process would take approximately 39,740 hours (or approximately 1,656 days) to complete. Theoretically, if physical files needed to be

18

ordered, the total process would take approximately 40,073 hours (or approximately 1,670 days) to complete.  *See* ¶¶ 34-36, 40 and 42 *supra.*

*FOIA Processing Phase: Estimated Time and Cost to Process Records for Public Release*

(44)   The records responsive to an individual FOIA request are imported into FPDS for review, redaction, and inspection prior to public release.  FOIPA Operating Units, Classification Unit, and/or National Security Unit conduct page-by-page reviews of all responsive case files (or Assessments in this instance) and coordinate with Subject Matter Experts ("SME"), such as Special Agents, Intelligence Analysts, other FBI employees who are experts in particular operational or technical subject matters, agency counsel, as well as FBI personnel in the office of origin that opened the case file or Assessment to inspect records and ensure the FBI's equities are properly protected.

(45)   RIDS's interim release policy is to review/process records in 500-page increments per month per request or per litigation.  By processing and making interim responses based on 500-page work items, the FBI is able to provide more pages to more requesters, thus avoiding a system where a few large requests or litigations monopolize finite processing resources and where fewer requesters' FOIPA requests are being fulfilled.[11]  By working in 500-page increments, the FBI has found that more pages get processed, reviewed, and released to more requesters each month because processors can work on 500-page work items for several requests or litigations in a month.  Also, 500-page work items are more manageable for the SMEs outside of RIDS who review the materials to ensure that FBI equities are properly

---

[11]  The FOIA encourages agencies to develop multi-track processing with the goal of responding to more requests.  *See, e.g.*, 5 U.S.C. § 552(a)(6)(D).  As a result, the FBI has established four processing queues for small requests (1-50 pages), medium requests (51-950 pages), large requests (951-8,000 pages), and extra-large requests (more than 8,000 pages).

addressed and who juggle these FOIPA reviews with their FBI mission duties. Finally, it is more efficient to run required information security protocols on FOIPA releases of 500 pages or less. Because many FBI records contain classified information and because all FBI records are processed on a classified computer enclave, records can only be disclosed after being run through security protocol scans for particular information to ensure that it is not improperly disclosed. The time required to run security protocols and resolve any issues that may arise increases as pages are added.[12]

(46) To fulfill Plaintiff's FOIA request, RIDS estimates that it will require approximately 22,410 months (approximately 1,867 years) to review, redact, and arrange for inspection approximately 11,205,320 pages, for approximately 75,746 Assessments. As described in ¶ 45 *supra*, RIDS standard processing practice and interim release policy is to review and redact records in 500 page-per-month ("ppm") increments. RIDS divided 11,205,320 pages by 500 pages resulting in 22,410 months for conducting a page-by-page, line-by-line review and redaction of information exempt pursuant to applicable FOIA Exemptions, as well as inspection prior to public release.

*Total Estimated Expense and Time for Plaintiff's Request*

(47) RIDS estimates the total expense for the FBI to complete the search and vetting phase, retrieve and import records for processing, is approximately $31,586,045.00, and would require approximately 1,301,444 hours (or 54,227 days). In addition, RIDS estimates it would take 22,410 months (approximately 1,867 years) to process Plaintiff's request as noted in ¶ 46 *supra*

---

[12] *See National Security Counselors, et al. v. United States Department of Justice*, 15-5117, 848 F.3d 467 (D.C. Cir. 2017).

*Impact of Plaintiff's FOIA Request on the FBI's FOIA Workload*

(48)     The FBI currently employs 237 Government Information Specialists, with support from 87 contractors to process requests for FBI information under the FOIA and Privacy Acts and conduct classification and declassification reviews, *inter alia*.  RIDS staff are assigned to units that receive and open new FOIPA requests, conduct searches,  make responsiveness determinations, and ingest responsive records into FDPS; review and make national security classification determinations pursuant to Executive Order 13526, conduct mandatory and systematic declassification reviews; process responsive records by applying exemptions and prepare them for public dissemination; serve as RIDS's Public Information Office and provide administrative assistance and support to RIDS units; assist the FBI Office of General Counsel's FOIPA Litigation Unit in handling all FOIPA lawsuits against the FBI.

(49)     The FBI is currently inundated with an extraordinary amount of FOIPA requests.[13]  In recent years, the FBI has experienced a spike in requests submitted to the agency. In Fiscal Year ("FY") 2021, as of September 30, 2021, the FBI has received 29,829 FOIPA requests, which is a 45% increase over the intake for FY 2015, when the intake was 18,799 requests.  In FY 2021, as of September 30, 2021, the FBI has resolved 29,429 FOIPA requests, has reviewed over 860,000 pages of records in response to FOIPA requests, and the FBI has 10.77 million pages of records in response to FOIPA requests pending FOIA review

(50)     The FOIA specifies two requirements for a request to be valid: it must "reasonably describe" the records sought, and it must be made in accordance with the agency's published FOIA regulations.  Upon receipt of an individual FOIPA request, RIDS ensures that the request meets the statutory requirements and is reasonably described.  A proper FOIPA

---

[13] Plaintiff individually, and/or on behalf of the CATO Institute, has 371 pending requests.

request enables the FBI to comply with the FOIPA by applying a reasonable amount of time and resources to fulfil each FOIPA request so that finite resources can be equitably applied to provide the most information to the most requesters. The FBI determined that Plaintiff's FOIA request is not a proper FOIA request because it is so wide ranging that and overly broad in scope that the FBI cannot locate and identify records with a "reasonable amount of effort."[14] It would require an inordinate amount of time and resources to search, review, scope, vet, retrieve, import, redact, and inspect a vast quantity of material, as well as impose an immense burden on the FBI as a whole, requiring excessive time away from FBI mission critical duties to service this one FOIA request.

### *The FBI's Attempts to Narrow*

(51)    Subsequent to the filing of Plaintiff's Complaint, the FBI attempted to discuss narrowing options with Plaintiff. As discussed in the November 12, 2021 Joint Status Report, and in a September 21, 2021 email, the FBI provided Plaintiff with four (4) proposals for potentially narrowing Plaintiff's request in an attempt to reduce the burden on the FBI. The FBI's four (4) proposals are: 1) Plaintiff could narrow its request to closed cases involving 20 or less file classifications of interest to Plaintiff; 2) Plaintiff could narrow its request to selected closed cases from a few locations where an Assessment was opened (e.g., Headquarters or a few of the 56 field offices); 3) the FBI could review and process, for closed files, the opening electronic communications ("ECs") and closing ECs which pertain to why an Assessment was opened or closed; or 4) Plaintiff could narrow the request to a specific date range for when an Assessment was opened for closed files. On November 10, 2021, Plaintiff rejected the FBI's proposals. (ECF No. 16.)

---

[14] *See* 28 C.F.R. § 16.3(b).

## CONCLUSION

(52)    The FBI determined that Plaintiff's request is not a proper FOIA request
that would allow RIDS to search, identify, and gather potentially responsive records with a
"reasonable amount of effort" under the FOIA.  Additionally, the inordinate amount of time,
resources, and expense required to search, review, scope, vet, and gather the vast quantity of
potentially responsive records, combined with the time, resources, and expense to import, redact,
and inspect for public release responsive records required to fulfill Plaintiff's request is
unreasonable and unduly burdensome.  Accordingly, the FBI appropriately denied Plaintiff's
FOIA request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through E attached hereto are true and correct copies.

Executed this ___18th___ day of March 2022.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

24

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE,<br><br>                    Plaintiff,<br><br>          v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br>*et al*.,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)          Civil Action No. 21-1054 (RDM)<br>)<br>)<br>)<br>)<br>)<br>) |

# __Exhibit A__

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2020-09-10T20:28:52.523689+00:00 Status: pending Message:

## Organization Representative Information

| | |
|---:|---|
| **Organization Name** | Cato Institute |
| **Prefix** | Mr. |
| **First Name** | Patrick |
| **Middle Name** | |
| **Last Name** | Eddington |
| **Suffix** | |
| **Email** | peddington@cato.org |
| **Phone** | 5712153468 |
| **Location** | United States |

## Domestic Address

| | |
|---:|---|
| **Address Line 1** | 5106 Southampton Drive |
| **Address Line 2** | |
| **City** | Annandale |
| **State** | Virginia |
| **Postal** | 22003 |

## Agreement to Pay

| | |
|---|---|
| **How you will pay** | I am requesting a fee waiver for my request and have reviewed the FOIA reference guide. If my fee waiver is denied, I am willing to pay additional fees and will enter that maximum amount in the box below. |
| **Allow up to $** | 25 |

## Proof Of Affiliation for Fee Waiver

| | |
|---|---|
| **Waiver Explanation** | See attached request regarding Type 1, Type 2, and Type 3 Assessments. |
| **Documentation Files** | |

## Non-Individual FOIA Request

| | |
|---|---|
| **Request Information** | See attached request regarding Type 1, Type 2, and Type 3 Assessments. |

## Expedite

| | |
|---|---|
| **Expedite Reason** | See attached request regarding Type 1, Type 2, and Type 3 Assessments. |

**

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

**

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBIâ€™s electronic FOIA Library (The Vault) on the FBIâ€™s public website, http://vault.fbi.gov by clicking on the â€˜Check Status of Your FOI/PA Requestâ€™ link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.

----END MESSAGE----

September 10, 2020

VIA FBI FOIA PORTAL

Federal Bureau of Investigation
Work Process Unit
170 Marcel Drive
Winchester, VA 22602

To the responsible FOIA Officer:

Pursuant to the federal Freedom of Information Act, 5 U.S.C. § 552, I
request copies of all Type 1, Type 2, and Type 3 FBI Assessments (as
defined in the Domestic Investigations and Operations Guide, DIOG)
opened since September 29, 2008.

Pursuant to this request, I ask that the FBI search any cross-reference files
or electronic surveillance (ELSUR), technical surveillance (TESURS), or
microphone surveillance (MISURS) files for responsive records, and to
query FBI field offices for potentially responsive documents, including
those deemed automatically declassified per the FBI Automatic
Declassification Manual issued in May 2007. Further, I ask that any search
include records generated pursuant to "sensitive investigative matters,"
"assessments" or "undisclosed participation" as described in DIOG
likewise be conducted. Additionally, this request encompasses a search of
the FBI's SharePoint system, as well as any other systems used for
electronic communications (ECs) or the dissemination of FBI alerts or
intelligence products. Finally, I ask that any search include any references
to 5 U.S.C. § 552(c)(1), (c)(2), or (c)(3) in connection with the subject of
this request.

In order to help to determine my status to assess fees, you should know
that I am a Research Fellow and scholar at the Cato Institute, an IRS-
recognized 501(c)(3) nonprofit educational and public interest
organization. As I am employed by an educational or noncommercial
scientific institution, this request is made for a scholarly or scientific
purpose and not for a commercial use. Disclosure of the requested
information to me is in the public interest because it is likely to contribute
significantly to public understanding of the operations or activities of the
government and is not primarily in my commercial interest. I request a
waiver of all fees for this request.

Whenever possible, please provide the requested information in electronic
Portable Document Format (PDF). If my request is denied in whole or part,
I ask that you justify all deletions by reference to specific exemptions of
the act. I will also expect you to release all segregable portions of
otherwise exempt material. I, of course, reserve the right to appeal your
decision to withhold any information or to deny a waiver of fees. I would
appreciate your communicating with me by email or telephone, rather

than by mail. My email address is peddington@cato.org and my cell number is 571-215-3468.

Please provide expedited processing of this request which concerns a matter of urgency. As a Research Fellow, my job is disseminating information. The public has an urgent need for information about ongoing FBI surveillance or related operations that have contributed to the violation of fundamental constitutional rights. Federal government domestic surveillance activities are a source of media stories on literally a weekly basis, making this a very high-profile topic of intense public and Congressional interest.

As a Cato scholar, I meet the statutory definition of a "representative of the news media" per Cause of Action v. F.T.C., 799 F.3d 1108 (D.C. Cir. 2015) as Cato and its scholars (1) gather information of potential interest (2) to a segment of the public; (3) use editorial skills to turn the raw materials into a distinct work; and (4) distribute that work (5) to one or more audiences. Accordingly, I ask for expedited processing on that basis. I certify that my statements concerning the need for expedited processing and fee waivers are true and correct to the best of my knowledge and belief.

I look forward to your determination regarding my request for expedited processing within 10 calendar days, as the statute requires. Thank you for your assistance.

Sincerely,

Patrick G. Eddington
Research Fellow
Cato Institute
5106 Southampton Drive
Annandale, VA 22003
571-215-3468 (cell)
peddington@cato.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CATO INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-1054 (RDM) |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# <u>Exhibit B</u>



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

October 2, 2020

MR. PATRICK GLENN EDDINGTON
CATO INSTITUTE
5106 SOUTHAMPTON DRIVE
ANNANDALE, VA 22003

FOIPA Request No.: NFP-124015
Subject: All Type 1, Type 2, and Type 3 FBI
Assessments
(Opened Since September 29,2008)

Dear Mr. Eddington:

This is in response to your Freedom of Information Act (FOIA) request.   Your request is overly broad and it does not comport with the requirements of 28 CFR § 16.3(b), as it does not provide enough detail to enable personnel to locate records "with a reasonable amount of effort." Therefore, your request is being closed.

For questions on how to reasonably describe your request, please email us at foipaquestions@fbi.gov.   You may also visit www.fbi.gov and select "Services," "Information Management," and "Freedom of Information/Privacy Act" for additional guidance.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

Michael G. Seidel
Acting Section Chief,
Record/Information
   Dissemination Section
Information Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 21-1054 (RDM)

# <u>Exhibit C</u>

Status: Submitted        Last Event: Appeal Submitted    Last Event Date: 10/02/2020      Attorney:

HOME        TRACKING INBOX        SEARCH

Tracking Inbox  »  Appeal

# A-2021-02171
Requester: Eddington, Patrick

**Appeal**    Document    Event    Note

## Appeal Information

| | | |
|---|---|---|
| Received Date | 10/02/2020 🗓 (mm/dd/yyyy) | Agency | OIP |
| Due Date | 11/02/2020 | Document Delivery Method | Email |
| Receipt Method | Electronic | Topic | |
| Appeal Is In Litigation | No | Assigned Attorney | |
| Unusual Circumstances | | | |
| Track | | | |
| Significant | ○ Yes ● No | | |
| Coordination | ○ Yes ● No | | |

## Request Information

| | |
|---|---|
| Request Number | NFP-124015 |
| Component | FBI |
| Component Email | fbi.foipa.appeal@fbi.gov |

## Basis for Appeal

| | |
|---|---|
| Description of Appeal | See attached appeal regarding FBI Type 1, Type 2, and Type 3 Assessments. |
| Based on Denial of Fee Waiver | ○ Yes ● No |
| Based on Denial of Expedited Processing | ○ Yes ● No |
| Requester Item Type 1 | Supplemental Information |
| Requester Items 1 | 📎 FOIA too broad response appeal FBI Type 1-3 Assessments 100220.docx  [ Replace | Remove ] |

10/2/2020

Appeal - MP FOIA 2.1.10

| Status: Submitted | Last Event: Appeal Submitted | Last Event: Appeal Submitted: 10/02/2020 | Attorney: |

**Requester Items 2**

**Requester Item Type 3**

**Requester Items 3**

## Requester Contact Information

**Q Search Requester**

| Salutation | Mr. |
| First Name | Patrick |
| Middle Name | |
| Last Name | Eddington |
| Email Address | peddington@cato.org |
| Organization | Cato Institute |
| Register Number | |
| Phone Number | 5712153468 |
| Fax Number | |
| Other Information | |

| Address Type | |
| Country | United States |
| Address Line 1 | 5106 Southampton Driv |
| Address Line 2 | |
| City | Annandale |
| State | |
| Zip/Postal Code | 22003 |

## Expedited Processing Information

| Expedited Processing Requested? | Yes |
| Expedited Processing Request Date | (mm/dd/yyyy) |
| Expedited Processing Determination | |

Standards for Expedition

☐ 1. Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual.
☑ 2. An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information.
☐ 3. The loss of substantial due process rights.
☐ 4. A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.

Expedited Justification

See attached appeal re; Type 3 Assessments

Form Record Audit

2/3

10/2/2020

Appeal - MP FOIA 2.1.10

Status: Submitted

Last Event: Appeal Submitted

Last Event Date: 10/02/2020

Attorney:

October 2, 2020

VIA FOIASTAR

Director, Office of Information Policy (OIP)
United States Department of Justice
Suite 11050
1425 New York Avenue, NW
Washington, D.C. 20530-0001

To the responsible FOIA Officer:

Pursuant to the federal Freedom of Information Act, 5 U.S.C. § 552, I hereby appeal the adequacy of
the search conducted regarding my request NFP-124015, regarding Type 1, Type 2, and Type 3 FBI
Assessments.

The Bureau's response claims that my request was too broad to undertake a search. I disagree. To
be valid, a request need only "reasonably describe" the records it seeks so that knowledgeable
agency employees will be able to determine "precisely what records are being requested." Yeager v.
DEA, 678 F.2d 315, 322 (D.C. Cir. 1982). Similarly, an agency cannot reject a request on the grounds
that a search would be burdensome. And the fact that a request may yield a great many responsive
records is immaterial, so long as the agency can identify which records to produce. Id. As is the case
with any FOIA or Privacy Act request, the official legal definition of a "record" is codified at 44
U.S.C. § 3301. That is exactly the standard that applies here.

Moreover, the FOIA statute does not require a requester to know, much less provide, detailed,
specific office or component descriptions for a FOIA request to be statutorily valid. As the D.C.
Circuit has held, it is "inevitable that the party with the greatest interest in obtaining disclosure is at
a loss to argue with desirable legal precision for the revelation of the concealed information."
Vaughn v. Rosen, 484 F.2d 820, 823, 828 (D.C. Cir. 1973) (imposing a "substantial burden on an
agency seeking to avoid disclosure" to alleviate this problem). Like almost all FOIA requesters, I am
at an "informational disadvantage." Judicial Watch, Inc. v. U.S. Dep't of Justice, 57 F. Supp. 3d 48, 52
(D.D.C 2014).

Appendix J, Section J.1.4.5.1.1 of the DIOG makes clear that Type 1 and Type 2 Assessments "must
be filed in an applicable zero sub-assessment file (e.g., 91-0-ASSESS-D, 15-0-ASSESS) when
completed" and that Type 3 Assessments (per section J.1.4.5.1.2) notes that

> The title/caption of the opening EC must contain the word 'Assessment,' and the synopsis
> must identify the purpose and the objective of the Assessment.  If at the time of the
> opening, or at any time thereafter, the Assessment involves a sensitive investigative matter,
> the title/caption must contain the words 'Assessment' and 'Sensitive Investigative Matter.'

Section J.2 also notes that

> The text of FBI-generated documents must be uploaded into the Electronic Case File (ECF)
> component of the ACS system to be searchable, retrievable, and sharable through
> automated means. A full text search of the ACS system's ECF identifies only information that
> is available electronically and does not search for information that may be contained in the
> FBI's paper records. (italics added)

It is clear that FBI systems are capable of searching for and retrieving those records designated as Assessments. Accordingly, my request more than adequately meet FOIA statutory requirements, and I respectfully ask that OIP remand my request to FBI for immediate processing.

In order to help to determine my status to assess fees, you should know that I am a research fellow and scholar at the Cato Institute, an IRS-recognized 501(c)(3) nonprofit educational and public interest organization. As I am employed by an educational or noncommercial scientific institution, this request is made for a scholarly or scientific purpose and not for a commercial use. Disclosure of the requested information to me is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in my commercial interest. I request a waiver of all fees for this request.

Whenever possible, please provide the requested information in electronic Portable Document Format (PDF). If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions of the act. I will also expect you to release all segregable portions of otherwise exempt material. I, of course, reserve the right to appeal your decision to withhold any information or to deny a waiver of fees. I would appreciate your communicating with me by email or telephone, rather than by mail. My email address is peddington@cato.org and my cell number is 571-215-3468.

Please provide expedited processing of this request which concerns a matter of urgency. As a Research Fellow, I am primarily engaged in disseminating information. The public has an urgent need for information about whether the FBI has conducted potentially unconstitutional surveillance or related activities against domestic organizations engaged in constitutionally protected activities. Assessments released to me previously by the FBI on the League of Women Voters and the International Rescue Committee, among others, raise fundamental concerns that the FBI is utilizing the Assessment process as a means of unconstitutionally monitoring domestic groups engaged in the public policy process. Federal government domestic surveillance activities are a source of media stories on literally a weekly basis, making this a very high-profile topic of intense public and Congressional interest.

As a Cato scholar, I meet the statutory definition of a "representative of the news media" per Cause of Action v. F.T.C., 799 F.3d 1108 (D.C. Cir. 2015) as Cato and its scholars (1) gather information of potential interest (2) to a segment of the public; (3) use editorial skills to turn the raw materials into a distinct work; and (4) distribute that work (5) to one or more audiences. Accordingly, I ask for expedited processing on that basis.

I certify that my statements concerning the need for expedited processing are true and correct to the best of my knowledge and belief. I look forward to your determination regarding my request for expedited processing within 10 calendar days, as the statute requires. Thank you for your assistance.

Sincerely,

Patrick G. Eddington
Research Fellow
Cato Institute
5106 Southampton Drive

Annandale, VA 22003
571-215-3468 (cell)
peddington@cato.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE,<br><br>                    Plaintiff,<br><br>          v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br>*et al*.,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)          Civil Action No. 21-1054 (RDM) |

# **Exhibit D**



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

October 02, 2020

Patrick Eddington
CATO
5106 Southampton Drive
Annandale, VA 22003
peddington@cato.org

Dear Patrick Eddington:

This is to advise you that the Office of Information Policy (OIP) of the U.S. Department of Justice received your administrative appeal from the action of the FBI regarding Request No. NFP-124015 on 10/02/2020.

In an attempt to afford each appellant equal and impartial treatment, OIP has adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number A-2021-02171 . Please refer to this number in any future communication with OIP regarding this matter. Please note that if you provided an email address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

We will notify you of the decision on your appeal as soon as we can. If you have any questions about the status of your appeal, you may contact me at (202) 514-3642. If you have submitted your appeal through FOIA STAR, you may also check the status of your appeal by logging into your account.

Sincerely,

*Priscilla Jones*

Priscilla Jones
Supervisory Administrative Specialist

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CATO INSTITUTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 21-1054 (RDM) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| *et al*., | ) |
| | ) |
| Defendants. | ) |
| | ) |

# __Exhibit E__



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Patrick Eddington                                    February 25, 2021
Cato Institute
5106 Southampton Drive                    Re:    Appeal No. A-2021-02171
Annandale, VA  22003                              Request No. NFP-124015
peddington@cato.org                               CDT:JKD

**VIA: online portal**

Dear Patrick Eddington:

You appealed from the action of the Federal Bureau of Investigation on your Freedom of Information Act request for copies of all Type 1, Type 2, and Type 3 Assessments opened since September 29, 2008.  I note that your appeal concerns the FBI's determination that your request was overly broad.

After carefully considering your appeal, I am affirming the FBIs action on your request. A proper FOIA request for records must reasonably describe the records sought.  See 5 U.S.C. § 552(a)(3)(A); see also 28 C.F.R. § 16.3(b)(2020).  Your request is not reasonably described because you did not characterize the records sought in such a way that they could be located without searching through millions of records.  Courts have consistently held that the FOIA does not require agencies to conduct "unreasonably burdensome" searches for records.  See, e.g., Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 (D.C. Cir. 1995).  If you would like to narrow the scope of your request, please contact the FBI directly.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of the FBI in response to your request.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information

Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal. Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

Sincerely,

X_____
Matthew Hurd, Acting Chief, Administrative
Appeals Staff