**IN THE UNITED STATES DISTRICT COURT**
**OF THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CATO INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-cv-1054 (RDM) |
| | ) | |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| *et. al.,* | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

   **A.     The FBI's budget, FOIA compliance efforts, and history of backlogs and untimely responses.**

   1.     The Federal Bureau of Investigation has an annual budget of nearly $10 billion dollars.  FBI FY 2021 Budget Request at a Glance, at 1 ("FBI FY21 Budget Request").[1]

   2.     The FBI's FY21 budget request did not include any program changes or any new expenditures for FOIA compliance.  *See* FBI FY21 Budget Request.

   3.     The FBI spent approximately $49M, which less than 0.5% of its budget, on FOIA compliance in FY21.  Dep't of Justice Annual FOIA Report FY21, at § IX p. 1.[2]

   4.     For the past five years, the FBI has maintained a backlog of over 4000 requests at the end of each reporting year. Department of Justice FY16-FY21 Annual FOIA Reports, § XII.A Backlogs of FOIA Requests and Administrative Appeals.[3]

---

[1] https://www.justice.gov/doj/page/file/1246691/download#:~:text=The%20FY%202021%20budget%20request,and%20confirmed%20by%20the%20Senate.  Provided as Exhibit A.
[2] https://www.justice.gov/oip/page/file/1478941/download.  Provided as Exhibit B.
[3] https://www.justice.gov/oip/reports-1. Provided as Exhibit C.

5.      In FY21, the average response time for perfected FBI FOIA requests that were granted expedited processing (*i.e.*, requests in which the FBI acknowledged there is an "urgency" to inform the public) was 386 days.  Dep't of Justice Annual FOIA Report FY21, § VII.A.[4]

**B.      The subject matter of the requests.**

6.      Plaintiff's request pertains to FBI "Assessments" as defined in the Domestic Investigations and Operations Guide ("DOIG").[5]

7.      Under the DIOG, which is the FBI's implementation of the Attorney General's Guidelines for Domestic FBI Operations, the FBI can conduct a variety of "assessments" when there is "not any particular factual predication" to conduct a predicated investigation.  Attorney Gen. Guidelines for Domestic FBI Operations,[6] at 17 ("Guidelines").

8.      In conducting these Assessments, the FBI may collect and analyze a broad variety of information from publicly available sources, federal investigative records, state and local entities, human sources, surveillance not requiring a court order, and grand jury subpoenas for phone and email subscriber information.  Guidelines at 20.

9.      Due to "heightened constitutional and civil liberties concerns," DOJ and FBI policies require "special approval and reporting requirements" when these Assessments involve "public officials, political candidates, religious or political organizations or their leaders, the news media, and other similarly sensitive matters" known as Sensitive Investigative Matters (SIMs).

---

[4] https://www.justice.gov/oip/page/file/1478951/download. Provided as Exhibit D.

[5] https://vault.fbi.gov/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29%202016%20Version/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29%202016%20Version%20Part%2001%20of%2002/view.    Provided as Exhibit E.

[6] https://www.justice.gov/archive/opa/docs/guidelines.pdf.  Provided as Exhibit F.

U.S. Senate Committee on the Judiciary, March 28, 2022 Letter to Hon. Christopher A. Wray,[7] at 1 ("Judiciary Letter"); Compliance and Mitigation Unit Report, 2019 Domestic Investigations Guide Audit, at 2, provided as Exhibit H ("2019 Audit").

10.     A 2019 audit by the FBI Inspection Division found a "litany" of nearly 750 violations involving SIMs in 353 files from an 18-month period.  Judiciary Letter, at 1.

11.     The 2019 audit found failures to conduct the required legal review prior to opening a SIM, failures to obtain approval from the Special Agent in Charge or Assistant Special Agent in Charge, and failures to notify the relevant U.S. Attorney's Office and FBI headquarters.  Judiciary Letter at 1-2.

12.     The Judiciary Committee—in a letter signed by both the Chair and Ranking Member—described these as "widespread and apparently systematic violations" and a "pattern and practice of evading the rules, which consequently opens the door for political and other improper considerations to infect the investigative decision-making process."  Judiciary Letter, at 1-2.

13.     In 1976, the Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities found that pursuant to the COINTELPRO program, the FBI took the law into its own hands and engaged in a series of covert programs directed against domestic

---

[7]https://www.judiciary.senate.gov/imo/media/doc/2022-03-.28%20RJD%20CEG%20to%20FBI%20(FBI%20SIM%20Audit)(001).pdf. Provided as Exhibit G; *See also* Dick Durbin Senate Website, *Durbin, Grassley Press FBI on Reports of Widespread Rule-Breaking In Sensitive Investigations* (March 29, 2022), *available at* https://www.durbin.senate.gov/newsroom/press-releases/durbin-grassley-press-fbi-on-reports-of-widespread-rule-breaking-in-sensitive-investigations.

groups that violated First Amendment rights and were intolerable in a democratic society. Church Committee Report, Book III,[8] at 3.

14.     As part of COINTELPRO, the FBI surveilled journalists, attorneys, members of Congress, lobbyists, congressional aides, and an Associate Justice of the Supreme Court, and such surveillance has been a resource for executive power that has tempted administrations of both political parties. Church Committee Report, Book III, at 339, 341-342, 344-345.

15.     COINTELPRO demonstrates the dangers inherent in the overbroad collection of domestic intelligence; when information is available, it can be—and was—improperly used. Church Committee Report, Book III, at 16.

**C.     Plaintiff's FOIA request and extensive efforts to come to a scope agreement.**

16.     In September 2020, Plaintiff requested "all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the Domestic Investigations and Operations Guide, DOIG) opened since September 29, 2008." Compl. Ex. A, ECF No. 1-1.

17.     FBI denied the request, claiming that it "does not provide enough detail to enable personnel to locate records with a reasonable amount of effort." Compl. Ex. B, ECF No. 1-1.

18.     The request used the FBI's own terminology and referenced the FBI policy applicable to the records. Compl. Ex. B.

19.     Plaintiff appealed, providing further information about Assessments and how they are maintained in FBI record-keeping systems to further assist FBI in responding to the request. Compl. Ex. C, ECF No. 1-1.

---

[8]     www.intelligence.senate.gov/sites/default/files/94755_III.pdf, provided at Exhibit I; *see also* U.S. Senate Website, Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities, *available at* https://www.senate.gov/about/powers-procedures/investigations/church-committee.htm#Outcome.

20.     DOJ's Office of Information Policy affirmed the denial, stating that Plaintiff "did not characterize the records sought in such a way that they could be located without searching through millions of records." Compl. Ex. E, ECF No. 1-1.

21.     The search that the FBI conducted as part of this lawsuit to identify Assessments did not involve a search through millions of records.  *See* Seidel Decl.

22.     After this suit was filed, the parties engaged in discussions about the scope of the request, and Plaintiff made multiple offers and suggestions as to how the request could be limited and sought information from the FBI to allow Plaintiff to narrow the request in an intelligent manner.  Loevy Decl. at ¶¶ 9-19, provided as Exhibit J.  This included a proposal to limit the request to only closed SIM Assessments.  *Id.* at ¶ 14.

23.     The FBI either refused or ignored all of Plaintiff's offers and suggestions.  Loevy Decl. at ¶¶ 16, 19.

24.     On March 24, 2022, after receiving the FBI's opening brief with additional details about the FBI's claimed burden in responding to the request, Plaintiff reiterated prior offers and made additional offers to narrow the scope of the request.  Loevy Decl. at ¶ 17.  This included reiterating a prior offer to limit the request to only closed SIM Assessments for the relevant time period.  *Id.*

25.     On April 15, 2022, the FBI responded to Plaintiff's March 25 communication, rejecting all of Plaintiff's proposals and offering only 5 closed SIM Assessments for each year, which does not allow Plaintiff or the public to adequately understand the FBI's activities with regard to these Assessments.  Loevy Decl. at ¶ 19.

26.     In its April 15 communication, the FBI indicated that the total number of closed SIM Assessments for the requested time period was 1068.  Loevy Decl. at ¶ 19.

**D.      Additional relevant facts.**

27.      Standard statistical practice in selecting a sample size from approximately 10,000 files calls for a sample size of approximately 1000 sample files.  Inspection Division External Audit and Compliance, DIOG: An Audit of Assessments and Investigations Opened Between May 1, 2013 and April 30, 2014 at 4, provided as Exhibit K.

28.      The DIOG requires that for any SIM Assessment, "the title/caption must contain both the words 'Assessment' and 'Sensitive Investigative Matter.'"  DIOG § 10.1.4.

29.      If a matter that has been designated as a SIM no longer remains a SIM due to a change in the facts and circumstances of the assessment or investigation, this change of designation must be made in the file and the caption.  DIOG § 10.1.4.

30.      The Inspection Division's 2019 audit identified the total number of SIMs in the relevant time period.  2019 Audit, at 2.


Dated:  April 18, 2022                                           RESPECTFULLY SUBMITTED,

                                                                         /s/ *Matthew V. Topic*

                                                                         _____

                                                                         Attorneys for Plaintiff
                                                                         Matthew Topic, D.C. Bar No. IL0037
                                                                         Josh Loevy, D.C. Bar No. IL0105
                                                                         Merrick Wayne, D.C. Bar No. IL0058
                                                                         Shelley Geiszler, D.C. Bar No. IL0087
                                                                         LOEVY & LOEVY
                                                                         311 North Aberdeen, 3rd Floor
                                                                         Chicago, IL 60607
                                                                         312-243-5900
                                                                         foia@loevy.com