**IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CATO INSTITUTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-cv-1054 (RDM) |
| | ) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| *et. al.*, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

- i -

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | BACKGROUND | 2 |
| | A. The information at issue in this case | 2 |
| | B. Plaintiff's FOIA request and extensive efforts to come to a scope agreement | 4 |
| II. | LEGAL STANDARDS | 5 |
| | A. General FOIA principles | 5 |
| | B. The "reasonably described" requirement | 5 |
| III. | ARGUMENT | 8 |
| | A. The FBI understands what records have been requested and its arguments about search and processing burden are legally irrelevant | 8 |
| | B. The FBI's burden estimates are unsupported | 9 |
| | C. The FBI has not addressed the alleged burden of complying with any of Plaintiff's proposals to narrow the scope of the request, including limiting the scope to only closed SIM Assessments | 10 |
| IV. | CONCLUSION | 11 |

# **TABLE OF AUTHORITIES**

*Cases*

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013) ...................................................................................................................2

*Ctr. for Investigative Reporting v. Customs & Border Prot.,* 436 F. Supp. 3d 90 (D.D.C. 2019) ...................................................................................................................9

*Dep't of Justice v. Reps. Comm. For Freedom of Press*, 489 U.S. 749 (1989) ...............................3

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.,* 777 F.3d 518 (D.C. Cir. 2015) ..........................6

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ..........................................5, 7, 8

*Howard v. United States,* 435 F. Supp. 3d 198 (D.D.C. 2020)......................................................10

*Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770 (D.C. Cir. 2018).................................5

*King v. Dep't of Justice,* 830 F.2d 210, 218 (D.C. Cir. 1987) ......................................................10

*Nat'l Archives & Recs. Admin. v. Favish,* 541 U.S. 157 (2004) .....................................................5

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978)............................................................5

*People for American Way Foundation v. Dep't of Justice*, 451 F. Supp. 2d 6 (D.D.C. 2006) ..............................................................................................................10, 11

*Pub. Employees for Envtl. Responsibility v. EPA,* 314 F. Supp. 3d 68 (D.D.C. 2018) ...................7

*Pub. Invs. Arb. Bar Ass'n v. SEC*, 771 F.3d 1 (D.C. Cir. 2014) ......................................................6

*Shapiro v. CIA,* 170 F. Supp. 3d 147 (D.D.C. 2016) ..................................................................7, 8

*Yeager v. DEA*, 678 F.2d 315 (D.C. Cir. 1982) ..............................................................................7

*Statutes*

5 U.S.C. § 552(a)(3)(A) ..................................................................................................................6

5 U.S.C. § 552(a)(3)(D) ..................................................................................................................9

5 U.S.C. § 552(a)(6)(B)(iii)(II) .......................................................................................................8

*Other Authorities*

Dep't of Justice, Office of Info. Privacy, FOIA Update Vol. IV, No. 3 (1983) ...............................7

Fed. R. Civ. P. 56(c)(4)....................................................................................................................9

Fed. R. Evid. 702 ............................................................................................................................9

The Federal Bureau of Investigation has an annual budget of nearly $10 billion dollars.[1] Plaintiff's Statement of Additional Undisputed Material Facts ("PSAUMF") ¶ 1. It spends less than 0.5% of it on FOIA compliance. PSAUMF ¶ 3. As a result, for over five years now, it has maintained an arbitrary backlog of over 4000 requests, resulting in wait times that are not "prompt" and interfering with FOIA's purpose of government accountability and the proper functioning of our democracy. PSAUMF ¶ 4.[2] Here, in reliance on unsupported burden claims, the FBI refuses to produce records about surveillance activities for which its Inspection Division has found widespread violations of DOJ and FBI policy. PSAUMF ¶¶ 9-12.

The question before the Court, however, is only whether Plaintiff's request for "all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the Domestic Investigations and Operations Guide, DIOG) opened since September 29, 2008" has "reasonably described" the records Plaintiff wants, not the FBI's claimed burden of complying with the request. The FBI concedes that it knows what records Plaintiff requested, and has already identified them. Under the plain text of the statute and Circuit and District decisions addressing this issue, that is the end of the analysis and the FBI's "reasonably described" argument must be rejected.

Nonetheless, Plaintiff has made multiple offers to try to reach a scope and processing agreement with the FBI, PSAUMF ¶¶ 22-25, none of which the FBI has mentioned or addressed in its summary judgment filings. Consistent with those efforts, Plaintiff remains willing to narrow the scope of the request to a specific and easily identifiable subset of Assessments implicating the greatest public interest and resulting in a small fraction of the number of files the FBI describes in

---

[1] The budget request does not reference any program changes or any new expenditures for FOIA compliance. PSAUMF ¶ 2.

[2] In FY 2021, the average response time for FOIA requests that were granted expedited processing (*i.e.*, requests in which there is an "urgency" to inform the public) was 386 days. PSAUMF ¶ 5.

its brief. Plaintiff asks that the Court order the FBI to complete that processing, issue a determination, and produce all non-exempt material within six weeks of the Court's ruling. *See Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years.").

## I.   BACKGROUND

### A.   The information at issue in this case.

Plaintiff seeks copies of FBI "Assessments" as defined in the Domestic Investigations and Operations Guide ("DOIG"). Under the DIOG, which is the FBI's implementation of the Attorney General's Guidelines for Domestic FBI Operations ("Guidelines"), the FBI can conduct "assessments" when there is "not any particular factual predication." Def. Statement of Undisputed Material Facts ("SUMF"), ECF No. 21-2, ¶¶ 1-2; PSAUMF ¶ 7.

The Guidelines classify Assessments into Types 1 & 2, 3, 4, and 5. Def. SUMF ¶ 4. Type 1 & 2 Assessments have been combined, and permit the FBI to seek information, including "proactively" (*i.e.* not in response to investigative leads) about "individuals, groups, or organizations" "relating to activities" that the FBI deems to constitute "violations of Federal criminal law or threats to the national security." Def. SUMF ¶ 5. Type 3 Assessments involve identifying, obtaining, and utilizing information about such threats. Def. SUMF ¶ 7. In conducting these Assessments, the FBI may collect and analyze a broad variety of information from publicly available sources, federal investigative records, state and local entities, human sources, surveillance not requiring a court order, and grand jury subpoenas for phone and email subscriber information. PSAUMF ¶ 8.

Due to "heightened constitutional and civil liberties concerns," DOJ and FBI policies require "special approval and reporting requirements" when these Assessments involve "public officials, political candidates, religious or political organizations or their leaders, the news media, and other similarly sensitive matters" known as Sensitive Investigative Matters (SIMs). PSAUMF ¶ 9. And more broadly, even surveillance based solely on publicly available information—let alone through grand jury subpoenas—can be extremely invasive. *See Dep't of Justice v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 780 (1989) (finding significant privacy interest in contents of FBI rap sheets compiled from publicly available criminal records).

Because of these important civil liberties issues, the FBI's compliance with these rules is subject to audit by its Inspection Division. It was recently made public as a result of another FOIA request Plaintiff submitted that a 2019 audit found a "litany" of nearly 750 violations involving SIMs in just 353 files from an 18-month period. PSAUMF ¶ 10. This includes failures to conduct the required legal review prior to opening a SIM, failures to obtain approval from the Special Agent in Charge or Assistant Special Agent in Charge, and failures to notify the relevant U.S. Attorney's Office and FBI headquarters of activities. PSAUMF ¶ 11. The Judiciary Committee—in a letter signed by both the Chair and Ranking Member—described these as "widespread and apparently systematic violations" and a "pattern and practice of evading the rules, which consequently opens the door for political and other improper considerations to infect the investigative decision-making process." PSAUMF ¶ 12.

These rules exist for important reasons and in response to historical abuses. In 1976, after conducting a widespread investigation, the Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities found that pursuant to the COINTELPRO program, the FBI "took the law into its own hands" and engaged in "a series of covert programs

directed against domestic groups" that violated First Amendment rights and were "intolerable in a democratic society." PSAUMF ¶ 13. As part of COINTELPRO, the FBI surveilled journalists, attorneys, members of Congress, lobbyists, congressional aides, and an Associate Justice of the Supreme Court, and such surveillance has "been a resource for executive power that has tempted administrations of both political parties." PSAUMF ¶ 14. "COINTELPRO demonstrates the dangers inherent in the overbroad collection of domestic intelligence; when information is available, it can be—and was—improperly used." PSAUMF ¶ 15.

> **B.    Plaintiff's FOIA request and extensive efforts to come to a scope agreement.**

In September 2020, Plaintiff requested "all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the Domestic Investigations and Operations Guide, DOIG) opened since September 29, 2008." PSAUMF ¶ 16; Def. SUMF ¶ 10. The FBI denied the request, claiming that it "does not provide enough detail to enable personnel to locate records with a reasonable amount of effort." PSAUMF ¶ 17. Because the request involved specific records using the FBI's own terminology and referencing the applicable FBI policy, Plaintiff appealed, providing further information about Assessments and how they are maintained in FBI record-keeping systems to further assist FBI in responding to the request that the FBI claimed not to understand. PSAUMF ¶¶ 18, 19. DOJ's Office of Information Policy affirmed the denial, stating that Plaintiff "did not characterize the records sought in such a way that they could be located without searching through millions of records." PSAUMF ¶ 20. Concluding that the FBI and OIP were not operating in good faith, Plaintiff filed this suit.

After this suit was filed, the parties engaged in discussions about the scope of the request, and Plaintiff made multiple offers and suggestions as to how the request could be limited and asked for preliminary information from the FBI to allow Plaintiff to narrow the request in an intelligent manner. PSAUMF ¶ 22. The FBI says that it "provided Plaintiff narrowing proposals to which

Plaintiff did not agree and Plaintiff requested that the parties proceed to briefing," Def. SUMF ¶ 17, which is correct but misleading: the FBI omits entirely the extensive efforts that Plaintiff undertook and the offers Plaintiff made in an effort to reach an agreement on the scope of the request. *Id.*; *see generally* Loevy Decl.; *see also* Def. Memo., ECF No. 21-1, at 15 (acknowledging that a requester's narrowing efforts are relevant to "reasonably described" analysis under Defendant's interpretation of the provision, but incorrectly stating that "Plaintiff has not offered a reasonable search that it believes would adequately address its FOIA request").

After receiving the FBI's opening brief, Plaintiff reiterated prior proposals, including a proposal to limit the scope to only closed SIM Assessments, and made additional new proposals as well. PSAUMF ¶ 24. The FBI rejected all of these proposals, but indicated that Plaintiff's proposal of closed SIM Assessments implicated only 1068 total files, not the 75,746 files addressed in the FBI's summary judgment filings. PSAUMF ¶¶ 25-26; Seidel Decl. at ¶ 20.

## II.     LEGAL STANDARDS

### A.     General FOIA principles.

The purpose of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The Supreme Court has cautioned that this "should not be dismissed as a convenient formalism." *Nat'l Archives & Recs. Admin. v. Favish,* 541 U.S. 157, 172 (2004). Rather, these are the principles that guide courts' interpretation of the statute. *See, e.g.*, *Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 780 (D.C. Cir. 2018).

### B.     The "reasonably described" requirement.

When FOIA's terms are not defined, courts must consider their "ordinary, contemporary, common meaning[.]" *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019). For

example, the Supreme Court held in *Argus Leader*, based on the plain meaning of "confidential," that there is no "substantial competitive harm" requirement under Exemption 4, and that information can be withheld if a company normally keeps it secret even if no harm whatsoever would result from its release. *Id.* Neither legislative history nor policy considerations in favor of a substantial harm requirement permit "such a casual disregard of the rules of statutory interpretation." *Id.* at 2364. Where "careful examination of the ordinary meaning and structure of the law itself . . . . yields a clear answer, judges must stop." *Id.*; *see also e.g. Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.,* 777 F.3d 518, 524 (D.C. Cir. 2015) ("The court must . . . apply the statute's plain text."); *Pub. Invs. Arb. Bar Ass'n v. SEC*, 771 F.3d 1, 4 (D.C. Cir. 2014) ("[I]n FOIA cases a reviewing court must accord first priority in statutory interpretation to the plain meaning of the provision in question." (quotation and citation omitted)).

The statutory text at issue in this case is: "each agency, upon any request for records which (i) **reasonably describes** such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A) (emphasis added). "Describe" is defined, in relevant part, as "to represent or give an account of in words." Merriam-Webster Dictionary, Describe, at (1974), attached as Exhibit L. "Reasonable" is defined, in relevant part, as "being within the bounds of reason; not extreme; moderate; fair." Merriam-Webster Dictionary, Reasonable, at (1974), attached as Exhibit L.[3]

Read in context and using this plain meaning, this statutory text creates a single requirement for requests to be proper and thus require processing by the agency: the description

---

[3] Plaintiff has thus far been unable to locate a contemporaneous dictionary from 1974 with a separate entry for "reasonably."

of the records must be reasonable. It imposes no limit on the scope of a request and makes no reference anywhere to the burden on the government of processing a request. At this point, the Court "must stop." *Argus Leader*, 139 S. Ct. at 2364. There is simply no place for arguments about the work involved in collecting and processing the requested records, just as the plain text of Exemption 4 allows records to be withheld even if no harm can be shown from their release.

This is also consistent with applicable precedent. In *Yeager v. DEA*, the D.C. Circuit addressed this provision and found that the volume of requested records is irrelevant to the "reasonably described" requirement. 678 F.2d 315, 326 (D.C. Cir. 1982). Thus, even though the request required a search of over a million records, the requester satisfied the statutory requirements because the agency "knew precisely which of its records had been requested." *Id.*; *see also Shapiro v. CIA,* 170 F. Supp. 3d 147, 154 (D.D.C. 2016) ("But as the D.C. Circuit has noted, the number of records requested appears to be irrelevant to the determination of whether they have been 'reasonably described.'" (quoting *Yeager*, 678 F.2d at 326); *Pub. Employees for Envtl. Responsibility v. EPA,* 314 F. Supp. 3d 68, 74-75 (D.D.C. 2018) ("Consequently, once an agency becomes reasonably clear as to the materials desired, FOIA's text and legislative history make plain the agency's obligation to bring them forth . . . and disclose all reasonably segregable, nonexempt portions of the requested record(s)[.]" (internal quotation and citation omitted)); *see also* Dep't of Justice, Office of Info. Privacy, FOIA Update Vol. IV, No. 3, at 5 (1983) ("The sheer size or burdensomeness of a FOIA request, in and of itself, does not entitle an agency to deny that request on the ground that it does not 'reasonably describe' records within the meaning of 5 U.S.C. § 552(a)(3)(A).")."). Indeed, as explained in *Shapiro*, FOIA "explicitly contemplates unusually large requests, affording reviewing agencies additional time 'to search for . . . a voluminous

amount of separate and distinct records which are demanded in a single request.'" 170 F. Supp. 3d at 164 (quoting 5 U.S.C. § 552(a)(6)(B)(iii)(II)).

Ignoring all of this, the FBI relies primarily on legislative history and an Attorney General memorandum issued after the language was added to the statute. Def. Memo. at 6-7. But the Supreme Court "has repeatedly refused to alter FOIA's plain terms on the strength only of arguments from legislative history." *Argus Leader*, 139 S. Ct. at 2364. Under the plain text of "reasonably describes," the only relevant question is whether the agency understands what is being requested.

### III.     ARGUMENT

#### A.     The FBI understands what records have been requested and its arguments about search and processing burden are legally irrelevant.

Under the plain text of the statute and consistent with applicable precedent as discussed above, all that matters is whether the FBI is able to understand what has been requested. It clearly does: it includes as undisputed facts a detailed description of Assessments, the steps it took to successfully search for them, and precise details about the number of records to be processed. *See* Def. SUMF ¶¶ 1-9, 19-25. Obviously this would not have been possible if the FBI did not understand what records were requested.

Instead, to support its "reasonably described" claim, the FBI cites to decisions that make the burden of searching for records a relevant inquiry under the provision. Def. Memo. at 7-8. Plaintiff disagrees that search burden falls within the meaning of the provision, but the Court need not resolve the issue because the FBI has already conducted its searches and identified the records, making these cases inapposite. *See* Def. SUMF ¶¶ 19-25. Nor should the Court accept the FBI's contorted interpretation of "search" offered in an effort to force these facts into those cases: "preliminary review, scoping, and vetting" simply are not "searching" by any common

understanding of the term. Def. Memo. at 10-11; *see also* 5 U.S.C. § 552(a)(3)(D) (defining "search" as steps taken "for the purpose of **locating** those records which are responsive to a request" (emphasis added)). Similarly, the Court should reject the FBI's attempt to conflate the work involved in determining whether responsive Assessments can be withheld from disclosure with the process of searching for responsive records. *See* Def. Memo. at 10-11. Thus, even if the Court agreed with non-textual decisions including search burden within the ambit of "reasonably described," the FBI has not established any prohibitive search burden, nor could it, given that it has already successfully performed the search.

      **B.      The FBI's burden estimates are unsupported.**

Even if processing burden was legally relevant, however, the FBI has not established that the burden is anywhere near what it claims.

Rule 56 requires that summary judgment affidavits "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also e.g. Ctr. for Investigative Reporting v. Customs & Border Prot.*, 436 F. Supp. 3d 90, 110 (D.D.C. 2019) (rejecting agency affidavits lacking foundation). The FBI offers no explanation for how its declarant developed any of the time estimates on which its burden claims rely—it shows the calculations leading to the total numbers, but not the basis for the estimated time to complete a single unit of processing against which the number of records or pages has been multiplied. *See* Seidel Decl. at ¶¶ 27, 28, 31, 34-36, 38-42, 46. And because the declarant is offering forward-looking opinions in the form of estimates, not facts on which the declarant has personal knowledge, the declaration needed to establish that these estimates are "based on sufficient facts or data," that they are "the product of reliable principles and methods," and that the declarant "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702 (requirements for testimony by expert witnesses). The FBI has offered nothing

of the sort, instead improperly offering time estimates that appear to have been pulled from thin air. *See e.g. Howard v. United States,* 435 F. Supp. 3d 198, 203 (D.D.C. 2020), appeal dismissed, No. 20-5044, 2020 WL 8767934 (D.C. Cir. Nov. 24, 2020) (FOIA declarations "must provide enough information 'to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.'" (quoting *King v. Dep't of Justice,* 830 F.2d 210, 218 (D.C. Cir. 1987)).

The FBI has not offered a sound basis for its page estimates either. According to its declarant, the FBI reviewed only five Type 1 & 2 Assessments and five Type 3 Assessments to estimate the total number of pages across all of the Assessments. Seidel Decl. at ¶ 25. But the FBI has offered no evidence that this is a statistically valid approach,[4] and has not identified the number of pages at issue in the Assessments reviewed in the Inspection Division audit that found widespread violations of DOJ and FBI policy.

Even if processing burden was legally relevant, which it is not, the FBI has not established that the burden is what it claims.

> **C.    The FBI has not addressed the alleged burden of complying with any of Plaintiff's proposals to narrow the scope of the request, including limiting the scope to only closed SIM Assessments.**

As explained in the primary case on which the FBI relies for its burden argument, an agency cannot ignore a requester's "proffered alternative" approach to processing the request. Def. Memo. at 13-14 (citing *People for American Way Foundation v. Dep't of Justice*, 451 F. Supp. 2d 6, 15-16 (D.D.C. 2006)). Rather, the court there required the defendant agency to perform the

---

[4] In conducting a prior audit, the Inspection Division chose a sample size of close to 1000 files from a total of approximately 10,000 to produce a 95% confidence level with a 5% level of precision, and explained that this was "standard statistical practice." PSAUMF ¶ 27.

alternative search that the requester proposed. *People for the American Way*, 451 F. Supp. 2d at 16.

Here, Plaintiff made extensive efforts before briefing began to narrow the request, as discussed in the Background section above, including a proposal to limit the request to only closed SIM Assessments. PSAUMF ¶ 22. The FBI did not address any of these proposals in its brief. Plaintiff tried again after receiving the FBI's brief, and while the FBI rejected all of Plaintiff's proposals and made only an unacceptably narrow proposal of its own, it admitted for the first time that Plaintiff's proposal of closed SIM Assessments implicates only 1068 total files. PSAUMF ¶¶ 24-26.

Because even the FBI's own case law makes clear that the FBI cannot ignore Plaintiff's proffered alternatives, the FBI's failure to address this option is fatal to its argument. *See People for the American Way*, 451 F. Supp. 2d at 16. The FBI has identified the number of closed SIM Assessments in the relevant time period, making clear not only that it can identify these records, but that it actually has identified them. PSAUMF ¶ 26.

The Court should therefore order the FBI to process all closed SIM Assessments from January 2009 through December 2020, issue a determination, and produce all non-exempt material within six weeks of the Court's order.

## IV.     CONCLUSION

The FBI's effort to keep records secret about sensitive investigations in which it has repeatedly violated its own rules intended to protect civil liberties should be rejected. The statute does not permit the FBI's extra-textual interpretation of "reasonably described," it has not proven its burden claims as a factual matter, and in any event, it has ignored Plaintiff's reasonable alternative approach of producing only closed SIM Assessments. Those records should be produced within six weeks, consistent with the meaning of "promptly" under the statute.

- 12 -

Dated:  April 18, 2022                           RESPECTFULLY SUBMITTED,

/s/ *Matthew V. Topic*

_____

Attorneys for Plaintiff
Matthew Topic, D.C. Bar No. IL0037
Josh Loevy, D.C. Bar No. IL0105
Merrick Wayne, D.C. Bar No. IL0058
Shelley Geiszler, D.C. Bar No. IL0087
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com