UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE,<br><br>          Plaintiff,<br><br>     v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al*.,<br><br>          Defendants. | Civil Action No. 21-1054 (RDM) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION
<u>FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.    THE FBI PROPERLY DECLINED TO PROCESS PLAINTIFF'S FOIA REQUEST AS DRAFTED. ................................................................................................. 2

        A. FOIA's "Reasonably Describes" Requirement Authorizes an Agency to Decline to Process Unduly Burdensome FOIA Requests. ............................................................ 2

        B. Plaintiff's FOIA Request Would Impose an Undue Burden on the FBI to Fulfill and Therefore Plaintiff Failed to Submit a Request that "Reasonably Describes" the Records Sought…………………………………………………………………6

    II.    THE FBI BURDEN ESTIMATES ARE SUPPORTED BY EVIDENCE…………..7

    III.    DEFENDANTS NEED NOT ADDRESS PLAINTIFF'S NARROWING PROPOSALS TO ESTABLISH ENTITLEMENT TO SUMMARY JUDGMENT…9

        A. The Court Should Decline to Consider Plaintiff's Narrowing Proposals Because Plaintiff Never Perfected Those Proposals as FOIA Requests. ................................. 9

        B. Even if Plaintiff's Proposal for Narrowing its Request to Seek only Closed SIM Assessments Were the Operative Request, the FBI Has Properly Declined to Process It. ..................................................................................................................... 12

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Am. Ctr. for Law & Just. v. Dep't of Just.*,
 325 F. Supp. 3d 162 (D.D.C. 2018) .................................................................................. 10

*Am. Ctr. for Law & Justice v. Dep't of Homeland Sec.*,
 Civ. A. No. 21-1364, 2021 WL 5231939 (D.D.C. Nov. 10, 2021) ........................................ 3

*Am. Fed'n of Gov't Emps. v. Dep't of Com.*,
 907 F.2d 203 (D.C. Cir. 1990) ......................................................................... 3, 4, 5, 11, 13

*Am. Oversight v. EPA*,
 386 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................................ 2

*Brown v. Wash. Metro. Area Transit Auth.*,
 Civ. A. No. 19-2853, 2020 WL 806197 (D.D.C. Feb. 18, 2020) ......................................... 4

*Burke v. Dep't of Just.*,
 298 F. Supp. 3d 119 (D.D.C. 2018) .................................................................................. 11

*Byrnes v. Dep't of Just.*,
 Civ. A. No. 19-0761, 2021 U.S. Dist. LEXIS 186266 (D.D.C. Sept. 29, 2021) .................. 3

*Citizens for Resp. & Ethics in Wash. v. FEC*,
 711 F.3d 180 (D.C. Cir. 2013) ....................................................................................2-3, 11

*Dabrowski v. Mayorkas*,
 Civ. A. No. 19-3679, 2022 WL 715216 (D.D.C. Mar. 10, 2022) ........................................ 4

*Daily Caller News Found. v. FBI*,
 387 F. Supp. 3d 112 (D.D.C. 2019) .................................................................................. 12

*Dep't of Just. v. Tax Analysts*,
 492 U.S. 136 (1989) .......................................................................................................... 11

*Edmond v. United States*,
 Civ. A. No. 17-2611, 2018 WL 6068417 (D.D.C. Nov. 19, 2018) ...................................... 4

*Flatow v. Islamic Republic of Iran*,
 196 F.R.D. 203 (D.D.C. 2000) ............................................................................................ 8

*Founding Church of Scientology, Inc. v. Nat'l Sec. Agency*,
 610 F.2d 824 (D.C. Cir. 1979) ............................................................................................ 6

*Int'l Counsel Bureau v. Dep't of Def.*,
   723 F. Supp. 2d 54 (D.D.C. 2010) .................................................................................... 9

*Leopold v. Dep't of Just.*,
   301 F. Supp. 3d 13 (D.D.C. 2018) ................................................................................. 3-4

*Leopold v. U.S. Immigr. & Customs Enf't*,
   560 F. Supp. 3d 189 (D.D.C. 2021) ..................................................................... 3, 9, 11

*Marks v. United States*,
   578 F.2d 261 (9th Cir. 1978) .......................................................................................... 3

*McGehee v. CIA*,
   697 F.2d 1095 (D.C. Cir. 1983) ...................................................................................... 3

*Nat'l Sec. Counselors v. CIA*,
   960 F. Sup. 2d 101 (D.D.C. 2013) ................................................................................. 4

*Nat'l Sec. Counselors v. CIA*,
   969 F.3d 406 (D.C. Cir. 2020) ........................................................................................ 6

*Nat'l Sec. Counselors v. Dep't of Just.*,
   848 F.3d 467 (D.C. Cir. 2017) ...................................................................................... 12

*People for Am. Way Found. v. Dep't of Just.*,
   451 F. Supp. 2d 6 (D.D.C. 2006) ............................................................................. 9, 11

*Pub. Emps. for Envtl. Resp. v. EPA*,
   314 F. Supp. 3d 68 (D.D.C. 2018) .............................................................................. 4, 5

*Shapiro v. CIA*,
   170 F. Supp. 3d 147 (D.D.C. 2016) ................................................................................ 5

*Vietnam Veterans of Am.*,
   8 F. Supp. 3d 188 (D. Conn. 2014) .............................................................................. 13

*Wolf v. CIA*,
   569 F. Supp. 2d 1 (D.D.C. 2008) .................................................................................... 9

*Yeager v. DEA*,
   678 F.2d 315 (D.C. Cir. 1982) ........................................................................................ 5

**Statutes**

5 U.S.C. § 552(a)(3)(A) ............................................................................................... 3, 11

5 U.S.C. § 552(a)(3)(D) ................................................................................................................ 6

5 U.S.C. § 552(a)(4)(B) .............................................................................................................. 11

5 U.S.C. § 552(c) .......................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 56(c)(4) ................................................................................................................. 7

Fed. R. Evid. 702 .......................................................................................................................... 8

## INTRODUCTION

In its Response to Defendants' Motion for Summary Judgment (ECF No. 21),[1] Plaintiff Cato Institute ("Plaintiff") does not dispute that an agency can decline to honor a Freedom of Information Act ("FOIA") request that would impose an undue burden on the agency. Instead, Plaintiff first maintains that undue burden is not a part of the Court's inquiry for determining whether Plaintiff submitted a proper request that Defendant Federal Bureau of Investigation ("FBI") must honor. According to Plaintiff, FOIA only requires a requestor to submit a request that "reasonably describes" the records requested and, as long as an agency can understand what records a requestor seeks, the requestor has satisfied the "reasonably describes" requirement. However, Plaintiff's semantic interpretation of FOIA's "reasonable describes" requirement is inconsistent with binding case law. And, contrary to Plaintiff's assertion, the FBI has not already completed its search for records responsive to Plaintiff's FOIA request, rendering the undue burden analysis irrelevant.

FOIA defines a search to include reviewing records for purposes of locating records responsive to a FOIA request. As the FBI explained, Plaintiff's FOIA request seeks all Type 1, 2, and 3 Assessments since 2008 and some are nonresponsive because they are excluded from the requirements of FOIA. Accordingly, to satisfy Plaintiff's FOIA request, the FBI would have to search through all files indicating a Type 1, 2, or 3 Assessment to locate Assessments responsive to Plaintiff's FOIA request and then process all responsive information. This massive undertaking would impose an undue burden on the FBI in time and expense, and that is why the Court should find that the FBI was entitled to decline to process Plaintiff's FOIA request.

---

[1] "Response" refers to Plaintiff's Combined Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment (ECF Nos. 22-1, 23).

Plaintiff claims that the FBI fails to provide admissible evidence of the basis for its calculations of the estimated burden to process Plaintiff's request as drafted. This, however, disregards the Declaration of Michael G. Seidel (ECF No. 21-3), where Mr. Seidel explains the methodology for calculating anticipated costs in fulfilling Plaintiff's FOIA request. Courts in this jurisdiction routinely accept burden estimates when the estimates, as they are in this case, are detailed and not impugned by evidence of bad faith.

Finally, Plaintiff mistakenly requests that the Court deny Defendants' request for summary judgment because the FBI has not demonstrated an undue burden that would flow from processing its four proposals for narrowing its FOIA request included in its Response. This Court is without remedial authority to entertain Plaintiff's request, especially considering Plaintiff declined the FBI's invitation for Plaintiff to narrow its FOIA request at the administrative level and demanded the parties proceed to summary judgment on whether Plaintiff's request as drafted satisfies FOIA's "reasonably describes" requirement. Even if a plaintiff could narrow its FOIA request at this late date, the Court should deny Plaintiff's request for summary judgment on its proposal to narrow its FOIA request to closed Sensitive Investigative Matter ("SIM") Assessments because requiring the FBI to fulfill that proposed narrowed request would likewise create an undue burden on the FBI. Therefore, the Court should grant Defendants' Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment (ECF No. 22).

## ARGUMENT

**I. THE FBI PROPERLY DECLINED TO PROCESS PLAINTIFF'S FOIA REQUEST AS DRAFTED.**

    **A. FOIA's "Reasonably Describes" Requirement Authorizes an Agency to Decline to Process Unduly Burdensome FOIA Requests.**

"An agency's duties under FOIA are triggered 'only once [the] agency has received a proper FOIA request," *Am. Oversight v. EPA*, 386 F. Supp. 3d 1, 6 (D.D.C. 2019) (citing *Citizens*

*for Resp. & Ethics in Wash. ("CREW") v. FEC*, 711 F.3d 180, 185 n.3 (D.C. Cir. 2013)), which is a request that "'reasonably describes' the records sought" and is "made in accordance with published rules stating the time place, fees (if any) and procedures to be followed," *id*. (quoting 5 U.S.C. § 552(a)(3)(A)). Although Plaintiff recognizes that an agency need not comply with a request that fails to "reasonably describe" the records requested, *see* Pl.'s Resp. at 6 (citing 5 U.S.C. § 552(a)(3)(A)), Plaintiff incorrectly maintains that for purposes of FOIA's "reasonably describes" requirement, "all that matters is whether the FBI is able to understand what has been requested" based on "the plain text of [FOIA] and consistent with applicable precedent." Pl.'s Resp. at 8-9.

Courts have identified at least three ways a FOIA request fails to "reasonably describe" the records sought. First, a request is improper if it is too vague to allow an agency to determine precisely what records are being requested. *Leopold v. U.S. Immigr. & Customs Enf't*, 560 F. Supp. 3d 189, 198-99 (D.D.C. 2021). Second, a request is improper if it is too broad for an agency to determine precisely what records are being sought. *Am. Ctr. for Law & Justice v. Dep't of Homeland Sec.*, Civ. A. No. 21-1364, 2021 WL 5231939, at *3, 6 (D.D.C. Nov. 10, 2021). Third, and contrary to Plaintiff's assertion, Resp. at 8, a request is improper if the request is so broad that the request would impose an unreasonable burden upon the agency. *Am. Fed'n of Gov't Emps. ("AFGE") v. Dep't of Com.*, 907 F.2d 203, 208-09 (D.C. Cir. 1990) ("An agency need not honor a request that requires 'an unreasonably burdensome search."); *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983) (citing *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978)) (explaining that FOIA's reasonably describes provision "pertains to the subject matter, location, and form of materials sought by a request"); *Byrnes v. Dep't of Just.*, Civ. A. No. 19-0761, 2021 WL 5422281, at *10 (D.D.C. Sept. 29, 2021) (quoting *Leopold v. Dep't of Just.*, 301 F. Supp.

3d 13, 23 (D.D.C. 2018)) (finding that "[a] FOIA request must reasonably describe the records sought" and "[a]s such, the requester must 'frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome.'"); *Brown v. Wash. Metro. Area Transit Auth.*, Civ. A. No. 19-2853, 2020 WL 806197, at *9 (D.D.C. Feb. 18, 2020) ("This Circuit has . . . considered the burden that production of requested documents would impose on an agency in determining whether an agency response was required."); *Edmond v. United States*, Civ. A. No. 17-2611, 2018 WL 6068417, at *2 (D.D.C. Nov. 19, 2018) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982)) (FOIA requests "may still be unreasonable if they remain so broad as to 'impose an unreasonable burden upon the agency.'"); *Pub. Emps. for Env't Resp. ("PEER") v. EPA*, 314 F. Supp. 3d 68, 75 (D.D.C. 2018) (collecting cases) ("The law is settled that [a]n agency need not honor a request that requires 'an unreasonably burdensome search."); *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 158 (D.D.C. 2013) (finding that the FOIA request to the Central Intelligence Agency did not reasonably describe the records sought, in part, because the request would require an unreasonable search burden). Plaintiff's FOIA request is of the third variety of improper requests.

Plaintiff may disagree with Defendants' interpretation of FOIA's "reasonably describes" requirement, but as the Court explained in *Keeping Government Beholden, Inc. v. Dep't of Just.*, Civ. A. No. 19-3679, 2021 WL 5918627, at *5 (D.D.C. Dec. 13, 2021), "the D.C. Circuit has held that, even if [an] agency can identity documents responsive to a request, a request does not reasonably describe documents if the request is 'so broad as to impose an unreasonable burden upon the agency.'" (quoting *AFGE*, 907 F.2d at 209). The Court is bound by the Circuit precedent, *Dabrowski v. Mayorkas*, Civ. A. No. 19-3679, 2022 WL 715216, at *29 (D.D.C. Mar. 10, 2022) ("This Court must scrupulously respect binding Circuit . . . precedents"), and therefore need not

- 4 -

engage Plaintiff's discussion of its view that principles of statutory interpretation support its narrowed interpretation of FOIA's "reasonably describes" requirement, *see* Pl.'s Resp. at 6-9.[2]

Plaintiff misplaces its reliance on *Yeager*, 678 F.2d at 317, *PEER*, 314 F. Supp. 3d at 68, and *Shapiro v. CIA*, 170 F. Supp. 3d 147 (D.D.C. 2016), to maintain that case law in this jurisdiction is to the contrary. In *Yeager*, "[t]he central claim [was] that the FOIA requires the Drug Enforcement Administration (DEA or the Agency) to use so-called 'disclosure-avoidance techniques' in fulfilling its duty to release reasonably segregable nonexempt portions of records" and the Circuit held that "FOIA imposes no agency duty to employ such computer techniques." *Yeager*, 678 F.2d at 317. The Circuit did mention in summary fashion that "[a]lthough the number of records requested appear[ed] to be irrelevant to the determination of whether [the request had] been 'reasonably described,' appellees' overbreadth argument raises serious questions concerning the allowable scope of FOIA requests." *Id*. at 326. The Circuit ultimately concluded that the request satisfied FOIA's reasonably describes requirement because the agency knew what records the requestor sought; but the Circuit did not squarely address whether a request could fail to reasonable describe the records requested if it placed an undue burden on an agency. *See id*. And in both *PEER* and *Shapiro*, this Court confirmed that unreasonably burdensome FOIA requests are improper. *PEER*, 314 F. Supp. 3d at 75 (quoting *AFGE*, 907 F.2d at 209) (stating "[t]he law is well settled

---

[2] Although the Court need not decide this issue, Plaintiff is incorrect that the plain meaning of the phrase "reasonably describes" is clear from its dictionary source. Plaintiff cites a 1974 dictionary definition of the words "reasonable" and "describe" to support its interpretation of FOIA's "reasonably describes" requirement: a "description of the records [that is] reasonable" irrespective of "the scope of a request" or "the burden on the government of processing a request." Pl.'s Resp. at 6-7. But Plaintiff provides no explanation of how one determines what is "reasonable." Plaintiff's dictionary source fills the void by defining the word "reasonable" to mean "being within the bounds of reason: not extreme: MODERATE, FAIR." *See* Pl's.' Ex. L. However, even with those definitions, the phrase "reasonably describes" remains opaque. The definitions cannot be interpreted to read the phrase "reasonably describes" as foreclosing Defendants' interpretation of the phrase.

that '[a]n agency need not honor a request that requires an unreasonably burdensome search'"); *Shapiro*, 170 F. Supp. 3d at 155 (same). The Court did not state in either case that undue burden is untethered from FOIA's "reasonably describes" requirement.[3] *See id.*

### B. Plaintiff's FOIA Request Would Impose an Undue Burden on the FBI to Fulfill and Therefore Plaintiff Failed to Submit a Request that "Reasonably Describes" the Records Sought.

Plaintiff's FOIA request seeks "copies of all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the . . . [Domestic Investigations and Operations Guide]) opened since September 29, 2008," Defs.' Statement of Undisputed Material Facts (ECF No. 21-2) ¶ 10, and would impose an undue burden on the FBI to fulfill. FOIA defines the word "search" as "to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D). As the FBI explained, Def.'s Mem. at 9 (ECF No. 21-1), a search is unreasonably burdensome if an agency has not previously segregated the requested class of records and would have to engage in a massive undertaking to locate responsive records. *See Founding Church of Scientology*, *Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) ("When the agency has not previously segregated the requested class of records production may be required only 'where the agency (can) identify that material with reasonable effort.").

Plaintiff disagrees that the FBI has demonstrated a search burden, claiming that "the FBI has already conducted its searches and identified the records," making "decisions that make the burden of search for records a relevant inquiry" inapposite. Pl.'s Resp. at 8. But the Declaration of

---

[3] Whether an unreasonably burdensome FOIA request is one that is also not reasonably described is an academic point. Plaintiff does not dispute that binding case law permitted the FBI to decline to respond to its FOIA request if fulfilling the request would impose an undue burden on the FBI. *See generally*, Pl.'s Resp; *see also Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) ("when the request as drafted would require an agency to undertake an unreasonably burdensome search, the agency can decline to process the request").

Michael G. Seidel, offered in support of the FBI's motion for summary judgment, establishes that the FBI would have to engage in a burdensome search of approximately 75,746 potentially responsive Assessments at a cost of approximately $30,018,689.00 to locate the Assessments responsive to Plaintiff's FOIA request. Defs.' Mem. at 10-12. To be clear, "5 U.S.C. § 552(c) renders excludable under FOIA certain law enforcement records the release of which are reasonably likely to interfere with law enforcement proceedings and certain classified records." Def.'s Mem. at 11. The FBI would have to review manually the 75,746 potentially responsive files it located to determine whether the files are responsive to Plaintiff's request or excludable under 5 U.S.C. § 552(c)." *Id*.

The FBI also established that Plaintiff's request would "place an undue burden on the FBI to process responsive records by retrieving those records, uploading the records, and processing them." *Id*. at 12. The FBI "estimates the total expense for the FBI to complete the search and vetting phase, and retrieve and import records for processing[] is approximately $31,586,045.00, and would require approximately 1,301,444 hours (or 54,227 days)" in addition to the "22,410 months (approximately 1,867 years) to process Plaintiff's request[.]" *Id*. at 12-13. Plaintiff provides no authority on point for its position that the Court should disregard the burden that fulfilling Plaintiff's FOIA request as drafted would place on the FBI, especially since processing may result in the release of little information. *See* 2d Seidel Decl. ¶ 22, Ex. 1 ("any files indexed to third party individuals will be … exempt from disclosure due to Plaintiff's failure to provide privacy waivers.").

**II.     THE FBI BURDEN ESTIMATES ARE SUPPORTED BY EVIDENCE.**

Plaintiff's attempt to discredit Mr. Seidel's cost and time estimate to support the FBI's undue burden argument fail. Plaintiff maintains that Mr. Seidel is not competent to opine on the

burden the FBI would experience from fulfilling Plaintiff's FOIA request under Federal Rule of Civil Procedure ("Rule") 56(c)(4)[4] because he has failed to offer "an explanation for how … [he] developed any of the time estimates on which [the FBI's] burden claims rely." Pl.'s Resp. at 9. But this contention disregards paragraph 25-46 of the Declaration of Michael G. Seidel, which explain in detail the FBI's methodology for the FBI's cost estimates arrived at after a sampling of five Type 1 & 2 and five Type 3 Assessments. For these reasons, Plaintiff is incorrect that the FBI's estimates "appear to have been pulled form thin air," Pl.'s Resp. at 9-10, and has provided no competing evidence to undermine the FBI's calculations. There is no current employee of the FBI better situated to estimate and quantify the burden associated with responding to Plaintiff's FOIA request, and Mr. Seidel has deep experience in the FBI and its FOIA operations. *See* Seidel Decl. ¶¶ 1-2.

Plaintiff counters that the FBI's calculations are "forward-looking opinions in the form of estimates, not facts on which the declarant has personal knowledge," and maintains that, as such, Defendants must satisfy the requirements for admission of expert testimony under Federal Rule of Evidence 702. However, extrapolating from a small sample to a larger universe of similar records and multiplication and addition are not expert skills and the Court has not employed such an exacting standard on agencies to demonstrate undue burden. In the civil discovery context, the Court has permitted "[a] good faith 'sampling' of the workload" for an agency to "employ its own methods of estimation" to extrapolate the effort involved in responding to a discovery request for the Court to assess the agency's undue burden objection. *See Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 207 (D.D.C. 2000). The Court has also accepted estimates made by an agency to

---

[4]   Rule 56(c)(4) provides: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

assist the Court with assessing the burden on an agency in complying with a FOIA request without requiring the agency to satisfy the requirements of Federal Rule of Evidence 702. "Courts are entitled to rely upon an agency affidavit for an explanation of why a further search would be unduly burdensome when the affidavit is relatively detailed, nonconclusory, and not impugned by evidence in the record of bad faith on the part of the agency." *See Int'l Counsel Bureau v. Dep't of Def.*, 723 F. Supp. 2d 54, 59 n.6 (D.D.C. 2010) (quoting *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008)) (other citation an internal quotation marks omitted omitted). The Court should find that the Declaration of Michael G. Seidel satisfies this standard.

### III. DEFENDANTS NEED NOT ADDRESS PLAINTIFF'S NARROWING PROPOSALS TO ESTABLISH ENTITLEMENT TO SUMMARY JUDGMENT.

#### A. The Court Should Decline to Consider Plaintiff's Narrowing Proposals Because Plaintiff Never Perfected Those Proposals as FOIA Requests.

Plaintiff urges the Court to consider the four narrowing proposals it now makes, maintaining that the novel approach is sanctioned by *People for American Way Foundation v. Department of Justice*, 451 F. Supp. 2d 6 (D.D.C. 2006), but that case is inapposite. There, like in *Leopold*, 560 F. Supp. 3d at 189, the plaintiff narrowed the scope of its request in a joint status report submitted to the Court prior to summary judgment briefing. *See Leopold*, 560 F. Supp. 3d at 196-98 (finding that the proposed narrowed FOIA request in the context of a joint status report was the operative request); *People for Am. Way Found.*, 451 F. Supp. 2d at 12 (noting the government was signatory to multiple joint status reports "in which the parties represented—unequivocally—that the FOIA request had been narrowed to encompass just 44,000 documents.").

By contrast, in this case, Plaintiff never formally narrowed their request prior to summary judgment briefing. Instead, Plaintiff requested this Court's permission to move for summary judgment on its request as originally drafted and submitted to the FBI, not any narrowed form of a request produced during the litigation. *See* Nov. 12, 2021 Joint Status Report (ECF No. 16) at 1-

2 (stating that "Defendants do not believe that Plaintiff's FOIA request is a proper request," "Plaintiff disagrees" and "wants to proceed to briefing," and that "Plaintiff intends to submit its notice setting forth the basis for its anticipated motion for summary judgment, including the . . . claims at issue"); Plaintiff's Notice of Issues for Summary Judgment ¶ 8 (ECF No. 19) ("Plaintiff's position is that the request reasonable describes the records sought, and that Defendants' failure to conduct a search, produce responsive records or issue a determination violate FOIA"). And rather than offering one narrowing proposal in a joint status report, Plaintiff has offered multiple narrowing proposals to the Court in the context of summary judgment briefing. *See* Pl.'s Resp. at 5 (stating "[a]fter receiving the FBI's opening brief, Plaintiff reiterated prior proposals, including a proposal to limit the scope to only closed SIM Assessments, and made additional new proposals as well.").[5] The Court should hold Plaintiff to its representation to the Court about what issues remained outstanding prior to summary judgment (whether its request as drafted is a proper FOIA request), and not burden the FBI with addressing new issues raised thereafter. *See Am. Ctr. for Law & Just. v. Dep't of Just.*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) ("When the parties make representations at a conference about which issues remain outstanding, they may fairly be held to those oral representations."). Allowing Plaintiff to reformulate its request during litigation

---

[5]  Undersigned counsel only has record of substantive discussions taking place from July to September 2022, and Plaintiff requesting that Defendants agree to proceed to summary judgment briefing in October 2021 and then again in November 2021. *See* Ex. 2 (email correspondence); Aug. 13, 2021 Joint Status Report (ECF No. 13) (noting that the FBI proposed a process intended to assist Plaintiff with narrowing its request and was waiting to hear back); Sept. 13, 2022 Joint Status Report (ECF No. 14) (noting that the parties believed they may have reached an impasse); October 13, 2021 Joint Status Report (ECF No. 15) (noting that "on September 21, 2021, the FBI provided Plaintiff four new proposals for narrowing Plaintiff's request, which Plaintiff represents are under review by Plaintiff."); Nov. 12, 2021 (ECF No. 16) (noting that Plaintiff rejected the FBI's four proposals on November 10, 2021). Undersigned counsel does not have record of Plaintiff requesting that the FBI provide a declaration supporting its burden assertion prior to demanding the parties proceed to summary judgment briefing.

circumvents the exhaustion process included in the FOIA, and requesters should not be permitted to come into court, move the goal posts unilaterally, and then claim that the agency violated the statute.

Even if *Leopold* and *People for American Way* were somewhat analogous to this case, it matters little, if at all, because the FBI disagrees that the narrowed request remedies the defect in the original request. "FOIA confers jurisdiction on the district courts 'to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld.'" *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). An improper withholding, however, presupposes a proper FOIA request because "the duties that FOIA imposes on agencies . . . apply only once an agency has received a proper FOIA request," which "must 'reasonably describe[]' the records sought and must comply with the agency's published procedures, including the agency's schedule of fees." *CREW*, 711 F.3d at 185 n.3 (citing 5 U.S.C. § 552(a)(3)(A)). Plaintiff does not claim to have submitted one of its proposals for narrowing to the FBI following the FBI's procedures for submitting a FOIA request. Nor can it because, at the administrative level, Plaintiff disagreed that its request as draft was an improper request, refused to narrow, and demanded that the FBI process its request as drafted. Compl. Ex. C (ECF No. 1-1). The Court, therefore, because of the way Plaintiff handled the administrative phase and the proceedings in this Court, cannot find an improper withholding that would support the exercise of its remedial authority. *See Burke v. Dep't of Just.*, 298 F. Supp. 3d 119, 122 (D.D.C. 2018) ("a plaintiff cannot maintain an action premised on a FOIA request he never submitted."); *Cf. AFGE*, 907 F.2d at 208 (refusing to consider the appellant's proposed narrowed request on appeal and stating that "it is distinctly not our role to pass *de novo* upon a request for disclosure that is narrower than the request that was presented to the agency, and we decline to do so.").

### B. Even if Plaintiff's Proposal for Narrowing its Request to Seek only Closed SIM Assessments Were the Operative Request, the FBI Has Properly Declined to Process It.

In any event, fulfilling Plaintiff's proposal for narrowing to closed SIM Assessments would also be unduly burdensome for the FBI. Mr. Seidel explains in the Second Declaration of Michael G. Seidel that the FBI's analysis of Plaintiff's proposed narrowed request for closed SIM Assessments indicates that although only approximately 1,042 assessments are implicated, *see* 2d Seidel Decl. ¶ 5, Ex. 1, the FBI estimates that there are approximately "1,156,620 pages of potentially responsive assessments," *id*. ¶ 7. It would take the FBI "approximately 2,314 months (approximately 193 years) to review, redact, and arrange for inspection approximately 1,156,620 pages, for approximately 1,042 Assessments," *id*. ¶ 20, utilizing its standard 500 page per month review rate, *id*., which "serves to promote efficient responses to a larger number of requestors," *see Nat'l Sec. Counselors v. Dep't of Just*., 848 F.3d 467, 471-72 (D.C. Cir. 2017), and is typically approved by this Court, *see Daily Caller News Found*. v. *FBI*, 387 F. Supp. 3d 112, 121 (D.D.C. 2019).

The FBI's estimates come as no surprise considering the complexity of fulfilling a request for closed SIM Assessments. There are four phases to fulfilling such a request: (1) the scoping and vetting phase; (2) retrieval phase; (3) importing phase; and (4) processing phase. 2d Seidel Decl. ¶¶ 8-20, Ex. 1. The scoping and vetting phase would require the FBI to "scope each individual assessment to ensure responsiveness to Plaintiff's [proposal,] . . . ensure any subfiles that may be associated to the assessment[] are responsive as well[,]" "review each assessment one-by-one to determine whether physical portions of the assessment or media exists in hard copy form[,]" "review each assessment to identify whether there are certain records that are not subject to … FOIA . . . [because] an 'exclusion' applies[,]" and—for those files for which an exclusion may apply—vet the file with FBI case agents. *Id*. ¶¶ 8-12. The FBI "estimates [that] the time required

to scope and vet all 1,042 [closed SIM] assessments is approximately 793 days." *Id*. ¶ 13. The retrieval phase is self-explanatory. The phase requires the FBI to "gather all records to ingest into the FOIPA Document Processing System . . . to start the FOIA processing phase." *Id*. ¶ 14. The FBI estimates that it would take approximately "524 hours or approximately 66 days" to retrieve all records responsive to Plaintiff's proposed narrowed request for closed SIM Assessments. *Id*. ¶ 16. The FBI estimates that the importing phase would take 193 hours or 25 days and that the processing phase would take 70,445 days or 193 years. *Id*. ¶¶ 17-20.

In short, "[t]he FBI is currently inundated with an extraordinary amount of FOIPA request." *Id*. ¶ 22. Considering the FBI's current workload, the Court should find that the estimated lengths of processing times to fulfill Plaintiff's proposed narrowed request for closed SIM Assessments places that proposal squarely in the realm of an unreasonably burdensome FOIA request that the FBI need not honor. *See Long v. Immigration & Customs Enforcement*, 149 F. Supp. 3d 39, 56 (D.D.C. 2015) (quoting *AFGE*, 907 F.2d at 209) ("Courts … have held that agencies are excused from complying with FOIA requests where 'review[ing], redact[ing], and arrang[ing] for inspection [of] a vast quantity of material' presents an unreasonable burden"); *Vietnam Veterans of Am.*, 8 F. Supp. 3d 188, 203-04 (D. Conn. 2014) (refusing to require an agency to respond to a request estimated to take 27 years to fulfill); *Hainey v. Dep't of Interior*, 925 F. Supp. 2d 34, 45 (D.D.C. 2013) (estimated search and review process that would take 25 employees two years to complete unreasonably burdensome). In other words, as Plaintiff's proposed narrowed request for closed SIM Assessments would "require the agency to locate, review, redact, and arrange for inspection a vast quantity of material," the agency need "not honor" that proposed narrowed request. *AFGE*, 907 F.2d at 209.

The FBI recognizes that many of its sensitive law enforcement activities are subjects of legitimate public interest, but the records Plaintiff seek are voluminous and would require intensive scrutiny to process for release. Taken together, viewed in the context of Congress providing that FOIA requests could be fulfilled in a month, a FOIA request requiring the magnitude of resources Plaintiff's submitted or narrowed ones do is outside the zone of interests of the statute (i.e., FOIA) Plaintiff claims has been violated. Requiring the FBI to process this request would negatively impact its ability to respond to other FOIA requests, and FOIA should be administered to avoid FOIA gridlock or block-out.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment.

Dated: June 18, 2022
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/
MICHAEL A. TILGHMAN II
D.C. Bar #988441
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7113

*Attorneys for the United States of America*