# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CATO INSTITUTE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 21-1054 (RDM) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) |
| Defendants. | ) |

## SECOND DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia.  My previous declaration, dated March 18, 2022, explained my employments history and responsibilities at the FBI.  (ECF No. 21-3, "First Seidel Declaration"). The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.  This declaration incorporates and supplements the First Seidel Declaration filed on March 18, 2022.

(2)     Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's initial FOIA request seeking "copies of all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the Domestic Investigations

and Operations Guide, DIOG) opened since September 29, 2008."

(3)     This declaration is submitted in further support of Defendants' Motion for

Summary Judgement (ECF No. 21) and to address specific issues raised in Plaintiff's Combined

Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of

Plaintiff's Cross-Motion for Summary Judgment, filed April 18, 2022.  (ECF No. 23, "Plaintiff's

Opposition").  The FBI will address Plaintiff's attempt to narrow their request and describe how

one of Plaintiff's narrowing proposals is still unduly burdensome to the FBI. Although the FBI

only addresses one of Plaintiff's narrowing proposals, all narrowing proposals included in

Plaintiff's briefing are unduly burdensome to the FBI.

## FBI'S RESPONSE TO PLAINTIFF'S ATTEMPT TO NARROW THE FOIA REQUEST

(4)     On or about March 24, 2022, Plaintiff's counsel, through e-mail,

forwarded four attempts to narrow Plaintiff's initial wide-ranging request seeking copies of "all

Type 1, Type 2, and Type 3 Assessments opened since September 29, 2008."  Plaintiff's

proposals were:

> 1. All closed Type 1-3 Sensitive Investigative Matter ("SIM") Assessments[1] between January 2009 and December 2020;
>
> 2. All closed Type 1-3 SIM Assessments between January 2009 and December 2020 for the months of January, April, September, and December of each year;
>
> 3. All Type 1-3 Assessments audited by INSD from January 1, 2009 through September 20, 2020; and
>
> 4. All closed Type 1-3 Assessments from January 1, 2016 to December 31, 2016 and from January 1, 2020 to December 31, 2020 (i.e., last year of Obama

---

[1] Sensitive Investigative Matter ("SIM") Assessments: an investigative matter involving the activities of a domestic public official or political candidate (involving corruption or a threat to the national security), religious or political organization or individual prominent in such an organization, or news media, or any other matter which, in the judgment of the official authorizing an investigation, should be brought to the attention of FBI Headquarters and other Department of Justice officials.

administration and last year of Trump administration).

(5)     To determine the magnitude of Plaintiff's narrowing attempts, IMD's Record/Information Dissemination Section ("RIDS") conducted basic queries of the Central Records System ("CRS")[2] indices via Sentinel, which allowed the FBI to query the indices for Type 1 & 2 and Type 3 closed SIM Assessments for the time frame requested for items 1, 2, and 4.  To determine the amount of potentially responsive records for item 3, RIDS coordinated with the FBI's Inspection Division ("INSD") to provide the number of Type 1 through 3 Assessments audited from January 1, 2009 through September 20, 2020.  The Sentinel indices revealed approximately 1,042 assessments for item 1, 326 assessments for item 2, and 14,112 assessments for item 4.  INSD located approximately 4,561 assessments as a result of their search efforts.

(6)     Plaintiff's Opposition states the FBI has not addressed the alleged burden of complying with any of Plaintiff's proposals to narrow the scope of the request, including limiting the scope to only closed SIM Assessments.  *See* Part C of Plaintiff's Opposition (pg. 10.).  The FBI will address Plaintiff's attempt to narrow, specifically "[a]ll closed Type 1-3 Sensitive Investigative Matter ("SIM") Assessments between January 2009 and December 2020" ("item 1").

### THE FBI'S CALCULATION OF THE ESTIMATED NUMBER OF POTENTIALLY RESPONSIVE PAGES

(7)     The FBI estimates per its Sentinel query that it would have an estimated 1,156,620 pages of potentially responsive assessments for item 1.  To arrive at this estimated page count, RIDS first reviewed the first five (5) potentially responsive files of the Type 1

---

[2] A more fulsome description of the FBI's Central Records System ("CRS") is located in paragraphs 15-19 of the First Seidel Declaration.

through 3 closed SIM Assessments to determine the average number of serials per file. The first five (5) potentially responsive files were selected solely as being the first five (5) results from RIDS' Sentinel query search. No other factors were used in determining which file or assessment to select. Second, RIDS used its standard business practice estimate of 10 pages per serial. The standard business practice of estimating 10 pages per serial is based on institutional knowledge of practice in gathering and vetting records for responsiveness. [3] Using these figures, RIDS estimated the average number of pages per file for Type 1 through 3 closed SIM Assessments is about 1,110 pages. To determine the estimated total number of pages for Type 1 through 3 closed SIM Assessments, RIDS then multiplied 1,110 pages by the previously identified approximately 1,042 Type 1 through 3 closed SIM Assessments, resulting in approximately 1,156,620 pages of potentially responsive records. The following chart depicts these calculations.

| Type 1-3 Assessments | Number of Serials | Calculations | Estimated Number of Pages |
|---|---|---|---|
| File 1 | 12 serials | 10 pages per serial x 12 serials | 120 pages |
| File 2 | 269 serials | 10 pages per serial x 269 serials | 2,690 pages |
| File 3 | 11 serials | 10 pages per serial x 11 serials | 110 pages |
| File 4 | 45 serials | 10 pages per serial x 45 serials | 450 pages |
| File 5 | 218 serials | 10 pages per serial x 218 serials | 2,180 pages |
| 5,550 estimated pages for sampled files divided by 5 files = average of 1,110 pages per file multiplied by 1,042 Type 1-3 Assessments = **1,156,620 estimated pages of potentially responsive records** | | | |

---

[3] The FBI also used the standard business practice for calculating the number of potentially responsive pages for its calculations of the number of potentially responsive pages the FBI would have to review to respond to Plaintiff's FOIA request as drafted.

**FOIA SCOPING AND VETTING PHASE: ESTIMATED TIME TO SCOPE AND VET RECORDS**

(8)     As previously stated in the First Seidel Declaration at paragraphs 26-32, RIDS must first scope each individual assessment to ensure responsiveness to Plaintiff's narrowed request and also ensure any subfiles that may be associated to the assessment, are responsive as well.

(9)     Second, RIDS must review each assessment one-by-one to determine whether physical portions of the assessment or media[4] exists in hard copy form.  RIDS estimates the time required for this physical file scoping is approximately 10 minutes per assessment or 10,420 minutes (174 hours or 22 days[5]) to scope all 1,042 assessments.  The following chart depicts these calculations.

| Estimated Total of Type 1-3 Assessments | Review Time for Each Assessment | Calculations | Total Time for Review |
|---|---|---|---|
| 1,042 Assessments | 10 minutes | 1,042 assessments x 10 minutes | 10,420 minutes (174 hours or 22 days) |

(10)     Third, a RIDS analyst must review each assessment to identify whether there are certain records that are not subject to the FOIA, specifically if an "exclusion" applies. *See* paragraphs 29-32 of the First Seidel Declaration for a more fulsome description regarding exclusions.

---

[4]  As previously stated in the First Seidel Declaration, some media located within an assessment or case file is not converted to electronic record within Sentinel, therefore physical, or hard-copy, media (e.g., CD, DVD, cassette tape, etc.) is located within the hard copy case file.

[5]  In order to calculate the total amount of days, an 8-hour workday was utilized.

(11)     The preliminary search query determined that approximately 375 assessments would potentially require exclusion vetting.[6]  This is a two-step process.  First, RIDS estimates it would take approximately 9,825 minutes (164 hours or 21 days) to initiate coordination with the FBI Case Agents concerning the law enforcement sensitivities with approximately 375 assessments.  Based off a time study completed in a separate FOIA litigation, the RIDS analyst logged the time spent to complete the two-stop exclusion vetting process for five (5) files.  An estimate was calculated from that time study and utilized for the purposes of this declaration and the First Seidel Declaration. The following chart depicts the calculations for initiating and coordinating exclusion vetting.

| Type 1-3 Assessments Requiring Exclusion Vetting | Average Time Spent for Initiation/Coordination for every five (5) Assessments | Calculations[7] | Total Time for Exclusion Vetting Initiation/Coordination |
|---|---|---|---|
| 375 assessments | 131 minutes | 75 assessments x 131 minutes | 9,825 minutes (164 hours or 21 days) |

(12)     The next phase of the vetting process is for FBI Case Agents to properly respond back to RIDS, which is estimated at approximately 10 days for five (5) assessments. RIDS divided 375 assessments by five (5) resulting in 75 assessments.  RIDS then multiplied 75 assessments by 10 days resulting in approximately 750 days to receive the vetting responses for approximately 375 assessments.  The following chart depicts these calculations.

---

[6] Sentinel is not designed for FOIA purposes and does not automatically identify files subject to exclusion. Therefore, RIDS must conduct further manual vetting of potentially excludable files.
[7] RIDS estimates the time to initiate and coordinate exclusion vetting for five (5) assessments is 131 minutes.  Therefore, for calculation purposes, 375 assessments divided by five (5) assessments equals 75 assessments.

| Potentially Excluded Type 1-3 Assessments | Average Time to Receive Responses for every Five (5) Assessments | Calculations | Total Time to Receive Vetting Responses |
|---|---|---|---|
| 375 assessments | 10 days | 75 assessments x 10 days | 750 days |

(13)    Collectively, as described in in ¶¶ 8-12 *supra*, RIDS estimates the time required to scope and vet all 1,042 assessments is approximately 793 days.

**RETRIEVAL PHASE: ESTIMATED TIME TO RETRIEVE RECORDS FOR PROCESSING**

(14)    After all responsive records are identified, RIDS must then gather all records to ingest into the FOIPA Document Processing System ("FDPS") to start the FOIA processing phase, as previously stated in the First Seidel Declaration. RIDS estimates it would take approximately 521 hours to download the 1,042 assessments from Sentinel (if all records are electronically available). RIDS estimates it would take approximately 30 minutes per assessment to download from Sentinel. The following chart depicts the calculations for estimating the time to download the electronic assessments from Sentinel.

| Type 1-3 Assessments | Approximate Time to Download Each Assessment | Calculations | Total Time for Downloading Assessments |
|---|---|---|---|
| 1,042 assessments | 30 minutes | 1,042 assessments x 30 minutes | 31,260 minutes (521 hours or 66 days) |

(15)    If physical records or media must be gathered, RIDS estimates it would take approximately two (2) minutes per assessment to just order the assessment for retrieval. Theoretically, if 7.5% of the 1,042 assessments contain physical records or media, it needs to be ordered. RIDS estimates it would take approximately 158 minutes to order physical

assessments.  The following chart depicts the calculations for estimating the time to order

physical records.

| Type 1-3 Assessments | Approximate Time to Order a Physical Assessment | Calculations | Total Time for Ordering Physical Assessments |
|---|---|---|---|
| 1,042 assessments | 2 minutes | 1,042 assessments x 7.5% = 79 assessments<br><br>79 assessments x 2 minutes | 158 minutes (3 hours) |

(16)    Overall, RIDS estimates the total time to retrieve all records responsive to

Plaintiff's narrowed request is 524 hours or approximately 66 days.

**IMPORTING PHASE: ESTIMATED TIME TO IMPORT RECORDS FOR PROCESSING**

(17)    If all the potentially responsive records, approximately 1,042 assessments,

are ultimately determined responsive to Plaintiff's narrowed request, RIDS would import

approximately 1,156,620 pages into FDPS for further processing and application of FOIA

exemptions.  RIDS estimates it would take approximately five (5) minutes to import 500-page

work item increments into FDPS.  The total time to import pages is approximately 193 hours or

25 days.  The following chart depicts these.

| Type 1-3 Assessments | Potentially Responsive Pages | Approximate Time Spent to Import 500-Page Work Items | Calculations | Total Time to Import Pages into FDPS |
|---|---|---|---|---|
| 1,042 assessments | 1,156,620 pages | 5 minutes | 1,156,620 pages/500-page work item = 2,314 work items<br><br>2,314 work items x 5 minutes = 11,570 minutes (193 hours) | 193 hours (25 days) |

FOIA PROCESSING PHASE: ESTIMATED TIME TO PROCESS RECORDS FOR PUBLIC RELEASE

(18)     As previously stated in the First Seidel Declaration at paragraphs 44-46,

the records responsive to an individual FOIA request are imported into FDPS for review,

redaction, and inspection prior to public release.  FOIPA Operating Units, Classification Unit,

and/or National Security Unit conduct page-by-page reviews of all responsive case files (or

assessments in this instance) and coordinate with Subject Matter Experts ("SME"), such as

Special Agents, Intelligence Analysts, other FBI employees who are experts in particular

operational or technical subject matters, agency counsel, as well as FBI personnel in the office of

origin that opened the case file or Assessment to inspect records and ensure the FBI's equities

are properly protected.

(19)     RIDS's interim release policy is to review/process records in 500-page

increments per month per request or per litigation.  By processing and making interim responses

based on 500-page work items, the FBI is able to provide more pages to more requesters, thus

avoiding a system where a few large requests or litigations monopolize finite processing

resources and where fewer requesters' FOIPA requests are being fulfilled.[8]  By working in 500-

page increments, the FBI has found that more pages get processed, reviewed, and released to

more requesters each month because processors can work on 500-page work items for several

requests or litigations in a month.  Also, 500-page work items are more manageable for the

SMEs outside of RIDS who review the materials to ensure that FBI equities are properly

addressed and who juggle these FOIPA reviews with their FBI mission duties.  Finally, it is more

---

[8]  The FOIA encourages agencies to develop multi-track processing with the goal of responding to more requests. *See, e.g.*, 5 U.S.C. § 552(a)(6)(D).  As a result, the FBI has established four processing queues for small requests (1-50 pages), medium requests (51-950 pages), large requests (951-8,000 pages), and extra-large requests (more than 8,000 pages).

efficient to run required information security protocols on FOIPA releases of 500 pages or less. Because many FBI records contain classified information and because all FBI records are processed on a classified computer enclave, records can only be disclosed after being run through security protocol scans for particular information to ensure that it is not improperly disclosed. The time required to run security protocols and resolve any issues that may arise increases as pages are added.[9]

      (20)    To fulfill Plaintiff's FOIA request, RIDS estimates that it will require approximately 2,314 months (approximately 193 years) to review, redact, and arrange for inspection of approximately 1,156,620 pages, for approximately 1,042 Assessments. As described in ¶ 9 *supra*, RIDS standard processing practice and interim release policy is to review and redact records in 500 page-per-month ("ppm") increments. RIDS divided 1,156,620 pages by 500 pages resulting in 2,314 months for conducting a page-by-page, line-by-line review and redaction of information exempt pursuant to applicable FOIA Exemptions, as well as inspection prior to public release. The following chart depicts these calculations.

| Estimated Page Count for Type 1-3 Assessments | RIDS' Standard Processing Rate per Month | Calculations | Total Number of Releases to Plaintiff |
|---|---|---|---|
| 1,156,620 pages | 500 pages | 1,156,620 pages / 500 ppm | 2,314 releases |

| Total Number of Releases to Plaintiff | Months in One Calendar Year | Calculations | Total Amount of Time to Process Plaintiff's FOIA Request |
|---|---|---|---|
| 2,314 releases | 12 months | 2,314 releases / 12 months | 193 years (70,445 days) |

---

[9] *See National Security Counselors, et al. v. United States Department of Justice*, 15-5117, 848 F.3d 467 (D.C. Cir. 2017).

### IMPACT OF ITEM 1 OF PLAINTIFF'S NARROWED FOIA REQUEST ON THE FBI'S FOIA WORKLOAD

(21)     The FBI currently employs 242 RIDS bureau personnel, with support from 90 contractors to process requests for FBI information under the FOIA and Privacy Acts and conduct classification and declassification reviews, *inter alia*.  RIDS staff are assigned to units that receive and open new FOIPA requests, conduct searches,  make responsiveness determinations, and ingest responsive records into FDPS; review and make national security classification determinations pursuant to Executive Order 13526, conduct mandatory and systematic declassification reviews; process responsive records by applying exemptions and prepare them for public dissemination; serve as RIDS's Public Information Office and provide administrative assistance and support to RIDS units; assist the FBI Office of General Counsel's FOIPA Litigation Unit in handling all FOIPA lawsuits against the FBI.

(22)     The First Seidel Declaration details the spike in requests submitted to the FBI. *See* paragraph 49 of The First Seidel Declaration.  The FBI is currently inundated with an extraordinary amount of FOIPA requests.  The FOIA specifies two requirements for a request to be valid: it must "reasonably describe" the records sought, and it must be made in accordance with the agency's published FOIA regulations.  Upon receipt of an individual FOIPA request, RIDS ensures that the request meets the statutory requirements and is reasonably described.  A proper FOIPA request enables the FBI to comply with the FOIPA by applying a reasonable amount of time and resources to fulfil each FOIPA request so that finite resources can be equitably applied to provide the most information to the most requesters.  The FBI determined that Plaintiff's narrowed FOIA request is not a proper FOIA request because it is so wide ranging and overly broad in scope that it would require an inordinate amount of time and resources to

11

review and redact a vast quantity of material, as well as impose an immense burden on the FBI as a whole, requiring excessive time away from FBI mission critical duties to service this one FOIA request.   Furthermore, any files indexed to third party individuals will be categorically exempt from disclosure due to Plaintiff's failure to provide privacy waivers.

## CONCLUSION

(23)   The FBI determined that Plaintiff's attempt to narrow the FOIA request to all closed Type 1-3 SIM Assessments between January 2009 and December 2020 is not a proper FOIA request that would allow RIDS to process records with a "reasonable amount of effort" under the FOIA.  Additionally, it would take approximately 71,329 days or approximately 196 years for RIDS to fulfill Plaintiff's narrowed request, totaling in approximately 1,156,620 pages, which is unreasonable and unduly burdensome.  Accordingly, the FBI appropriately denied Plaintiff' narrowed FOIA request.

12

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ 18th _____ day of July 2022.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia