UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 21-1054 (RDM) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| *et al.,* | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ADDITIONAL UNDISPUTED FACTS

Pursuant to Local Civil Rule 7(h), Defendants the Federal Bureau of Investigation (the "FBI") and Department of Justice (collectively, "Defendants") submit this response to Plaintiff's Additional Undisputed Facts.

1.      The Federal Bureau of Investigation has an annual budget of nearly $10 billion dollars. FBI FY 2021 Budget Request at a Glance, at 1 ("FBI FY21 Budget Request").

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document. Nevertheless, this statement is largely immaterial to the Court's resolution of this case and the portion of the total budget devoted to FOIA compliance and records management is highly discretionary.

2.      The FBI's FY21 budget request did not include any program changes or any new expenditures for FOIA compliance. *See* FBI FY21 Budget Request.

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document, but immaterial. FOIA does not authorize courts to alter budgets or priorities of covered agencies.

3.      The FBI spent approximately $49M, which less than 0.5% of its budget, on FOIA compliance in FY21. Dep't of Justice Annual FOIA Report FY21, at § IX p. 1.

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document, but immaterial. The FOIA does not authorize courts to alter budgets or priorities of covered agencies.

4.      For the past five years, the FBI has maintained a backlog of over 4000 requests at the end of each reporting year. Department of Justice FY16-FY21 Annual FOIA Reports, § XII.A Backlogs of FOIA Requests and Administrative Appeals.

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document. Nevertheless, this statement is immaterial to the Court's resolution of this case because the FBI, to date, has not requested an *Open America* stay. Further, Defendants note that the FBI received on average more than 15,000 FOIA requests during the time period referenced by Plaintiff. *See* https://www.justice.gov/oip/reports-1 at Department of Justice Annual FOIA Reports for FY16 - FY21, Section IV (FOIA Requests) (last accessed July 18, 2022).

5.      In FY21, the average response time for perfected FBI FOIA requests that were granted expedited processing (*i.e.*, requests in which the FBI acknowledged there is an "urgency" to inform the public) was 386 days.  Dep't of Justice Annual FOIA Report FY21, § VII.A.

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document. Nevertheless, this statement is immaterial to the Court's resolution of this case because processed requests are proper ones. Defendants further note that Plaintiff's cited website states the median number of days for expedited processing was 240.5 and the lowest number of days was four.

6.      Plaintiff's request pertains to FBI "Assessments" as defined in the Domestic Investigations and Operations Guide ("DIOG").

**RESPONSE:** Undisputed.

7.      Under the DIOG, which is the FBI's implementation of the Attorney General's Guidelines for Domestic FBI Operations, the FBI can conduct a variety of "assessments" when there is "not any particular factual predication" to conduct a predicated investigation.  Attorney Gen. Guidelines for Domestic FBI Operations,[6] at 17 ("Guidelines").

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document.

8.      In conducting these Assessments, the FBI may collect and analyze a broad variety of information from publicly available sources, federal investigative records, state and local entities, human sources, surveillance not requiring a court order, and grand jury subpoenas for phone and email subscriber information.  Guidelines at 20.

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document.

9.      Due to "heightened constitutional and civil liberties concerns," DOJ and FBI policies require "special approval and reporting requirements" when these Assessments involve "public officials, political candidates, religious or political organizations or their leaders, the news media, and other similarly sensitive matters" known as Sensitive Investigative Matters (SIMs). U.S. Senate Committee on the Judiciary, March 28, 2022 Letter to Hon. Christopher A. Wray,[7] at 1 ("Judiciary Letter"); Compliance and Mitigation Unit Report, 2019 Domestic Investigations Guide Audit, at 2, provided as Exhibit H ("2019 Audit").

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document. Nevertheless, this statement is immaterial to the Court's resolution of this case.

10.      A 2019 audit by the FBI Inspection Division found a "litany" of nearly 750 violations involving SIMs in 353 files from an 18-month period.  Judiciary Letter, at 1.

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document. Nevertheless, this statement is immaterial to the Court's resolution of this case because Plaintiff's request is not for the audit report or limited to the 353 files referenced therein.

11.     The 2019 audit found failures to conduct the required legal review prior to opening a SIM, failures to obtain approval from the Special Agent in Charge or Assistant Special Agent in Charge, and failures to notify the relevant U.S. Attorney's Office and FBI headquarters.  Judiciary Letter at 1-2.

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document. Nevertheless, this statement is immaterial to the Court's resolution of the FOIA claims in this case.

12.     The Judiciary Committee—in a letter signed by both the Chair and Ranking Member—described these as "widespread and apparently systematic violations" and a "pattern and practice of evading the rules, which consequently opens the door for political and other improper considerations to infect the investigative decision-making process." Judiciary Letter, at 1-2.

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document. Nevertheless, this statement is immaterial to the Court's resolution of the FOIA claims in this case.

13.     In 1976, the Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities found that pursuant to the COINTELPRO program, the FBI took the law into its own hands and engaged in a series of covert programs directed against domestic groups that violated First Amendment rights and were intolerable in a democratic society.  Church Committee Report, Book III,[8] at 3.

**RESPONSE:** Undisputed to the extent the assertion is consistent with the cited document. Nevertheless, this statement is immaterial to the Court's resolution of the FOIA claims in this case.

14.     As part of COINTELPRO, the FBI surveilled journalists, attorneys, members of Congress, lobbyists, congressional aides, and an Associate Justice of the Supreme Court, and such surveillance has been a resource for executive power that has tempted administrations of both political parties.  Church Committee Report, Book III, at 339, 341-342, 344-345.

**RESPONSE:** Undisputed to the extent that Plaintiff maintains that the Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities made the assertion and the assertion is consistent with the cited document. Nevertheless, this statement is immaterial to the Court's resolution of the FOIA claims in this case.

15.     COINTELPRO demonstrates the dangers inherent in the overbroad collection of domestic intelligence; when information is available, it can be—and was—improperly used. Church Committee Report, Book III, at 16.

**RESPONSE:** Undisputed to the extent that Plaintiff maintains that the Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities made the assertion and the assertion is consistent with the cited document. Nevertheless, this statement is immaterial to the Court's resolution of the FOIA claims in this case.

16.     In September 2020, Plaintiff requested "all Type 1, Type 2, and Type 3 FBI Assessments (as defined in the Domestic Investigations and Operations Guide, DOIG) opened since September 29, 2008." Compl. Ex. A, ECF No. 1-1.

**RESPONSE:** Undisputed.

17.     FBI denied the request, claiming that it "does not provide enough detail to enable personnel to locate records with a reasonable amount of effort." Compl. Ex. B, ECF No. 1-1.

**RESPONSE:** Undisputed.

18.     The request used the FBI's own terminology and referenced the FBI policy applicable to the records.  Compl. Ex. B.

**RESPONSE:** Undisputed to the extent that Plaintiff maintains that its Freedom of Information Act request used words found in the DIOG.

19.     Plaintiff appealed, providing further information about Assessments and how they are maintained in FBI record-keeping systems to further assist FBI in responding to the request. Compl. Ex. C, ECF No. 1-1.

**RESPONSE:** Undisputed that Plaintiff appealed the FBI's determination. Disputed that Plaintiff's appeal letter reflects Plaintiff's intent to assist the FBI with responding to Plaintiff's FOIA request. Rather, with its appeal letter, Plaintiff challenged the FBI's determination that Plaintiff's request was too broad for the FBI to conduct a search. Compl. Exs. B, C.

20.     DOJ's Office of Information Policy affirmed the denial, stating that Plaintiff "did not characterize the records sought in such a way that they could be located without searching through millions of records." Compl. Ex. E, ECF No. 1-1.

**RESPONSE:** Undisputed.

21.     The search that the FBI conducted as part of this lawsuit to identify Assessments did not involve a search through millions of records. *See* Seidel Decl.

**RESPONSE:** Disputed to the extent that Plaintiff maintains that the FBI has completed a search for records responsive to Plaintiff's FOIA request. The FBI has not completed a search to identify all Assessments responsive to Plaintiff's FOIA request. The FBI identifies the search process in paragraphs 26 through 32 of the Declaration of Michael G. Seidel (ECF No. 21-3).

22.     After this suit was filed, the parties engaged in discussions about the scope of the request, and Plaintiff made multiple offers and suggestions as to how the request could be limited

and sought information from the FBI to allow Plaintiff to narrow the request in an intelligent manner. Loevy Decl. at ¶¶ 9-19, provided as Exhibit J. This included a proposal to limit the request to only closed SIM Assessments. *Id.* at ¶ 14.

**RESPONSE:** Disputed. Plaintiff provided concrete written proposals on September 3, 2021 (one proposal), and March 24, 2022 (four proposals). *See* Loevy Decl. ¶¶ 15, 17-18; August 13, Sept. 13, Oct. 13, and Nov. 12, 2021 Joint Status Reports (ECF Nos. 14-16) (not mentioning multiple offers being made by Plaintiff). Undersigned counsel does not recall Plaintiff offering to narrow its request to all closed SIM Assessments prior to summary judgment briefing. Nevertheless, the assertion in paragraph 22 is immaterial to the Court's resolution of this case. Further, Defendants object to Plaintiff's use of settlement discussions or negotiations in an attempt to obtain summary judgment. *See NAACP Legal Defense & Education Fund, Inc. v. Dep't of Justice*, 612 F. Supp. 1143, 1146 (D.D.C. 1985) ("the intent of FRE 408 is to foster settlement negotiations" and "the sole means used to effectuate that end is limitation on the admission of evidence produced during settlement negotiations for the purpose of providing liability at trial.").

23.     The FBI either refused or ignored all of Plaintiff's offers and suggestions. Loevy Decl. at ¶¶ 16, 19.

**RESPONSE:** Disputed. Plaintiff provided written concrete proposals on September 3, 2021 (one proposal), and March 24, 2022 (four proposals). *See* Loevy Decl. ¶¶ 15, 17-18; August 13, Sept. 13, Oct. 13, and Nov. 12, 2021 Joint Status Reports (ECF Nos. 14-16) (not mentioning multiple offers being made by Plaintiff). Undersigned counsel does not recall Plaintiff offering to narrow its request to all closed SIM Assessments prior to summary judgment briefing. Nevertheless, the assertion in paragraph 23 is immaterial to the Court's resolution of this case. Further, Defendants object to Plaintiff's use of settlement discussions or negotiations in an attempt

to obtain summary judgment. *See NAACP Legal Defense & Education Fund, Inc. v. Dep't of Justice*, 612 F. Supp. 1143, 1146 (D.D.C. 1985) ("the intent of FRE 408 is to foster settlement negotiations" and "the sole means used to effectuate that end is limitation on the admission of evidence produced during settlement negotiations for the purpose of providing liability at trial.").

24.      On March 24, 2022, after receiving the FBI's opening brief with additional details about the FBI's claimed burden in responding to the request, Plaintiff reiterated prior offers and made additional offers to narrow the scope of the request.  Loevy Decl. at ¶ 17.  This included reiterating a prior offer to limit the request to only closed SIM Assessments for the relevant time period. *Id.*

**RESPONSE:** Disputed. Plaintiff provided written concrete proposals on September 3, 2021 (one proposal), and March 24, 2022 (four proposals). *See* Loevy Decl. ¶¶ 15, 17-18; August 13, Sept. 13, Oct. 13, and Nov. 12, 2021 Joint Status Reports (ECF Nos. 14-16) (not mentioning multiple offers being made by Plaintiff). Undersigned counsel does not recall Plaintiff offering to narrow its request to all closed SIM Assessments prior to summary judgment briefing. Nevertheless, the assertion in paragraph 24 is immaterial to the Court's resolution of this case. Defendants further object to Plaintiff's use of settlement discussions or negotiations in an attempt to obtain summary judgment. *See NAACP Legal Defense & Education Fund, Inc. v. Dep't of Justice*, 612 F. Supp. 1143, 1146 (D.D.C. 1985) ("the intent of FRE 408 is to foster settlement negotiations" and "the sole means used to effectuate that end is limitation on the admission of evidence produced during settlement negotiations for the purpose of providing liability at trial.").

25.      On April 15, 2022, the FBI responded to Plaintiff's March 25 communication, rejecting all of Plaintiff's proposals and offering only 5 closed SIM Assessments for each year,

which does not allow Plaintiff or the public to adequately understand the FBI's activities with regard to these Assessments.  Loevy Decl. at ¶ 19.

**RESPONSE:** Disputed to the extent that Plaintiff maintains that responding to Plaintiff's proposal for narrowing to closed SIM Assessments would permit the public to understand the FBI's activities.  "[A]ny files indexed to third party individuals will be exempt from disclosure due to Plaintiff's failure to provide privacy waivers." 2d Seidel Decl. ¶ 22, Ex. 1.Undisputed to the extent that the referenced communication was with counsel representing the FBI in this litigation rather than the FBI directly.

Nevertheless, the assertion in paragraph 25 is immaterial to the Court's resolution of this case. Further, Defendants object to Plaintiff's use of settlement discussions or negotiations in an attempt to obtain summary judgment. *See NAACP Legal Defense & Education Fund, Inc. v. Dep't of Justice*, 612 F. Supp. 1143, 1146 (D.D.C. 1985) ("the intent of FRE 408 is to foster settlement negotiations" and "the sole means used to effectuate that end is limitation on the admission of evidence produced during settlement negotiations for the purpose of providing liability at trial.").

26.    In its April 15 communication, the FBI indicated that the total number of closed SIM Assessments for the requested time period was 1068.  Loevy Decl. at ¶ 19.

**RESPONSE:** Undisputed to the extent that the referenced communication was with counsel representing the FBI in this litigation rather than the FBI directly. Nevertheless, the assertion in paragraph 26 is immaterial to the Court's resolution of this case. Further, Defendants object to Plaintiff's use of settlement discussions or negotiations in an attempt to obtain summary judgment. *See NAACP Legal Defense & Education Fund, Inc. v. Dep't of Justice*, 612 F. Supp. 1143, 1146 (D.D.C. 1985) ("the intent of FRE 408 is to foster settlement negotiations" and "the

sole means used to effectuate that end is limitation on the admission of evidence produced during settlement negotiations for the purpose of providing liability at trial.").

27.     Standard statistical practice in selecting a sample size from approximately 10,000 files calls for a sample size of approximately 1000 sample files.  Inspection Division External Audit and Compliance, DIOG: An Audit of Assessments and Investigations Opened Between May 1, 2013 and April 30, 2014 at 4, provided as Exhibit K.

**RESPONSE:**  Disputed. The assertions regarding a sample size pertain to an audit, not providing an estimate to demonstrate the undue burden that would occur from having to respond to a FOIA request. *See* Inspection Division External Audit and Compliance, DIOG: An Audit of Assessments and Investigations Opened Between May 1, 2013 and April 30, 2014 at 4, provided as Pl.'s Ex. K.

28.     The DIOG requires that for any SIM Assessment, "the title/caption must contain both the words 'Assessment' and 'Sensitive Investigative Matter.'"  DIOG § 10.1.4.

**RESPONSE:** Defendants respectfully refer the Court to the cited document for a complete and accurate statement of its contents. Nevertheless, this paragraph is immaterial to the Court's resolution of this case.

29.     If a matter that has been designated as a SIM no longer remains a SIM due to a change in the facts and circumstances of the assessment or investigation, this change of designation must be made in the file and the caption.  DIOG § 10.1.4.

**RESPONSE:** Defendants respectfully refers to the Court to the cited document for a complete and accurate statement of its contents. Nevertheless, the assertion in this paragraph is immaterial to the Court's resolution of this case.

30.     The Inspection Division's 2019 audit identified the total number of SIMs in the relevant time period.  2019 Audit, at 2.

**RESPONSE:** Disputed because the cited document does not address the number of SIMs that exist that fall under the time period of Plaintiff's request as originally drafted. Nevertheless, the assertion in this paragraph is immaterial to the Court's resolution of this case.


Dated: July 18, 2022
         Washington, DC

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES, D.C. Bar #481052
                                        United States Attorney

                                        BRIAN P. HUDAK
                                        Chief, Civil Division


                                        By:  _____/s/_____
                                             MICHAEL A. TILGHMAN II
                                             D.C. Bar #988441
                                             Assistant United States Attorney
                                             601 D Street, NW
                                             Washington, DC 20530
                                             (202) 252-252-7113

                                        *Attorneys for the United States of America*