**IN THE UNITED STATES DISTRICT COURT**
**OF THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CATO INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-cv-1054 (RDM) |
| | ) | |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| *et. al.,* | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR**
**SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

I.   ARGUMENT ........................................................................................................2

   A.  Plaintiff's narrowed request for closed Type 1-3 SIM Assessments from
       January 2009 to December 2020 controls ............................................................2

   B.  Defendants have not established that Plaintiff's narrowed request imposes an
       unreasonable burden ..............................................................................................5

       1.  Defendants' estimates lack foundation .........................................................5

       2.  Defendants have significantly overstated the burden ...................................9

   C.  "Reasonably describes" does not include the burden of searching for or
       processing records ................................................................................................11

II.  CONCLUSION ................................................................................................13

# **TABLE OF AUTHORITIES**

*Cases*

*Am. Ctr. for L. & Just. v. DOJ*, 325 F. Supp. 3d 162 (D.D.C. 2018)......................................2, 3, 4

*Am. Fed'n of Gov't Emps., Local 2782 v. Dep't of Commerce*, 907 F.2d 203
(D.C. Cir. 1990) .........................................................................................................4, 10, 12

*Burke v. DOJ*, 298 F. Supp. 3d 119 (D.D.C. 2018) ........................................................................4

*Camara v. Mastro's Restaurants LLC*, 340 F. Supp. 3d 46 (D.D.C. 2018) ..................................12

*Colgan v. DOJ*, 2020 WL 2043828 (D.D.C. Apr. 28, 2020)....................................................6, 7, 8, 9

*Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90 (D.D.C. 2019) ..................................5

*Danik v. DOJ*, 463 F. Supp. 3d 1 (D.D.C. 2020).............................................................................7

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ...........................................12, 13

*Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978)..............................................................................12

*Keeping Gov't Beholden, v. DOJ*, 2021 WL 5918627 (D.D.C. Dec. 13, 2021)..............................9

*Kwoka v. IRS*, 2018 WL 4681000 (D.D.C. Sept. 28, 2018) .....................................................10, 11

*Leopold v. ICE*, 560 F. Supp. 3d 189 (D.D.C. 2021)..................................................................2, 3, 4

*Nat'l Sec. Couns. v. CIA*, 969 F.3d 406 (D.C. Cir. 2020) .............................................................12

*Nation Mag. v. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995).....................................................5, 12

*People for Am. Way Found. v. DOJ*, 451 F. Supp. 2d 6 (D.D.C. 2006) ...................................2, 3, 4

*Prop. of the People, Inc. v. DOJ.*, 530 F. Supp. 3d 57 (D.D.C. 2021) ...........................................5

*Tereshchuk v. BOP*, 67 F. Supp. 3d 441 (D.D.C. 2014).........................................................8, 9, 11

*Trans-Pac. Policing Agreement v. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999)......................4

*Yeager v. DEA*, 678 F.2d 315 (D.C. Cir. 1982) ...........................................................................9, 13

*Statutes*

5 U.S.C. § 552(a)(3)(D) ...................................................................................................................10

*Rules*

Fed. R. Civ. P. 56(c)(4)...................................................................................................................5

In response to Plaintiff's FOIA request for records specifically referenced in the FBI's own Domestic Investigations and Operations Guide, Defendant FBI claimed that Plaintiff did "not provide enough detail" about what was requested.  Dkt. 29-3 at 5 (Defs.' Resp. PSAUMF ¶ 17); Dkt. 1-1 at 6 (Compl. Ex. B).  Because that claim was absurd, Plaintiff appealed to Defendant DOJ and ultimately sued.

Defendants then shifted their position, claiming for the first time that the issue with the request was the work involved in searching for and processing the requested records, not the request's clarity.  *See* Dkt. 29 at 3-4 (Defs.' Resp.) (describing three different alleged ways "that a FOIA request fails to 'reasonably describe' the records sought" and distinguishing vagueness, as FBI claimed at the administrative level, from burden, which Defendants now assert).  Rather than proceed directly to motion practice, however, Plaintiff attempted to work through those concerns through various proposals, to no avail.  Now, in an effort to avoid producing records about an issue on which the FBI has been sharply criticized by bi-partisan members of Congress for repeatedly violating rules intended to protect First Amendment rights, Defendants argue that the Court cannot even consider Plaintiff's narrowing proposals, and rely on legally and factually unsupported claims to support their "reasonably describes" defense.

The Court should find that Plaintiff's narrowed request for approximately 1,000 closed SIM Assessments controls.  While Defendants criticize Plaintiff for not narrowing the request pre-suit, there was no reason to do so: FBI claimed only that it did not understand the request.  And under the scope of the narrowed request, Defendants have not established that the burden of searching for or even processing the requested records is prohibitive.

Even if the Court finds that only the original scope of the request applies, or that the burden of fulfilling Plaintiff's narrowed request would justify Defendants' denial, the Court would then

need to resolve whether search and processing burdens are properly considered under the "reasonably describes" requirement. They are not, and therefore, even if the Court holds that original scope of the request applies or that the burden of the narrowed request would justify Defendants' denial, which it should not, the Court should still grant summary judgment to Plaintiff.

## I.    ARGUMENT

### A.    Plaintiff's narrowed request for closed Type 1-3 SIM Assessments from January 2009 to December 2020 controls.

The Court should consider the operative request here to be Plaintiff's narrowed request for closed Type 1-3 SIM Assessments from January 2009 to December 2020. Defendants argue that the Court should only consider Plaintiff's original request for two reasons: first, because "Plaintiff never formally narrowed their request prior to summary judgment briefing[,]" Dkt. 28 at 14 (Defs.' Reply), and, second, because the narrowed request was not submitted to the FBI "following the FBI's procedures for submitting a FOIA request," Dkt. 28 at 16 (Defs.' Reply). The Court should reject both arguments because they are inefficient and contrary to this Circuit's precedent.

Courts in this Circuit consistently allow plaintiffs to narrow the scope of a FOIA request during litigation. "FOIA's text contemplates that plaintiffs will narrow the scope of their requests." *Am. Ctr. for L. & Just. v. DOJ*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018). Thus, "FOIA requests are frequently clarified or modified even after a lawsuit is filed." *People for Am. Way Found. v. DOJ*, 451 F. Supp. 2d 6, 12 (D.D.C. 2006). Narrowing may be done unilaterally, "because 'the FOIA requester is the master of the FOIA request.'" *Leopold v. ICE*, 560 F. Supp. 3d 189, 197 (D.D.C. 2021) (quoting *People for Am. Way*, 451 F. Supp. 2d at 12). "To deny that possibility might be to deny any prospect of compromise or settlement in FOIA cases." *People for Am. Way*, 451 F. Supp. 2d at 12. Indeed, "[i]t would be senseless and inefficient . . . to ignore the advances made during more than one year of tedious negotiations between the parties, only to

have plaintiff file another FOIA request for the narrowed number of files and return to precisely the same position in which the parties now stand." *Id.* at 11–12. Accordingly, consistent with FOIA's text, traditional waiver principles, and all parties' interest in common-sense efficiency, courts routinely allow plaintiff-requesters to unilaterally narrow the scope of a FOIA request during litigation. *See Leopold*, 560 F. Supp. 3d at 196; *Am. Ctr. for L. & Just.*, 325 F. Supp. 3d at 167; *People for Am. Way*, 451 F. Supp. 2d at 11. The Court should hold that Plaintiff's narrowed request controls here for the same reasons, especially considering "there is a sufficient record for the Court to assess" because "the government has . . . addressed the narrowed FOIA request in its memoranda[.]" *People for Am. Way*, 451 F. Supp. 2d at 12; *see* Dkt. 28 at 17-19 (Defs.' Reply); *see also Ctr. for L. & Just.*, 325 F. Supp. 3d at 168 (explaining that "civil litigation would not serve its purpose of offering a just, speedy, and inexpensive determination of every action" if parties could not "routinely agree to narrow the issues in dispute").

Defendants argue that this case is distinguishable because Plaintiff never "formally" narrowed their request prior to summary judgment briefing, Dkt. 28 at 14-16 (Defs.' Reply)—*i.e.*, in the parties' Joint Status Reports or Notice of Issues for Summary Judgment—but Defendants' suggestion that plaintiffs must formalize narrowed FOIA requests in Joint Status Reports or Notices of Issues for Summary Judgment is unsupported by this Circuit's precedent. Although courts have found a plaintiff's use of such filings as sufficient to narrow a FOIA request, there is no precedent for Defendants' proposition that a plaintiff ***must*** use them to narrow the request. In other words, no case cited by Defendants has held that a plaintiff is barred from narrowing a FOIA request after the filing of Joint Status Reports or Notices of Issues for Summary Judgment. *See Leopold*, 560 F. Supp. 3d at 196 ("The Court agrees with Plaintiffs that they successfully narrowed the scope of their FOIA request when they proposed various search methodologies to ICE during

- 3 -

the course of the litigation, and so their June 5, 2020, proposed limitation is the operative request for purposes of summary judgment."); *Am. Ctr. for L. & Just.*, 325 F. Supp. 3d at 168 ("Just as a party may agree to narrow the case during a pretrial conference, a FOIA plaintiff may agree to do so in a written status report."); *People for Am. Way*, 451 F. Supp. 2d at 11-12.

Defendants additionally argue that the Court should not consider Plaintiff's narrowed request because Plaintiff did not resubmit the request following the FBI's FOIA procedures, Dkt. 28 at 16 (Defs.' Reply), but that ignores the fundamental premise of cases cited by both parties: that "FOIA requests are frequently clarified or modified even after a lawsuit is filed." *People for Am. Way*, 451 F. Supp. 2d at 12. Courts regularly hold that narrowed requests offered by plaintiff-requesters during litigation are controlling, notwithstanding the fact that the plaintiff-requesters did not resubmit the narrowed request pursuant to the defendant-agency's FOIA procedures. *See Leopold*, 560 F. Supp. 3d at 196; *Am. Ctr. for L. & Just.*, 325 F. Supp. 3d at 167; *People for Am. Way*, 451 F. Supp. 2d at 11; *see also Trans-Pac. Policing Agreement v. Customs Serv.*, 177 F.3d 1022, 1029 (D.C. Cir. 1999) (remanding for district court to make a segregability finding *sua sponte* "as a matter of judicial economy" where "nobody's interests would be served by forcing appellants to pursue their request again at the administrative level"). None of the other cases cited by Defendants hold differently. *See Am. Fed'n of Gov't Emps., Local 2782 v. Dep't of Commerce*, 907 F.2d 203, 208 (D.C. Cir. 1990) (refusing "to pass de novo" on appeal on a narrowed request because it was not presented to the district court); *Burke v. DOJ*, 298 F. Supp. 3d 119, 122 (D.D.C. 2018) (requiring plaintiff to resubmit FOIA request "where agencies allege that they were unable to find . . . plaintiffs' requests for information").

Given agency FOIA backlogs and the number of FOIA suits in this District that result from them, the Court should encourage parties to resolve scoping disputes throughout litigation by

finding that Plaintiff's narrowed request controls, especially given that Defendant FBI did not even assert at the administrative stage the burden arguments on which it now relies.

**B.      Defendants have not established that Plaintiff's narrowed request imposes an unreasonable burden.**

Defendants' refusal to process Plaintiff's narrowed request relies entirely on the argument that fulfilling the request would be unreasonably burdensome. *See* Dkt. 29 at 17-19 (Defs.' Reply). But even if search and processing burden are a proper basis to deny a request, which Plaintiff disputes in Sections (I)(B)(2) and (I)(C), *infra*, Defendants have not proven that those burdens are unreasonable here because their estimates lack proper foundation and rely extensively on downtime as opposed to actual search and processing time.

**1.      Defendants' estimates lack foundation.**

Under FOIA, it is the agency's burden to provide a sufficient explanation why a search would be unreasonably burdensome. *Prop. of the People, Inc. v. DOJ.*, 530 F. Supp. 3d 57, 63 (D.D.C. 2021) (citing *Nation Mag. v. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995)). "This required showing is not insignificant." *Id*. "Courts have required a detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness." *Id*. (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c)(4) (requiring that summary judgment affidavits "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 110 (D.D.C. 2019) (rejecting agency affidavits lacking foundation).

Defendants claim that their time estimates are supported by a declarant who is "situated to estimate and quantify the burden" and who "explain[s] in detail the FBI's methodology[,]" Dkt. 29 at 13 (Defs.' Reply), but Defendants' conclusory arguments ignore the specific deficiencies in

Defendants' second declaration.  Defendants' second declaration does not provide a sufficiently detailed explanation because it fails to explain the factual bases for its per-Assessment time estimates and it fails to establish that the estimated time here is unusual.

First, Defendants' second declaration—like its first declaration, Dkt. 22-1 at 13-14 (Pl.'s Mem.)—fails to provide factual bases that show why and how each phase of fulfilling Plaintiff's request would result in the claimed number of hours.  Where a declaration "provides an estimate of the hours necessary to complete the search[,]" it must "provide enough detail to show why searching . . . would result in those hours[.]"  *Colgan v. DOJ*, 2020 WL 2043828, at *10 (D.D.C. Apr. 28, 2020).  A mere conclusory reference to past practice carries little weight.  *See id.* ("This reliance on past practice, without further explanation, is an insufficient justification and does not establish that a search would be unduly burdensome.").  Defendants' second declaration does not provide enough detail to show why or how the five phases of fulfilling Plaintiff's request would result in the claimed time estimates.

The time estimates for the first four phases—"scoping, "vetting," "retrieval," and "importing"—are calculated based on time-per-Assessment assumptions that are presented without explanation.  Specifically, when estimating the total time for each of those four phases, Defendants start by asserting conclusory "estimates"—without explanation—of the time required to perform the work of that phase for a single Assessment.  Dkt. 29-1 at 6 (Second Seidel Decl. ¶ 9) ("RIDS estimates the time required for this physical file scoping is approximately 10 minutes per assessment"), 7 (¶ 11) (pointing to an unnamed "time study" in unnamed "separate FOIA litigation" to assume that it will take 131 minutes to initiate/coordinate every five Assessments), 8 (¶¶ 14-15) ("RIDS estimates it would take approximately 30 minutes per assessment to download from Sentinel"; "RIDS estimates it would take approximately two (2) minutes per assessment" to

order hard copies of an Assessment), 9 (¶ 17) ("RIDS estimates it would take approximately five
(5) minutes to import 500-page work item increments into FDPS").  Then, Defendants simply
multiply those per-Assessment estimates by the total number of Assessments (1,042) to determine
the total amount of time estimated for each respective phase.  *See id.*  Such conclusory assertions
fail to meet Defendants' significant burden of providing sufficient detail to show why Defendants'
work in each phase results in those per-Assessment time estimates.  *See Colgan*, 2020 WL
2043828, at *9 ("While [the declarant] provides an estimate of the hours necessary to complete
the search . . . he does not provide enough detail to show why searching for the policies, manuals,
and training materials related to these thirty systems would result in those hours[.]"); *see also
Danik v. DOJ*, 463 F. Supp. 3d 1, 9–10 (D.D.C. 2020) (finding declaration insufficient to establish
unreasonably burdensome search where the FBI had "no factual basis to assume" that search terms
"would generate a similar number of hits and require similar hours to review" because it never ran
searches for those terms).

   The time estimates for the fourth and fifth phases—"importing" and "processing"—are
also lacking sufficient explanation because they rely on one arbitrary underlying assumption: that
the 1,042 identified Assessments comprise approximately 1,156,620 total pages.  Dkt. 29-1 at 4
(Second Seidel Decl. ¶ 7).  To estimate the total number of pages, Defendants make two subjective
assumptions.  First, without explanation, Defendants estimate the average number of pages in each
Assessment based on the size of just the first five Assessments resulting from Defendants' database
search.  *Id.* at 4-5 (¶ 7).  Conveniently for Defendants, although three of those five Assessments
contain few documents (*i.e.*, "serials") (12, 11, and 45 documents in Files 1, 3, and 4, respectively),
the other two of those five Assessments are four- to ***twenty-four-times*** larger (269 and 218
documents in Files 2 and 5, respectively).  *Id.* at 5 (¶ 7).  Second, Defendants assume that each one

of the documents within an Assessment is 10 pages long—an assumption they attest is simply based on their own "standard business practice." *Id*. Based on these two assumptions, Defendants estimate an average of 1,110 pages per Assessment, which amounts to an estimated 1,156,620 pages across the 1,042 identified Assessments. *Id*. These estimations lack the detailed explanation and basis in fact required to meet Defendants' burden here.[1]

In addition, Defendants' second declaration is insufficient because it does not address whether the estimated time burden is unusual. An agency declaration must establish that the estimated burden is relatively unusual. *See Tereshchuk v. BOP*, 67 F. Supp. 3d 441, 456 (D.D.C. 2014), *aff'd sub nom. Tereshchuk v. BOP*, 2015 WL 4072055 (D.C. Cir. June 29, 2015) (finding declaration failed to prove unreasonable burden where "BOP has not shown the extent to which this would burden the agency and whether such a burden is unusual"); *Colgan*, 2020 WL 2043828, at \*9 (finding that statements in declaration "fail to show that a search would be unduly burdensome" because, in part, it fails to establish "whether the burden would be unusual"). Defendants' second declaration nowhere addresses how the estimated time for each phase of fulfilling Plaintiff's request, or the total estimated time, compares to the burden of fulfilling other requests. *See generally* Dkt. 29-1 (Second Seidel Decl.).

In sum, Defendants' failures of proof here resemble those of the defendant-agency in *Colgan*: "While [the declarant] provides an estimate of the hours necessary to complete the search . . . he does not provide enough detail to show why searching for the [requested records] would result in those hours, the costs associated with the search, or whether those costs would be

---

[1] Defendants' own declarations illustrate the arbitrary impact of Defendants' unsupported assumptions. Defendants' original declaration estimated 28 pages per Type 1 & 2 Assessment and 826 pages per Type 3 Assessment, while the second declaration estimates 1,110 pages per Types 1, 2, & 3 Assessments. Dkt. 21-3 at 11 (First Seidel Decl. ¶ 25); Dkt. 29-1 at 5 (Second Seidel Decl. ¶ 7).

unusual."  2020 WL 2043828, at *9.  For those reasons, the Court should find that Defendants'

second declaration failed to carry their significant burden of proving an unreasonable burden here.

## 2.     Defendants have significantly overstated the burden.

Defendants bear the burden of proving their burden claims, and Plaintiff need not even

address them on their merits because they lack sufficient foundation.  But it is also clear the burden

is significantly overstated and would not exceed what has been required in other cases.

Defendants estimate that it will take 71,329 days (or about 196 years) to fulfill Plaintiff's

narrowed request for 1,042 Assessments (an average of more than 68 days per Assessment), Dkt.

29-1 at 13 (Second Seidel Decl. ¶ 23).  That total consists of five phases of fulfilling the request:

scoping (22 days), vetting (771 days), retrieving (66 days), importing (25 days), and processing

(70,445 days).  *Id.* at 6-11 (¶¶ 9, 11-12, 16-17, 20); Dkt. 28 at 17-18 (Defs.' Reply).

As explained in Section (I)(C) below, Plaintiff disputes that any of these burdens are

relevant to whether the request has "reasonably described" the records.  But at most, the Court

should consider only the burden of searching for records (*i.e.*, the "scoping" phase), not processing

records (*i.e.*, all other phases), because FOIA "puts no restrictions on the quantity of records that

may be sought" and "anticipates requests for voluminous records."  *Tereshchuk*, 67 F. Supp. at

454-55 (rejecting agency's argument that "the mere production of records that have technically

been identified can be unreasonably burdensome"); *see also Yeager v. DEA*, 678 F.2d 315, 326

(D.C. Cir. 1982) ("the number of records requested appears to be irrelevant to the determination

of whether they have been 'reasonably described'"); *Keeping Gov't Beholden*, *v. DOJ*, 2021 WL

5918627, at *6 (D.D.C. Dec. 13, 2021) ("This Court is skeptical that a FOIA request may be denied

based on sheer volume of records requested alone . . . Nonetheless, when it would be unreasonably

burdensome for the agency to ***identify*** what records are responsive to a FOIA request, the agency

is not obliged to honor that request." (emphasis in original)).  Although *AFGE*, the lone D.C.

- 9 -

Circuit cased relied on by Defendants concerning this issue, makes cursory reference to the burden of review and redaction, it cites no statutory language, does not acknowledge *Yeager*, did not need to address those burdens in light of its finding that the burden of "locat[ing]" the records was substantial, and, unlike here, involved a request implicating files "largely unnecessary to the [requester's] purpose." 907 F.2d at 209.

Under FOIA, a "search" for records "means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request[.]" 5 U.S.C. § 552(a)(3)(D); *Kwoka v. IRS*, 2018 WL 4681000, at *5 (D.D.C. Sept. 28, 2018) (holding that review time is "not a ***search*** at all" where agency "already located the responsive records" (emphasis original)). Thus, only Defendants' "scoping" phase is a "search" under FOIA. Dkt. 29-1 at 6 (¶8). The alleged 22 days of "scoping" plainly is not an unreasonable burden, *see Kwoka*, 2018 WL 4681000, at *5, and Defendants do not even argue that it is.

Even if the Court considered the burden of all five of Defendants' phases, however, Defendants have not established an unreasonable burden because their "vetting" and "processing" phases significantly overstate the burden. The Court should not consider 750 out of the 771 days estimated in the "vetting" phase because those days are not a burden imposed by Plaintiff's FOIA request. "Vetting," according to Defendants, refers to their work with FBI Case Agents to determine whether an Assessment is excluded from production because acknowledging the Assessment's existence "could cause harm to law enforcement or national security interests." Dkt. 29-1 at 6-7 (Second Seidel Decl. ¶¶ 10-12); Dkt. 21-3 at 13 (First Seidel Decl. ¶ 29). According to Defendants, vetting requires (1) initiating and coordinating with FBI Case Agents (which would take an estimated 21 days) and (2) waiting for "FBI Case Agents to properly respond back" (which would take an estimated 750 days). Dkt. 29-1 at 7 (Second Seidel Decl. ¶¶ 11-12). Defendants

thus include the entirety of the 750 days estimated to pass between communications among RIDS and FBI Case Agents as a burden imposed by Plaintiff's request. *Id.* at 7 (¶ 12). Of course, Defendants cite no case holding that any such downtime is relevant to a burden analysis.

The Court should also reject the 70,445 days estimated in Defendants' "processing" phase. That estimate does not reflect actual processing time, but instead reflects the amount of time it will take to complete the request if Defendants process 500 pages per month. *Id.* at 10 (¶ 19). Again, Defendants cite no cases taking this approach, and it vastly overstates the burden involved in processing the request. And because Defendants do not provide an estimate for how long it would take to process a single page or Assessment, *id.* at 10-11 (¶¶ 18-20), they have provided no basis to reach any conclusions about how long it will take in actual processing time to satisfy the request.

Excluding the "vetting" and "processing" estimates, the total burden is just 134 total days (*i.e.*, 1,072 hours), *id.* at 6-11 (¶¶ 9, 11, 16-17) (22 days scoping, 21 days vetting, 66 days retrieving, 25 days importing), which is less than half the 2,200-hour burden found reasonable in *Kwoka*. 2018 WL 4681000, at *5; *see also Tereshchuk*, 67 F. Supp. 3d at 456 ("FOIA requests are frequently time-consuming and indeed it is not unusual for a search pursuant to FOIA to last over a year."). As such, Defendants have not proven a prohibitive burden even if the Court finds both searching and processing time to be relevant to whether the request "reasonably describes" the records Plaintiff seeks.

### C. "Reasonably describes" does not include the burden of searching for or processing records.

The Court should resolve things based on the scope of the narrowed request for approximately 1,000 closed SIM Assessments, and, under that approach, Defendants have not met their burden even if the law permits them to rely on search and processing burdens. *See* Sections (I)(A)-(B), *supra*. If the Court instead considers the original scope of the request, however, or if

it finds that the burden of searching for and/or processing the narrowed request would justify Defendants' denial, the Court must then determine whether "reasonably describes" applies to the burden of the request, as opposed to its clarity.

Defendants do not identify any D.C. Circuit case where the specific issue here—whether, as a legal matter, a court may consider the searching and processing burdens under FOIA's "reasonably describes" requirement—was disputed. Rather, in those cases, the court addressed whether the burden was unreasonable and simply assumed that the statute allows for such a consideration. *See Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020); *Nation Mag.*, 71 F.3d at 891; *AFGE*, 907 F.2d at 208-09; *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978). Thus, those cases are not controlling. *See Camara v. Mastro's Restaurants LLC*, 340 F. Supp. 3d 46, 54 (D.D.C. 2018), *aff'd*, 952 F.3d 372 (D.C. Cir. 2020) ("[A] decision is not a binding precedent on an issue not pressed by the parties or passed on by the Court." (internal quotation marks omitted)).

The Court should hold that neither the burden of searching for nor the burden of processing records is relevant to whether a request "reasonably describes" the records requested. "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). As explained in Plaintiff's opening brief, FOIA's "reasonably describes" provision is exclusively focused on clarity of the request, not its burden. Dkt. 22-1 at 9-12 (Pl.'s Mem.).

In response, Defendants argue that the adverb "reasonably" is "opaque" enough to encompass an "unreasonably burdensome" requirement. Dkt. 29 at 10 n.2 (Defs.' Reply). But that argument ignores the ordinary meaning of the other word in the controlling statutory phrase: "describes." The ordinary meaning of "describe"—"to represent or give an account of in words," Dkt. 22-1 at 10 (Pl.'s Mem.)—makes clear that FOIA's requirement that a request "reasonably

describe" records considers only whether a requester used precise enough language that the reviewing agency is able to understand the records being requested.  Thus, FOIA's requirement for a reasonable description is different than requiring that a description return a "reasonable volume" of records, or requiring that a request impose only a "reasonable burden" on the agency.  No ordinary meaning of "reasonably describes" can encompass such additional requirements.  *See also Yeager*, 678 F.2d at 326 ("[T]he number of records requested appears to be irrelevant to the determination whether they have been 'reasonably described[.]'"); *Shapiro*, 170 F. Supp. 3d at 155 ("FOIA's reasonable-description requirement does not doom requests that precisely describe the records sought, even if compliance might overwhelm an agency's response team.").

Especially in light of the Supreme Court's decision in *Argus Leader*, the Court should adhere to the plain language of FOIA's "reasonably describes" requirement and decline to consider any burdens of searching for or processing records.  *See* 139 S. Ct. at 2364 (abrogating 1970's D.C. Circuit decision that "inappropriately resort[ed] to legislative history before consulting the statute's text and structure," noting that "this Court has repeatedly refused to alter FOIA's plain terms on the strength only of arguments from legislative history").

## II.    CONCLUSION

Relying on arguments that are legally and factually unfounded, Defendants attempt to withhold records that would shed further light on improper surveillance by the FBI with serious First Amendment implications.  The Court should reject Defendants' arguments and order Defendants to process either the narrowed or full scope of Plaintiff's request.

Dated:  August 24, 2022                                    RESPECTFULLY SUBMITTED,

                                                           /s/ *Matthew V. Topic*

                                                           _____

                                                           Attorneys for Plaintiff
                                                           Matthew Topic, D.C. Bar No. IL0037
                                                           Josh Loevy, D.C. Bar No. IL0105
                                                           Merrick Wayne, D.C. Bar No. IL0058
                                                           Shelley Geiszler, D.C. Bar No. IL0087
                                                           LOEVY & LOEVY
                                                           311 North Aberdeen, 3rd Floor
                                                           Chicago, IL 60607
                                                           312-243-5900
                                                           foia@loevy.com