<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2


 3
      CATO INSTITUTE,
 4                                         Civil Action
               Plaintiff,                  No. 1:21-cv-1054
 5
          vs.                              Washington, DC
 6                                         March 16, 2023
      FEDERAL BUREAU OF
 7    INVESTIGATION et al.,
                                           10:19 a.m.
 8             Defendants.
      _____/
 9


10               TRANSCRIPT OF MOTION HEARING
            BEFORE THE HONORABLE RANDOLPH D. MOSS
11               UNITED STATES DISTRICT JUDGE


12

      APPEARANCES:
13
      For the Plaintiff:      JOSHUA LOEVY
14                            Loevy & Loevy
                              311 N Aberdeen Street, 3rd Floor
15                            Chicago, IL 60607


16

      For the Defendants:     ISAAC BERHANE
17                            DOJ-USAO
                              601 D Street, NW
18                            Washington, DC 20001

19

20

21

22

      Court Reporter:         JEFF HOOK
23                            Official Court Reporter
                              U.S. District & Bankruptcy Courts
24                            333 Constitution Avenue, NW
                              Room 4700-C
25                            Washington, DC 20001
</pre>

1                       <u>P R O C E E D I N G S</u>

2          **DEPUTY CLERK:**  We're here on civil case 21-1054,

3    Cato Institute vs. Federal Bureau of Investigation, et al.

4    Would counsel please state their name for the record,

5    starting with plaintiff's counsel.

6          **MR. LOEVY:**  Good morning, Your Honor.  Josh Loevy

7    for plaintiff.

8          **THE COURT:**  Good morning, Mr. Loevy.

9          **MR. BERHANE:**  Good morning, Your Honor.  Assistant

10   U.S. Attorney Isaac Berhane for the defendants.

11         **THE COURT:**  And good morning to you, Mr. Berhane.

12         **MS. VIDOVICH:**  Good morning.  I'm Kristin

13   Vidovich, agency counsel, FBI.

14         **THE COURT:**  Well, thank you for being here as

15   well.  So we're here for argument on the parties'

16   cross-motions for summary judgment relating to the question

17   of whether the FOIA request at issue here reasonably

18   describes the documents requested.  I'm happy to hear

19   argument from the parties in light of where we stand.  So

20   why don't I go ahead and start with Mr. Berhane since it's

21   your motion first.

22         **MR. BERHANE:**  Thank you, Your Honor.  It's the

23   position of the defendants that the FOIA requests issued by

24   plaintiff do not reasonably describe the records that were

25   requested.  I think the main point here -- at least I'll

1  state this as an initial matter, and the main point of

2  disagreement between defendants and plaintiff was that --

3  and you can see this in the briefing, is that we understand

4  the term "reasonably described" to be tethered to the burden

5  that's imposed on the agency that's being asked to produce

6  responsive records.

7       We've produced two declarations in this case which

8  are extensive and detailed.  But ultimately they do

9  demonstrate that the burden that would be placed

10  specifically on the FBI defendant to produce the responsive

11  records that plaintiff is asking for would just be -- would

12  actually just impose a crushing -- an absolutely crushing

13  burden on the defendant.  Plaintiff is arguing, as far as --

14  and I don't want to misrepresent their argument, but as far

15  as I understand their brief, that the term "reasonably

16  described" should be almost construed in a very -- I think

17  they even cite the dictionary definitions of reasonable and

18  describe, and say that that's how the Court should construe

19  the terms.

20       **THE COURT:**  I have to say, I usually don't hear

21  arguments from parties saying oh, my gosh, the other side is

22  actually giving the words in the statute the meaning that

23  they're given in the dictionary.  That's usually not

24  something I hear.  I usually hear yes, you're required to

25  give the words of the statute their meaning, and one place

1      to start is in the statute.

2          MR. BERHANE:  Yeah, and that's conceivably the

3      case.  But the statutes are also interpreted by case -- and

4      we have case law understandings.  And it's the position of

5      the defendants that "reasonably described" has always

6      been -- that's an analysis that has to be understood in the

7      light of the burden that's imposed on the defendants to

8      produce the responsive records.

9          THE COURT:  Well, can I ask -- pause you just for

10     a second there, because I'm kind of wondering if that's

11     where there's a disconnect here.  I have certainly seen --

12     we've probably all seen FOIA cases that require the

13     government to engage in the production of tens, if not

14     hundreds of thousands, of pages of records over a period of

15     years.  I think I have one FOIA case where it's probably

16     close to a decade of production by the government.

17          And if the rule is just you're asking for too many

18     documents or too much, that is a pretty hard rule for a

19     judge to administer, and it's pretty hard to tether to the

20     statutory language, to do that.  And how am I supposed to

21     decide when someone is asking for records from the FDA

22     regarding the approval of an animal pharmaceutical product,

23     and there are tens of thousands, if not hundreds of

24     thousands, of pages and you say, well, that's too much.  And

25     then there's a case in which someone from the Department of

1    Commerce is seeking records relating to the census, and

2    that's 15,000 or 20,000, and you say, well, that's okay.

3    That seems completely arbitrary for a judge to draw a line

4    and say, well, it's just too many documents you're seeking

5    or it's too expensive.

6        I think that the better way perhaps to understand

7    the case law that you point to is that the request has to

8    reasonably describe the records.  And the "reasonable" does

9    turn in part on burden.  So if I were to serve a FOIA

10   request on the FBI saying I would like every record in the

11   files of the FBI that misspells the word judgment; if there

12   are two Es in judgment, I want that document.  And the only

13   way that someone could find those documents is to search

14   every single piece of paper in the possession of the FBI.  I

15   wouldn't have any problem saying that that request does not

16   reasonably describe the records, because it would be an

17   enormous burden for the agency to try and find those

18   records.

19       But here, if the request actually -- accurately

20   describes the records and says I'm requesting every form

21   G-37-4 that was completed in 1993 and submitted to the

22   Department of Housing and Urban Development, it's not

23   terribly hard to figure out what those forms are.  And

24   perhaps if the forms are located in offices all around the

25   country and they're not maintained in a single filing

1    system, maybe they can argue that it doesn't reasonably

2    describe them because you don't know where to go to look for

3    them, and you would have to look at every file.  But assume

4    there's actually a warehouse in which the Department of

5    Housing and Urban Development maintains the record that I'm

6    hypothesizing, the G-37-4 form, and there are just boxes

7    after boxes of those things in this warehouse.  It's hard to

8    say that they haven't reasonably described what they're

9    seeking, even though it's an enormous burden to actually

10   dust those documents off and produce them.

11         So maybe -- you know, I guess I'm curious as to

12   whether you think that that's the right way to draw the line

13   between a request that actually tells you where the

14   documents are and what you're looking for -- which is okay,

15   even if it's a lot, versus a document that requires an

16   enormous burden to even find which document they're talking

17   about.  That only seems tethered to the text.

18         MR. BERHANE:  Understood, Your Honor.  I think if

19   you'll allow me, we have a case here that I believe was

20   decided in this district after the party to this instant

21   matter decided -- or completed their briefing, which I

22   think -- so I'm looking at Center for Immigration Studies

23   vs. US Citizenship and Immigration Services, docket number

24   22-0117.  Here, the Court did an analysis of what is

25   understood to be -- of what "reasonably describes" consists

1    of.  And one of the -- ultimately, the Court decided that

2    the plaintiff's FOIA requests were not reasonably described

3    in that case.  And one of the rationales for that ruling was

4    the fact that it was simply overly burdensome for defendant

5    to comply with the FOIA request.

6         The Court cites -- and I can read -- it cites a

7    circuit court opinion which we cited in our briefs actually,

8    American Federation of Government Employees vs. Department

9    of Commerce.  Here, back to the district court case, it

10    says:  "The circuit held that the requests imposed an

11    unreasonable burden on the agency despite describing

12    documents requested with sufficient precision to enable the

13    agency to identify them.  Despite this precision, the

14    requests required the agency to locate, review, redact,

15    arrange and arrange for inspection of a vast quantity of

16    material."

17         When faced with such an effort, the circuit

18    thought it clear that the requests imposed an unreasonable

19    burden.  And applying that case to the -- the circuit court

20    case to the district court case, the district decided that,

21    yes, in that case, the plaintiff's FOIA requests were not

22    reasonably described because of the exorbitant burden that

23    was imposed upon the defendant.

24         THE COURT:  The exorbitant burden in what, though,

25    in finding the documents or in producing them?

1          **MR. BERHANE:**  In completing -- in our declarations

2     we have a -- we've kind of described the FBI's protocol for

3     kind of preparing responsive records for production in FOIA

4     matters.  We're saying our argument is that even if it's

5     conceivably the case that the plaintiff has identified --

6     excuse me, I'm sorry.

7          **THE COURT:**  No, go ahead.

8          **MR. BERHANE:**  Even if the plaintiff has identified

9     adequately the documents that they want to obtain, we're

10    saying that in order to get -- actually retrieve those

11    documents, review them, make the applicable withholdings and

12    actually produce them to the plaintiff would just be such an

13    overly burdensome task that the FBI cannot realistically be

14    required to comply with such a FOIA request.

15         **THE COURT:**  So why isn't -- as a textual matter,

16    why isn't the -- let me back up for a second.

17         I understand your concern, and I understand how

18    you could have some FOIA requester out there who could

19    completely destroy the process and render it so no one else

20    ever gets a response to their FOIA request, because they

21    impose requests that are so burdensome that all your FOIA

22    officers and employees are working on the request for the

23    next 10 years and have no time to do anything else.  I

24    understand the practical concerns that you're raising.

25         I can imagine a circumstance in which someone

1    could reasonably describe and say I want every document the

2    FBI has, and that reasonably describes it.  But as a textual

3    matter, it does seem that that reasonably describes the

4    documents.  The question is practically how do you police

5    that.  I'm kind of wondering whether the better way to

6    police this, as a textual matter, is to say that if the

7    plaintiff -- if you have a plaintiff who asks for every FBI

8    document, they can pay for it.  If it costs a hundred

9    million dollars, they pay the hundred million dollars.

10            The statute does have an exemption.  It says

11    you're not required to pay if the disclosure of information

12    is in the public interest because it is likely to contribute

13    significantly to public understanding of the operation or

14    activity of the government.  If something is so overbroad,

15    it may be that the vast majority of what is being sought is

16    not going to satisfy that standard.  And you can start

17    producing it, it's up to the government to produce them in

18    whatever order you want.  And you know what, you're going to

19    get your documents over the next 63 years.  We're going to

20    assign somebody to it, and it's going to cost you a hundred

21    million dollars to get them.  And we're starting with the

22    scraps of paper that are worthless, and we're going to

23    produce them to you, and you can do with it what you want.

24    You can wait years and years to get it, and you can pay

25    millions and millions of dollars if you want a request that

1    is that absurd in nature.  And I don't know whether this is

2    an example of that or not.  Maybe it is.

3           And maybe the answer is if it's going to cost 31

4    and a half million dollars to review and produce such a vast

5    quantity of documents here -- it's hard to believe that the

6    entirety or even a substantial portion of it is likely to

7    contribute significantly to the public understanding of the

8    operation of the FBI under those circumstances, and the

9    plaintiff can pay.  Why isn't that the right answer, as a

10   textual matter at least?  It seems to me it's a lot more

11   consistent with what the text of the statute says, to draw

12   the line that way if there needs to be a way to police

13   overly burdensome requests.

14          **MR. BERHANE:**  Your Honor, that would -- in all

15   candor, that would sound like an equitable resolution in a

16   case like this.  But I would also -- it's not just that

17   it's -- it would cost -- I mean, the estimate that the FBI's

18   provided is that it would cost $31,000,000 or thereabouts to

19   comply with plaintiff's FOIA request as initially provided

20   to the FBI.  But it's also -- we have a declarant who is

21   estimating I think it would be about 1,867 years to

22   produce -- to review, redact, inspect and finally produce

23   these documents.

24          I just wonder when that -- all right, you could

25   say -- plaintiff will undoubtedly say that this is sort

1    of -- this is an estimate without a foundation.  But let's

2    say that it was even half of that or a quarter of that.  I

3    just wonder what purpose is actually being served here.  The

4    plaintiff has already conceded, even in the substance of

5    his -- in their motion and their opposition briefs, they're

6    putting forward the proposition that even if what the

7    declarant says is true, that should not matter for this;

8    that it just does not matter to grant a FOIA request that

9    would take --

10        THE COURT:  I suppose that's the choice that they

11    make, and they can't control what order you produce them in.

12    If they want to serve a vastly overbroad FOIA request on

13    you, and it's going to take a hundred years to respond to

14    it, they don't have control over which ones you produce

15    first.  They may well have to pay for it.  They're not going

16    to necessarily get what they want in a timely fashion, and

17    there's not an incentive to file FOIA requests of that

18    nature because -- I mean, I'll order 200 records be reviewed

19    and released, to the extent they're not exempt, per month.

20    And if it takes 100 or 200 years to do it because of what

21    they're asking, that's their tough luck, they should have

22    served a better FOIA request or a narrower one.  Or they can

23    withdraw this one and file one that is more targeted if they

24    don't want to wait 100 or 200 years to get what's

25    responsive.

1          Why isn't that -- I mean, they have every

2     incentive in the world not to do that.  Why isn't that a

3     sufficient means to police this?

4          MR. BERHANE:  Your Honor, I'd have to defer to the

5     case law that I've reviewed for this matter.  I'm not sure

6     that that's -- I don't know of any precedent for that.

7          THE COURT:  Well, there's certainly precedent

8     for -- not for the 100 or 200 years, but there's certainly

9     precedent for people who serve extremely expansive FOIA

10    requests, that they have to wait many, many years to get

11    their responses because it takes that long.  That certainly

12    happens all the time.  The problem I have with your position

13    is not that -- I think it's a sensible position, I'm just

14    concerned it's not the statute that Congress wrote.  It's a

15    stretch to my mind to read the language that says

16    "reasonably describes such records" to mean you describe

17    with precision exactly what records you want, but there's

18    just a heck of a lot of them.  That's a really hard reading

19    of that statute, to read it to say that.

20          MR. BERHANE:  Well, but, Your Honor, there is

21    also -- I would cite -- I've pulled another case here.  The

22    facts are not entirely 100 percent on point to our facts

23    here.  I'm looking at New Orleans Workers' Center for Racial

24    Justice -- let's see here.  Excuse me, let me pull this.

25    Again, this is another ICE case, versus the United States

1   Immigration and Customs Enforcement.  This is docket 15-431.

2   Ultimately, that case was decided against ICE.

3       So what essentially happened there is plaintiff

4   and the court agreed with defendant's position, that

5   plaintiff's FOIA requests were overly broad in the sense --

6   at least in part of being, like here, exorbitant, too many

7   records.  The court still -- at least according to the

8   decision, ICE never actually reached out to plaintiff to

9   kind of negotiate a sort of a more narrow FOIA request, to

10  kind of narrow the FOIA requests that were at issue in that

11  case.

12      I think that that would be ideally one way to

13  police these issues.  It would be -- you'd give the

14  defendant agency an overly broad FOIA request, and they

15  tell -- they respond stating essentially their objections to

16  it, it's overly broad or whatever the problems may be with

17  the FOIA request.  And then during the process of

18  negotiation, in good faith obviously, the parties would come

19  to a more sensible and a narrower FOIA request that the

20  agency would respond to.

21      In this particular case -- and there is of

22  course some -- there was -- and I guess we might address

23  this a little bit later on.  But in this case, the FBI was

24  very proactive in indicating their problems with plaintiff's

25  FOIA request.  We did invite the plaintiff on numerous

1    occasions to narrow their FOIA requests.  There was some

2    back and forth on this issue.  And then on the final status

3    report that we issued -- we filed with this Court prior to

4    proceeding to the briefing, we were at an impasse.  That's

5    what the status report says.  The plaintiff did not --

6    wanted to proceed straight to briefing on the original FOIA

7    request.  They didn't accede to the FBI's request to make a

8    narrower request.

9         So I would think -- I suppose if Your Honor's so

10   inclined to make the FBI comply, but then make plaintiff pay

11   for it and accept the fact that it's going to take however

12   many decades or centuries even or millennia to get their

13   documents, I suppose that's one way.  But I would say that

14   another way is to just have these -- have the parties

15   involved in a FOIA suit narrow the proposals through

16   negotiation.  But in this case, plaintiff never acceded to

17   that.

18        **THE COURT:**  I was going to ask you why is it that

19   that's then important here?  Because both parties seem to be

20   saying to me we tried to negotiate something and the other

21   side didn't.

22        **MR. BERHANE:**  Well, I think one of the issues in

23   this -- in our briefs here is that I guess plaintiff is

24   putting forward the -- well, another issue, too, with

25   plaintiff's -- and this is indicated in our -- at least in

1    our second declaration, is that the allegedly narrower -- or

2    more narrow FOIA request that plaintiff has offered still, I

3    mean, would be so burdensome -- just for the same reasons

4    that we indicated for the initial FOIA requests, would just

5    be so burdensome that it would not even be practicable for

6    the FBI to comply with them.  Which this brings us back to

7    our initial problem that we started today off addressing.

8         THE COURT:  Why not just take it in steps, and

9    pick one year and one type of assessment where the cases are

10   closed or something along those lines, and just do that and

11   see if that addresses the concerns.  And if they want more,

12   then they come back and maybe you see where you go from

13   there.  But just take it in bite sizes.

14        MR. BERHANE:  Well, I guess our defendants -- and

15   especially the FBI's position on that, is the plaintiff is

16   always free to make another FOIA request if they're so

17   inclined.  But that's not what was --

18        THE COURT:  That's true, but I'm also free to say

19   I disagree with your view on what "reasonably described"

20   means here, and just start producing the documents I suppose

21   in which case you then just have to either do it or

22   negotiate something that's more sensible.

23        So why don't I get Mr. Loevy to weigh in at this

24   point, I'm curious as to what he thinks about all this.

25        MR. LOEVY:  Sure, I'm happy to Your Honor.  Thank

1    you.  So I guess as an initial matter, what the FBI is

2    trying to do here is, for my money, the most extreme thing

3    that an agency can do under FOIA, which is not respond to a

4    request in any substantive way, right.  Like, to say your

5    request doesn't reasonably describe these records to the

6    point where we did not need to process it is just about the

7    most extreme thing you can do.  And for the reasons Your

8    Honor has kind of already identified, our view is that that

9    is just not the proper textual reading of the statute.  To

10   include any possible burden an agency might go through in

11   processing a request is not really what's contemplated by

12   the "reasonably described" language in the statute.

13           **THE COURT:**  Although the government does cite some

14   fairly sweeping D.C. Circuit language for that proposition.

15           **MR. LOEVY:**  Sure, Your Honor.  I think what

16   distinguishes what the cases that defendant has cited is

17   that those cases involved more comprehensive searches that

18   were actually required.  So really what we're discussing

19   here is what is entailed in a search.  I think for the

20   FBI -- from the FBI's perspective, a search doesn't end when

21   you basically run whatever term -- you know, let's use

22   Google as an example.  From the FBI's perspective, I'm

23   assuming their position is that a search does not end when

24   you type in the search terms.  Excuse me, my voice has been

25   going on me all week, so I apologize for that in advance.

1          So from plaintiff's perspective, a search entails

2     locating the records and identifying them, and that's it.

3     That's when the search is over.  The other steps that the

4     FBI has identified -- vetting the records, processing the

5     records, choosing whether or not in their discretion to

6     apply redactions that they think they have a reasonable

7     basis to apply, those are not part of the search process and

8     are not encompassed by the "reasonably described" standard

9     in the statute.

10         **THE COURT:**  Mr. Loevy, have you gone back and

11    looked at the D.C. Circuit cases; and can you tell me that

12    each time the D.C. Circuit sees that fairly sweeping

13    language about burden, that a fair reading of those cases is

14    they're talking about the burden of the search versus the

15    burden of the production or review?

16         **MR. LOEVY:**  Your Honor, I know I've done that.  I

17    can't go through it cite by cite right now, I'm just not in

18    a position to do that.  What I can tell you is that from my

19    review of those records, they seemed to generally be

20    referring to what I've kind of in my own head been calling

21    like needle in a haystack searches.  I think the example you

22    used earlier, Your Honor, was kind of on point.  If a

23    requester comes in and says every time the FBI has used two

24    Es in the word judgment -- which is something I'm

25    unfortunately guilty of a lot, but if that's the request,

1    the search process there is going to be more involved.

2    Because it's not just something you can -- you might have to

3    go into all manner of different systems and all paper files

4    in different offices.  The burden of the search there

5    requires kind of more of searching for sort of a needle in a

6    haystack again.

7         But that's not really the case we have here.

8    Here, they've identified how many assessments would be

9    responsive to plaintiff's request.  In terms of the initial

10   process of identifying the universe of responsive records,

11   that work is already done.  Now, what's done with those

12   records is kind of what the parties are really disagreeing

13   about.  How we get those initial hits transformed into

14   producible records, that seems to be the biggest area of

15   disagreement.  We say that that part is not contemplated by

16   the "reasonably described" language, and still maintain --

17   the FBI maintains their position that it is.

18        **THE COURT:**  What do you say -- and I'll just have

19   to look at those cases to see whether I can distinguish them

20   along the lines you're suggesting or not from the D.C.

21   Circuit.  But I'm most concerned about what my colleagues

22   have said on the issue, because I'm bound by the D.C.

23   Circuit and I'm bound by Congress.

24        But as a practical matter, what is the practical

25   solution?  Is it the one that the requester should pay the

1    fees in my example or just wait an eternity?  It can't be

2    the case, just as a practical matter, that people can just

3    destroy the entire system by simply serving a FOIA request

4    saying I would like all records that the FBI has; and quite

5    frankly, it will be very interesting, it will shed a lot of

6    light on what the FBI does; and it's not going to be

7    terribly hard to figure out what I'm asking for, I want

8    every single record the FBI has.

9         **MR. LOEVY:**  Sure, I do --

10        **THE COURT:**  There has to be some governor on that.

11        **MR. LOEVY:**  Of course.  And first, I just want to

12   make clear, our position is that plaintiff's request is

13   not -- does not fall into the same kind of category as I

14   want all records, period.  We do believe there's a

15   significant public interest in these specific records that

16   plaintiff requested.  As we mention in our briefing, we're

17   talking about assessments of groups that the FBI conducted

18   that their own Inspector General has already determined

19   were -- potentially there was misconduct involved, and

20   serious, serious issues that -- you know, I know there's

21   been congressional investigations that are kind of underway,

22   and I believe were launched by another one of this

23   requester's requests in another matter on the specific topic

24   of assessment.

25             So I would argue, first of all, that plaintiff's

1    request is of substantial public interest.  Understanding

2    what groups and how the FBI used the assessment process is

3    of the highest public interest.  But to address more

4    specifically what Your Honor asked, I think the governor

5    here is that we have to -- we should assume that requesters

6    are acting in good faith.  So, for example, in this

7    instance --

8            **THE COURT:**  But that's not always true.  I mean,

9    your client may be doing so here, but it's just not always

10    true.  I have no doubt, in the hundreds of millions of

11    Americans out there, that there is somebody who would just

12    really like to stick it to the FBI and say give me every

13    document you have, and have teams of FBI employees spending

14    the next 20 years going through the documents.  And if they

15    can do that at no charge, boy, why not.  I almost hate to

16    say that in an open hearing like this because it will give

17    someone the idea.  But there are people out there who want

18    to bog the government down, there's no doubt about that.

19            **MR. LOEVY:**  Sure, I think that's absolutely true.

20    A couple things to that.  One, it's very common, as Your

21    Honor is well aware, that processing limits are set, monthly

22    processing rates, to try to, at least on a month-to-month

23    basis, control the amount of records that a particular

24    agency is reviewing.  But I would also argue that that is a

25    matter that Congress could potentially address, and maybe

1    should address, how to properly handle that.  And, again, as

2    Your Honor suggested, if a requester is making a request

3    that has absolutely no public interest -- for example, they

4    want to know every document the FBI's prepared that has a

5    typo in it, it will be very difficult to identify a

6    significant public interest in those records.

7         **THE COURT:**  Right, but there probably is a public

8    interest in what the FBI's doing.  Then fine, not every

9    document from the FBI, I just want every investigative

10   document from the FBI.

11        **MR. LOEVY:**  Well, again --

12        **THE COURT:**  There's a public interest in that.  It

13   may be there has to be some weighing as to whether the

14   request is -- outweighs the cost at some level because it's

15   just so expansive.  You know, I'd be really curious to see

16   every investigative file from the FBI, and if you went

17   through them all, you probably would find some pretty

18   interesting things.

19        **MR. LOEVY:**  Sure.  I think at that stage, the

20   requester would still have to show how -- they'd have to

21   make the showing of how that sheds light on what the

22   government is up to, right.  That's like the phrase we often

23   come back to in these cases, which is FOIA enables citizens

24   to make requests to find out what their government is up to.

25   It has to kind of add something to the public understanding

1    of how an agency works.  So you have to be able to

2    articulate that in a pretty concrete way if you're going --

3            **THE COURT:**  I'm a professor of criminology, I

4    study this stuff and I want to find out from all their

5    investigative files whether they're focusing on people of

6    particular races, religions, political beliefs.  I want to

7    figure out how they're spending their money; whether they're

8    spending it in ways that are consistent with what they're

9    telling Congress as to what their objectives are; whether

10   they're spending it in ways that are lies and where they're

11   getting their bang for their buck; whether they're using

12   excessive investigative tools that are more intrusive than

13   necessary given the nature of the alleged crime that

14   occurred; I want to know how much oversight is taking place

15   by senior FBI officials of everything they're doing; and

16   what I'd like to do is I would like to create the Randolph

17   Moss Institute for Criminal Justice Studies, and what better

18   resource could you have than all the records of the FBI for

19   the past 27 years of investigative files.  We're going to

20   put them there, we're going to invite researchers in, we're

21   going to have conferences.  It's completely in the public

22   interest.  I mean, there's a huge significant interest in

23   doing this.  We're going to open the doors up to the FBI and

24   find out what's really been going on there.

25           **MR. LOEVY:**  Sure, and I'm glad you're bringing

1    this point up, Your Honor, because it's what I started to

2    say earlier.  So there's a distinction between the bad faith

3    actor, the person who's looking to just clog the system,

4    cause anarchy, do everything they can to just make chaos,

5    and a good faith actor who has an actual objective for their

6    request.  And here's the limiter, and I think this is what's

7    particularly operative in this case.  Plaintiff, the

8    requester here, is an academic who does writing and writes

9    books about the history of law enforcement surveillance on

10   the public and the potential civil liberty abuses of law

11   enforcement, right.

12            Here's the big restrictor:  He wants records he

13   can use in that writing.  So if he's getting a record in a

14   hundred years, that does absolutely nothing for him.  But

15   when we have this fundamental disagreement about whether or

16   not the agency needs to start processing records, it makes

17   it very difficult to go through a negotiation process that

18   will ultimately result in something more manageable.

19   Because that's something we do all the time, is negotiate

20   down the scope until it eventually gets to a more manageable

21   place.

22            **THE COURT:**  So why hasn't that worked here?

23            **MR. LOEVY:**  I think there's a fundamental

24   disagreement on whether or not the FBI has to start.  I

25   think they're coming to this with the premise that unless

1    plaintiff hits whatever sweet spot they have for burden in

2    their mind, they're just not going to go.  That was kind of

3    what led to this initial impasse.  Your Honor, I was

4    involved in those negotiations, and they were extensive.

5    They included a lot of back and forth about possible

6    solutions to try to narrow the request, whether it be

7    getting lists of assessments without processing the entirety

8    of a file; whether it was getting specific documents that

9    are -- you know, let's say an assessment consists of 15

10    different documents.  Maybe there's -- I think we had

11    initially asked if there was some sort of title or cover

12    page that we could at least, as an initial matter, see.

13         The problem was we never received any copies of

14    assessments to work from, so there was a lot of information

15    asymmetry.  We just didn't have enough to make a more

16    informed proposal.  But we did certainly make extensive

17    efforts, and would have continued to do so as we do in all

18    of our other cases, once requests are coming in, once we're

19    looking at records and saying, hey, 90 percent of this is

20    just not what I need.  That is something we very frequently

21    will come back to an agency and say:  We only need X, Y and

22    Z from this file.

23         But because the parties had this disagreement

24    about whether or not the FBI would even start, I think those

25    negotiations were sort of hobbled from the beginning.  And

1  that's why eventually we said we need to get this issue of

2  whether or not plaintiff's requests reasonably describes

3  records for purposes of FOIA, we need to get this figured

4  out.  I think it's always been our understanding that even

5  were Your Honor to come through today and grant our motion

6  for summary judgment across the board -- FBI, you have to go

7  process and spend however many years doing it, I just --

8  there is no world in which I don't think plaintiff would

9  still make an effort to narrow that request, because he

10  wants these records to use in his work.

11      THE COURT:  Let me go back to Mr. Berhane.  Why

12  isn't that the sensible approach here, to sit down and try

13  and work out something that is manageable for everyone

14  involved?

15      MR. BERHANE:  So, Your Honor, there was -- so

16  listening in, I noted two issues that were just addressed

17  here.  When assessing this "reasonably describes"

18  requirement, whether courts will consider it a burden from

19  the point of view of the literal search or from the burden

20  of production which includes the search and withholdings.

21  The case that I cited initially -- well, I cited a district

22  court decision, but it was citing a circuit court decision,

23  American Federation of Government Employees vs. the

24  Department of Commerce.  In that case -- and there are

25  others, but in that case, it was actually noted that the

1    burden in that case included the -- all right, so the burden

2    in that case was identified as the burden involved in

3    locating, reviewing, redacting and arranging for inspection

4    of a vast quantity of materials.

5            So there the court is noting that the plaintiff's

6    FOIA request was unreasonable -- was not reasonably

7    described, because the burden of production on the agency

8    would have just been too exorbitant in terms of locating,

9    reviewing, redacting and arranging.

10            To address the second point that plaintiff made

11    regarding the good faith --

12        **THE COURT:**  I'm sorry, Mr. Berhane, just to cut

13    you off, I wasn't really asking for your rebuttal argument

14    yet.  You're welcome to make it at some point.  I was really

15    asking the specific question of why isn't the answer here

16    for the parties just to sit down and work out something that

17    is sensible?

18        **MR. BERHANE:**  Your Honor, I understand, and I was

19    going to get to that.  The issue with that is the FBI has

20    actually offered certain limiting proposals to plaintiff.

21    For example, I believe on August -- I'm reading here

22    actually from plaintiff's declaration.  On September 10th,

23    2021 -- no, excuse me, on September 3rd, 2021, plaintiff

24    rejected a randomized sampling approach that the FBI

25    offered, which would have produced responsive documents to

1    plaintiff.  And as plaintiff notes, the initial requester,

2    as described by plaintiff, just wants documents that the

3    requester can utilize in their writing on various law

4    enforcement criminological issues.

5            I don't understand personally, I'm as perplexed as

6    you are, Your Honor, as to why the documents that would have

7    been produced in a randomized sampling approach would have

8    been inadequate or insufficient or not consistent with what

9    plaintiff was looking for.

10           **THE COURT:**  I've never done this in a FOIA case

11   before, but perhaps I should refer this case to a magistrate

12   judge to assist with settlement discussions in the nature of

13   just helping to narrow the requests in a way that's sensible

14   since the parties are just not able to do it on their own.

15   What do you think of that?

16           **MR. LOEVY:**  You know, I'm open to that

17   possibility, Your Honor.  Again, at the end of the day, what

18   we want is records.  I think what the biggest impediment has

19   been, at least from our perspective, is this sort of looming

20   idea that if we don't come to an agreement, the FBI is just

21   not going to produce anything.  So if we can --

22           **THE COURT:**  Well, I think, and I hope, that

23   Mr. Berhane has heard me today in that -- I mean, I'll go

24   back and look at the cases.  But I find it really hard to

25   understand how the language in the statute can be read to

1    say that -- where documents are described, the records are

2    described precisely and in a manner in which they can be

3    readily located or identified, and that the burden is the

4    burden of reviewing and producing those documents, I find it

5    hard to understand how that scenario is captured by the

6    "reasonably described" requirement.

7         It seems to me that the natural, and almost

8    inescapable, reading of "reasonably described" is have the

9    documents or records been described in a manner in which

10   they could be located without undue burden; not that they

11   can then be reviewed without undue burden.  For what it's

12   worth, I need to go read the D.C. Circuit cases and make

13   sure that in holding that way, I would not be acting in a

14   manner that's contrary to the direction from the D.C.

15   Circuit.

16        But as a judge just reading the statute, I

17   understand the practical concerns Mr. Berhane raises.  But

18   it's -- I think it's very hard to address the concerns

19   relating to the burden of review and production under the

20   "reasonably describes" text.  There may be other ways to get

21   at it, but that strikes me as difficult.  So I don't know if

22   that helps in dislodging any difficulty the parties are

23   having in negotiating.

24        Maybe, Mr. Berhane, this would be an opportunity

25   for -- the first opportunity for a court to really directly

1    take on that question.  I can't tell you for certain how I

2    would come out directly taking on that question without

3    having gone back to reread the D.C. Circuit cases on this,

4    and I suppose some of the legislative history as well.  But

5    I'm dubitante at this point.

6         So I have in front of me the American Federation

7    case.  Do you want to give me a pincite for that,

8    Mr. Berhane?

9         **MR. BERHANE:**  907 F.2d 203.

10        **THE COURT:**  No, the pincite.  I have the case in

11   front of me, I just want to know which paragraph you're --

12   page you're relying on.

13        **MR. BERHANE:**  Well, I have it cited here as page

14   205.

15        **THE COURT:**  I don't think that's right.  205 is in

16   the background section, so if it is, it's not the holding.

17   Page 206, which is still in the background section:

18   "Department maintains that the request did not reasonably

19   describe the documents that the union was seeking."  So here

20   is page 209 -- 208 to 209:

21        "Requests 3A and 3B.  Request 3A would

22        require the Bureau to locate every chronological

23        office file and correspondent file, internal and

24        external, for every branch office, staff office,

25        et cetera.  Request 3B is similarly broad.  As

1    such, neither request reasonably describes a class

2    of documents subject to disclosure, as required by

3    5 U.S.C. section 552(a)(3)(A).  An agency need not

4    honor a request that requires an unreasonably

5    burdensome search," citing Goland.  "While

6    requests 3A and 3B might identify the documents

7    requested with sufficient precision to enable the

8    agency to identify them -- we do not think that is

9    in dispute here -- it is clear that these requests

10   are so broad as to impose an unreasonable burden

11   upon the agency.  They would require the agency to

12   locate, review, redact, and arrange for inspection

13   a vast quantity of material.  The unreasonableness

14   of the attendant burden is only more obvious when

15   one realizes that it is largely unnecessary to the

16   appellants' purpose; Request 3A is in no way tied

17   to their express concern with promotion-related

18   materials, and Request 3B entails inspection of

19   the entirety of every file.  For this reason we

20   affirm the district court's decision that the

21   Bureau need not comply with those requests."

22        So I'd have to go back and look and see what the

23   requests were actually in that case.  But I suppose that

24   that language poses some risk to both sides on this

25   question.  I'll have to think hard about that.  So I guess

1    my question for you all right now is -- and I think this is
2    obviously an important question.  But ultimately, the goal
3    here ought to be to have a request that the FBI can manage,
4    and that gets the plaintiff the records that are reasonably
5    necessary and useful to the plaintiff.  So what I'd like to
6    do, I think, is to send you both back to -- with your
7    clients to look at this pretty realistically, realizing I
8    think there may be risks both as a matter of law and this
9    particular case for both sides on this.  And I realize that
10   obviously the FBI has institutional interests here, and the
11   plaintiff in this case is somewhat of an institutional FOIA
12   requester as well and has institutional interests here as
13   well.  But I'd like to send you back to see if you can work
14   it out in this case.

15           I'm happy to appoint a magistrate judge to do that
16   if you think that would be helpful, or if you have some
17   other suggestion on how I could help you get to that point.
18   I probably shouldn't act as the mediator myself since I'm
19   going to have to resolve the case one way or the other at
20   some point.

21           Mr. Loevy, what is your suggestion?

22           **MR. LOEVY:**  Your Honor, I think I'd like a chance
23   just to chat with my client about the ideas of a mediator.
24   I think that's interesting.  It's something that I think my
25   firm has handled once or twice in the FOIA context.  But the

1    thing I think that would be most valuable at this point,

2    too, would be to involve the principals.  Hearing counsel

3    speak about what would be the value to plaintiff or would

4    there be value to plaintiff in a randomized sample, I think

5    those are questions that plaintiff himself is in a better

6    position to answer.  He's the one doing the research and can

7    articulate it probably more clearly than I could.  And

8    likewise, I think the FBI is in a better position.  They

9    know what their system is, what their file layouts are, and

10   are probably in a better position to answer those questions.

11   So I think any kind of conversation that involves the

12   principals would be, I think, really beneficial.

13          THE COURT:  Mr. Berhane, what do you think about

14   that?

15          MR. BERHANE:  Your Honor, I'm sorry, you might

16   have heard some noise before.  My internet kind of cut me

17   out, so I might not have caught everything.  But yeah, I

18   think that I would be -- I'm newly entered on this matter.

19   I don't believe that I've worked with counsel on opposing

20   side before.  I think we can -- I would like to consult with

21   the principal -- with defendants.  And yeah, I think that

22   there's -- perhaps if we can resolve this through fresh

23   negotiations, I think that could be -- that can be a

24   positive outcome.

25          THE COURT:  I do think this -- I think it would be

1    ideal to see if we can move this case forward.  I do think

2    involving principals may be the best way to do that.  So

3    what I'd like to do is go ahead and stay the case while you

4    engage in some further negotiations.  I'll let you confer

5    amongst yourselves about how you want to do that.  If you

6    would like me to either appoint one of our magistrate judges

7    to assist with that or to refer the matter to the Circuit

8    Mediation Program to get someone involved, or if you have

9    some other suggestion of what I can do to facilitate those

10   discussions, I would be very open to that.

11        You know, in some sense, this isn't terribly

12   different from a lot of FOIA cases, but it's just gone off

13   the rails early on unfortunately.  But as Mr. Loevy says,

14   it's not uncommon for the parties to be fairly far apart

15   with respect to the burdensomeness of the request.  And that

16   there's a negotiation that takes place in which the request

17   is more narrowly tailored, which I think would be the best

18   solution here if we can get there.  And if you can't, then

19   I'll just go ahead and issue an opinion addressing the

20   motions.

21        I suppose, based on the argument that I've heard

22   here, to my mind the issue comes down to what I think is

23   probably the best reading of the statute, but whether I'm

24   bound by D.C. Circuit authority to the contrary.  I'll have

25   to look at that more carefully.  I don't think it's a

1  terribly expansive question, it's not going to involve

2  frankly a lot of work for the Court because there only are a

3  handful of cases involved in that.  I'd rather the parties

4  reach some resolution on their own, if possible.  Because I

5  also think that once I issue that opinion -- and I'm not

6  telling you which way it's going to go, because I don't know

7  for sure which way it's going to come out.  But once I issue

8  that, I think it's going to become harder for you, rather

9  than easier for you, to resolve things.

10        Anything else, Mr. Loevy, you want to raise?

11        **MR. LOEVY:**  No, Your Honor.  So in terms -- well,

12  I guess yes then.  In terms of the stay, would you want a

13  status report from the parties in some length of time or how

14  should we proceed from here?

15        **THE COURT:**  I would like that.  How much time

16  would you like?  We could do one relatively soon in which

17  you can just tell me what process you at least propose.  And

18  also, I understand your client's been waiting for this for a

19  while and you don't want this to drag out, too.  So why

20  don't we set something in maybe a couple of weeks that's

21  just telling me what your process is going to be.  And then

22  in that status report, you can let me know when you want to

23  get back to me and update me on the progress that you've

24  made.

25        **MR. LOEVY:**  Yeah, I think that makes sense for us,

1    Your Honor, maybe like two weeks.  So what is that, like the

2    30th.

3              THE COURT:  Mr. Berhane, does that work for you as

4    well?

5              MR. BERHANE:  I have a couple of dispositive

6    motions I have to file that week.  If we could push it to

7    the following week.

8              MR. LOEVY:  That's fine with me, too.

9              THE COURT:  April 7th, does that work?

10             MR. LOEVY:  That's fine.

11             MR. BERHANE:  Yes.

12             THE COURT:  So I'm going to stay the case while

13    the parties discuss a potential resolution and require a

14    joint status report on the 7th of April.  I'm going to

15    direct that in that status report, you let me know what

16    process you've adopted, and whether you want the Court to

17    request that either one of our magistrate judges or someone

18    from the Circuit Mediation Program get involved -- or if

19    there's any other way that the Court can help facilitate the

20    review.

21             One thing that I've done in some other cases --

22    which probably is not super helpful here, is if you want me

23    to look at particular documents and give you reactions to

24    those, I'm happy to do that.  But it strikes me that this

25    isn't really so much a question of -- at least at this

1    point, as to whether any of the withholdings are proper, but

2    more a question of just what the breadth of the search

3    should be.  And I'm probably less able to help on that.

4            Anything else before we adjourn, Mr. Loevy?

5            **MR. LOEVY:**  Nothing for plaintiff, Your Honor.

6    Thank you.

7            **THE COURT:**  Thank you.  Mr. Berhane, anything

8    else?

9            **MR. BERHANE:**  Nothing from defendants, Your Honor.

10           **THE COURT:**  Thanks very much.  Have a good day.

11        (Proceedings adjourned at 11:12 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **C E R T I F I C A T E**

2

3                    I, **Jeff M. Hook, Official Court Reporter**,

4        certify that the foregoing is a true and correct transcript

5        of the record of proceedings in the above-entitled matter.

6

7

8

9        __March 29, 2023__                    _____

10              **DATE**                              **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

$31,000,000 [1]
  10/18

**0**

0117 [1]   6/24

**1**

1,867 [1]   10/21
10 [1]   8/23
100 [3]   11/20 11/24
  12/8
100 percent [1]
  12/22
1054 [2]   1/4 2/2
10:19 [1]   1/7
10th [1]   26/22
11:12 a.m [1]   36/11
15 [1]   24/9
15,000 [1]   5/2
15-431 [1]   13/1
16 [1]   1/4
1993 [1]   5/21
1:21-cv-1054 [1]
  1/4

**2**

20 [1]   20/14
20,000 [1]   5/2
200 [4]   11/18 11/20
  11/24 12/8
20001 [2]   1/18 1/25
2021 [2]   26/23
  26/23
2023 [1]   1/6
203 [1]   29/9
205 [2]   29/14 29/15
206 [1]   29/17
208 [1]   29/20
209 [2]   29/20 29/20
21-1054 [1]   2/2
22-0117 [1]   6/24
27 [1]   22/19

**3**

30th [1]   35/2
31 [1]   10/3
311 [1]   1/14
333 [1]   1/24
3A [4]   29/21 29/21
  30/6 30/16
3B [4]   29/21 29/25
  30/6 30/18
3rd [2]   1/14 26/23

**4**

431 [1]   13/1
4700-C [1]   1/24

**5**

552 [1]   30/3

**6**

601 [1]   1/17
60607 [1]   1/15
63 [1]   9/19

**7**

7th [2]   35/9 35/14

**9**

90 percent [1]
  24/19
907 [1]   29/9

**A**

a.m [2]   1/7 36/11
Aberdeen [1]   1/14
able [3]   22/1 27/14
  36/3
above [1]   37/5
above-entitled [1]
  37/5
absolutely [4]   3/12
  20/19 21/3 23/14
absurd [1]   10/1
abuses [1]   23/10
academic [1]   23/8
accede [1]   14/7
acceded [1]   14/16
accept [1]   14/11
according [1]   13/7
accurately [1]   5/19
across [1]   25/6
act [1]   31/18
acting [2]   20/6
  28/13
Action [1]   1/4
activity [1]   9/14
actor [2]   23/3 23/5
actual [1]   23/5
actually [16]   3/12
  3/22 5/19 6/4 6/9
  6/13 7/7 8/10 8/12
  11/3 13/8 16/18
  25/25 26/20 26/22
  30/23
add [1]   21/25
address [6]   13/22
  20/3 20/25 21/1
  26/10 28/18
addressed [1]   25/16
addresses [1]   15/11
addressing [2]   15/7
  33/19
adequately [1]   8/9
adjourn [1]   36/4
adjourned [1]   36/11
administer [1]   4/19
adopted [1]   35/16
advance [1]   16/25
affirm [1]   30/20
again [5]   12/25
  18/6 21/1 21/11
  27/17
against [1]   13/2
agency [19]   2/13
  3/5 5/17 7/11 7/13
  7/14 13/14 13/20
  16/3 16/10 20/24
  22/1 23/16 24/21
  26/7 30/3 30/8
  30/11 30/11
agreed [1]   13/4
agreement [1]   27/20
ahead [4]   2/20 8/7
  33/3 33/19
al [2]   1/7 2/3
alleged [1]   22/13

allegedly [1]   15/1
allow [1]   6/19
almost [3]   3/16
  20/15 28/7
along [2]   15/10
  18/20
Although [1]   16/13
always [5]   4/5
  15/16 20/8 20/9
  25/4
American [3]   7/8
  25/23 29/6
Americans [1]   20/11
amongst [1]   33/5
amount [1]   20/23
analysis [2]   4/6
  6/24
anarchy [1]   23/4
animal [1]   4/22
apart [1]   33/14
apologize [1]   16/25
APPEARANCES [1]
  1/12
appellants' [1]
  30/16
applicable [1]   8/11
apply [2]   17/6 17/7
applying [1]   7/19
appoint [2]   31/15
  33/6
approach [3]   25/12
  26/24 27/7
approval [1]   4/22
April [2]   35/9
  35/14
arbitrary [1]   5/3
area [1]   18/14
argue [3]   6/1 19/25
  20/24
arguing [1]   3/13
argument [6]   2/15
  2/19 3/14 8/4 26/13
  33/21
arguments [1]   3/21
around [1]   5/24
arrange [3]   7/15
  7/15 30/12
arranging [2]   26/3
  26/9
articulate [2]   22/2
  32/7
assessing [1]   25/17
assessment [4]   15/9
  19/24 20/2 24/9
assessments [4]
  18/8 19/17 24/7
  24/14
assign [1]   9/20
assist [2]   27/12
  33/7
Assistant [1]   2/9
assume [2]   6/3 20/5
assuming [1]   16/23
asymmetry [1]   24/15
attendant [1]   30/14
Attorney [1]   2/10
August [1]   26/21
authority [1]   33/24
Avenue [1]   1/24
aware [1]   20/21

**B**

back [16]   7/9 8/16
  14/2 15/6 15/12
  17/10 21/23 24/5
  24/21 25/11 27/24
  29/3 30/22 31/6
  31/13 34/23
background [2]
  29/16 29/17
bad [1]   23/2
bang [1]   22/11
Bankruptcy [1]   1/23
based [1]   33/21
basically [1]   16/21
basis [2]   17/7
  20/23
become [1]   34/8
beginning [1]   24/25
beliefs [1]   22/6
beneficial [1]
  32/12
BERHANE [13]   1/16
  2/10 2/11 2/20
  25/11 26/12 27/23
  28/17 28/24 29/8
  32/13 35/3 36/7
best [3]   33/2 33/17
  33/23
better [7]   5/6 9/5
  11/22 22/17 32/5
  32/8 32/10
big [1]   23/12
biggest [2]   18/14
  27/18
bit [1]   13/23
bite [1]   15/13
board [1]   25/6
bog [1]   20/18
books [1]   23/9
both [5]   14/19
  30/24 31/6 31/8
  31/9
bound [3]   18/22
  18/23 33/24
boxes [2]   6/6 6/7
boy [1]   20/15
branch [1]   29/24
breadth [1]   36/2
brief [1]   3/15
briefing [5]   3/3
  6/21 14/4 14/6
  19/16
briefs [3]   7/7 11/5
  14/23
bringing [1]   22/25
brings [1]   15/6
broad [5]   13/5
  13/14 13/16 29/25
  30/10
buck [1]   22/11
burden [31]   3/4 3/9
  3/13 4/7 5/9 5/17
  6/9 6/16 7/11 7/19
  7/22 7/24 16/10
  17/13 17/14 17/15
  18/4 24/1 25/18
  25/19 26/1 26/1
  26/2 26/7 28/3 28/4
  28/10 28/11 28/19

**B**

burden... [2]  30/10
30/14
burdensome [7]  7/4
8/13 8/21 10/13
15/3 15/5 30/5
burdensomeness [1]
33/15
BUREAU [4]  1/6 2/3
29/22 30/21

**C**

calling [1]  17/20
can [39]
candor [1]  10/15
captured [1]  28/5
carefully [1]  33/25
case [46]
cases [15]  4/12
15/9 16/16 16/17
17/11 17/13 18/19
21/23 24/18 27/24
28/12 29/3 33/12
34/3 35/21
category [1]  19/13
CATO [2]  1/3 2/3
caught [1]  32/17
cause [1]  23/4
census [1]  5/1
Center [2]  6/22
12/23
centuries [1]  14/12
certain [2]  26/20
29/1
certainly [5]  4/11
12/7 12/8 12/11
24/16
certify [1]  37/4
cetera [1]  29/25
chance [1]  31/22
chaos [1]  23/4
charge [1]  20/15
chat [1]  31/23
Chicago [1]  1/15
choice [1]  11/10
choosing [1]  17/5
chronological [1]
29/22
circuit [16]  7/7
7/10 7/17 7/19
16/14 17/11 17/12
18/21 18/23 25/22
28/12 28/15 29/3
33/7 33/24 35/18
circumstance [1]
8/25
circumstances [1]
10/8
cite [5]  3/17 12/21
16/13 17/17 17/17
cited [5]  7/7 16/16
25/21 25/21 29/13
cites [2]  7/6 7/6
citing [2]  25/22
30/5
citizens [1]  21/23
Citizenship [1]
6/23
civil [3]  1/4 2/2

23/10
class [1]  30/1
clear [3]  7/18
19/12 30/9
clearly [1]  32/7
client [2]  20/9
31/23
client's [1]  34/18
clients [1]  31/7
clog [1]  23/3
close [1]  4/16
closed [1]  15/10
colleagues [1]
18/21
COLUMBIA [1]  1/1
coming [2]  23/25
24/18
Commerce [3]  5/1
7/9 25/24
common [1]  20/20
completed [2]  5/21
6/21
completely [3]  5/3
8/19 22/21
completing [1]  8/1
comply [6]  7/5 8/14
10/19 14/10 15/6
30/21
comprehensive [1]
16/17
conceded [1]  11/4
conceivably [2]  4/2
8/5
concern [2]  8/17
30/17
concerned [2]  12/14
18/21
concerns [4]  8/24
15/11 28/17 28/18
concrete [1]  22/2
conducted [1]  19/17
confer [1]  33/4
conferences [1]
22/21
Congress [4]  12/14
18/23 20/25 22/9
congressional [1]
19/21
consider [1]  25/18
consistent [3]
10/11 22/8 27/8
consists [2]  6/25
24/9
Constitution [1]
1/24
construe [1]  3/18
construed [1]  3/16
consult [1]  32/20
contemplated [2]
16/11 18/15
context [1]  31/25
continued [1]  24/17
contrary [2]  28/14
33/24
contribute [2]  9/12
10/7
control [3]  11/11
11/14 20/23
conversation [1]
32/11

copies [1]  24/13
correspondent [1]
29/23
cost [5]  9/20 10/3
10/17 10/18 21/14
costs [1]  9/8
counsel [5]  2/4 2/5
2/13 32/2 32/19
country [1]  5/25
couple [3]  20/20
34/20 35/5
course [2]  13/22
19/11
course some [1]
13/22
court [22]  1/1 1/22
1/23 3/18 6/24 7/1
7/6 7/7 7/9 7/19
7/20 13/4 13/7 14/3
25/22 25/22 26/5
28/25 34/2 35/16
35/19 37/3
court's [1]  30/20
courts [2]  1/23
25/18
cover [1]  24/11
create [1]  22/16
crime [1]  22/13
Criminal [1]  22/17
criminological [1]
27/4
criminology [1]
22/3
cross [1]  2/16
cross-motions [1]
2/16
crushing [2]  3/12
3/12
curious [3]  6/11
15/24 21/15
Customs [1]  13/1
cut [2]  26/12 32/16
cv [1]  1/4

**D**

D.C [9]  16/14 17/11
17/12 18/20 18/22
28/12 28/14 29/3
33/24
DATE [1]  37/10
day [2]  27/17 36/10
DC [3]  1/5 1/18
1/25
decade [1]  4/16
decades [1]  14/12
decide [1]  4/21
decided [5]  6/20
6/21 7/1 7/20 13/2
decision [4]  13/8
25/22 25/22 30/20
declarant [2]  10/20
11/7
declaration [2]
15/1 26/22
declarations [2]
3/7 8/1
defendant [6]  3/10
3/13 7/4 7/23 13/14
16/16
defendant's [1]

13/4
defendants [10]  1/8
1/16 2/10 2/23 3/2
4/5 4/7 15/14 32/21
36/9
defer [1]  12/4
definitions [1]
3/17
demonstrate [1]  3/9
Department [6]  4/25
5/22 6/4 7/8 25/24
29/18
describe [9]  2/24
3/18 5/8 5/16 6/2
9/1 12/16 16/5
29/19
described [18]  3/4
3/16 4/5 6/8 7/2
7/22 8/2 15/19
16/12 17/8 18/16
26/7 27/2 28/1 28/2
28/6 28/8 28/9
describes [10]  2/18
5/20 6/25 9/2 9/3
12/16 25/2 25/17
28/20 30/1
describing [1]  7/11
despite [2]  7/11
7/13
destroy [2]  8/19
19/3
detailed [1]  3/8
determined [1]
19/18
Development [2]
5/22 6/5
dictionary [2]  3/17
3/23
different [4]  18/3
18/4 24/10 33/12
difficult [3]  21/5
23/17 28/21
difficulty [1]
28/22
direct [1]  35/15
direction [1]  28/14
directly [2]  28/25
29/2
disagree [1]  15/19
disagreeing [1]
18/12
disagreement [5]
3/2 18/15 23/15
23/24 24/23
disclosure [2]  9/11
30/2
disconnect [1]  4/11
discretion [1]  17/5
discuss [1]  35/13
discussing [1]
16/18
discussions [2]
27/12 33/10
dislodging [1]
28/22
dispositive [1]
35/5
dispute [1]  30/9
distinction [1]
23/2

**D**

distinguish [1]
18/19
distinguishes [1]
16/16
district [10]   1/1
1/1 1/11 1/23 6/20
7/9 7/20 7/20 25/21
30/20
docket [2]   6/23
13/1
document [9]   5/12
6/15 6/16 9/1 9/8
20/13 21/4 21/9
21/10
documents [29]   2/18
4/18 5/4 5/13 6/10
6/14 7/12 7/25 8/9
8/11 9/4 9/19 10/5
10/23 14/13 15/20
20/14 24/8 24/10
26/25 27/2 27/6
28/1 28/4 28/9
29/19 30/2 30/6
35/23
DOJ [1]   1/17
DOJ-USAO [1]   1/17
dollars [5]   9/9 9/9
9/21 9/25 10/4
done [5]   17/16
18/11 18/11 27/10
35/21
doors [1]   22/23
doubt [2]   20/10
20/18
down [5]   20/18
23/20 25/12 26/16
33/22
drag [1]   34/19
draw [3]   5/3 6/12
10/11
dubitante [1]   29/5
during [1]   13/17
dust [1]   6/10

**E**

earlier [2]   17/22
23/2
early [1]   33/13
easier [1]   34/9
effort [2]   7/17
25/9
efforts [1]   24/17
either [3]   15/21
33/6 35/17
else [5]   8/19 8/23
34/10 36/4 36/8
employees [4]   7/8
8/22 20/13 25/23
enable [2]   7/12
30/7
enables [1]   21/23
encompassed [1]
17/8
end [3]   16/20 16/23
27/17
enforcement [4]
13/1 23/9 23/11
27/4

engage [2]   4/13
33/4
enormous [3]   5/17
6/9 6/16
enough [1]   24/15
entailed [1]   16/19
entails [2]   17/1
30/18
entered [1]   32/18
entire [1]   19/3
entirely [1]   12/22
entirety [3]   10/6
24/7 30/19
entitled [1]   37/5
equitable [1]   10/15
Es [2]   5/12 17/24
especially [1]
15/15
essentially [2]
13/3 13/15
estimate [2]   10/17
11/1
estimating [1]
10/21
et [3]   1/7 2/3
29/25
eternity [1]   19/1
even [14]   3/17 6/9
6/15 6/16 8/4 8/8
10/6 11/2 11/4 11/6
14/12 15/5 24/24
25/4
eventually [2]
23/20 25/1
everyone [1]   25/13
exactly [1]   12/17
example [7]   10/2
16/22 17/21 19/1
20/6 21/3 26/21
excessive [1]   22/12
excuse [4]   8/6
12/24 16/24 26/23
exempt [1]   11/19
exemption [1]   9/10
exorbitant [4]   7/22
7/24 13/6 26/8
expansive [3]   12/9
21/15 34/1
expensive [1]   5/5
express [1]   30/17
extensive [3]   3/8
24/4 24/16
extent [1]   11/19
external [1]   29/24
extreme [2]   16/2
16/7
extremely [1]   12/9

**F**

F.2d [1]   29/9
faced [1]   7/17
facilitate [2]   33/9
35/19
fact [2]   7/4 14/11
facts [2]   12/22
12/22
fair [1]   17/13
fairly [3]   16/14
17/12 33/14
faith [5]   13/18

20/6 23/2 23/5
26/11
fall [1]   19/13
far [3]   3/13 3/14
33/14
fashion [1]   11/16
FBI [40]
FBI's [8]   8/2 10/17
14/7 15/15 16/20
16/22 21/4 21/8
FDA [1]   4/21
FEDERAL [2]   1/6 2/3
Federation [3]   7/8
25/23 29/6
fees [1]   19/1
figure [3]   5/23
19/7 22/7
figured [1]   25/3
file [11]   6/3 11/17
11/23 21/16 24/8
24/22 29/23 29/23
30/19 32/9 35/6
filed [1]   14/3
files [4]   5/11 18/3
22/5 22/19
filing [1]   5/25
final [1]   14/2
finally [1]   10/22
find [9]   5/13 5/17
6/16 21/17 21/24
22/4 22/24 27/24
28/4
finding [1]   7/25
fine [3]   21/8 35/8
35/10
firm [1]   31/25
first [5]   2/21
11/15 19/11 19/25
28/25
Floor [1]   1/14
focusing [1]   22/5
FOIA [41]
following [1]   35/7
For the Defendants [1]
1/16
foregoing [1]   37/4
form [2]   5/20 6/6
forms [2]   5/23 5/24
forth [2]   14/2 24/5
forward [3]   11/6
14/24 33/1
foundation [1]   11/1
frankly [2]   19/5
34/2
free [2]   15/16
15/18
frequently [1]
14/20
fresh [1]   32/22
front [2]   29/6
29/11
fundamental [2]
23/15 23/23
further [1]   33/4

**G**

G-37-4 [1]   6/6
G-37-4 that [1]
5/21
General [1]   19/18

generally [1]   17/19
gets [3]   8/20 23/20
31/4
given [2]   3/23
22/13
giving [1]   3/22
glad [1]   22/25
goal [1]   31/2
Goland [1]   30/5
good [10]   2/6 2/8
2/9 2/11 2/12 13/18
20/6 23/5 26/11
36/10
Google [1]   16/22
gosh [1]   3/21
government [10]
4/13 4/16 7/8 9/14
9/17 16/13 20/18
21/22 21/24 25/23
governor [2]   19/10
20/4
grant [2]   11/8 25/5
groups [2]   19/17
20/2
guess [7]   6/11
13/22 14/23 15/14
16/1 30/25 34/12
guilty [1]   17/25

**H**

half [2]   10/4 11/2
handful [1]   34/3
handle [1]   21/1
handled [1]   31/25
happened [1]   13/3
happens [1]   12/12
happy [4]   2/18
15/25 31/15 35/24
hard [11]   4/18 4/19
5/23 6/7 10/5 12/18
19/7 27/24 28/5
28/18 30/25
harder [1]   34/8
Hate [1]   20/15
haystack [2]   17/21
18/6
head [1]   17/20
hear [2]   2/18 3/20
3/24 3/24
heard [3]   27/23
32/16 33/21
hearing [3]   1/10
20/16 32/2
heck [1]   12/18
held [1]   7/10
help [3]   31/17
35/19 36/3
helpful [2]   31/16
35/22
helping [1]   27/13
helps [1]   28/22
here's [2]   23/6
23/12
hey [1]   24/19
highest [1]   20/3
himself [1]   32/5
history [2]   23/9
29/4
hits [2]   18/13 24/1
hobbled [1]   24/25

**H**

holding [2]   28/13 29/16
honor [29]   2/6 2/9 2/22 6/18 10/14 12/4 12/20 15/25 16/8 16/15 17/16 17/22 20/4 20/21 21/2 23/1 24/3 25/5 25/15 26/18 27/6 27/17 30/4 31/22 32/15 34/11 35/1 36/5 36/9
Honor's [1]   14/9
HONORABLE [1]   1/10
HOOK [3]   1/22 37/3 37/10
hope [1]   27/22
Housing [2]   5/22 6/5
huge [1]   22/22
hundred [5]   9/8 9/9 9/20 11/13 23/14
hundreds [3]   4/14 4/23 20/10
hypothesizing [1] 6/6

**I**

ICE [3]   12/25 13/2 13/8
idea [2]   20/17 27/20
ideal [1]   33/1
ideally [1]   13/12
ideas [1]   31/23
identified [7]   8/5 8/8 16/8 17/4 18/8 26/2 28/3
identify [4]   7/13 21/5 30/6 30/8
identifying [2] 17/2 18/10
IL [1]   1/15
imagine [1]   8/25
Immigration [3] 6/22 6/23 13/1
impasse [2]   14/4 24/3
impediment [1] 27/18
important [2]   14/19 31/2
impose [3]   3/12 8/21 30/10
imposed [5]   3/5 4/7 7/10 7/18 7/23
inadequate [1]   27/8
incentive [2]   11/17 12/2
inclined [2]   14/10 15/17
include [1]   16/10
included [2]   24/5 26/1
includes [1]   25/20
indicated [2]   14/25 15/4
indicating [1]

13/24
inescapable [1] 28/8
information [2] 9/11 24/14
informed [1]   24/16
initial [9]   3/1 15/4 15/7 16/1 18/9 18/13 24/3 24/12 27/1
initially [3]   10/19 24/11 25/21
inspect [1]   10/22
inspection [4]   7/15 26/3 30/12 30/18
Inspector [1]   19/18
instance [1]   20/7
instant [1]   6/20
INSTITUTE [3]   1/3 2/3 22/17
institutional [1] 31/10 31/11 31/12
insufficient [1] 27/8
interest [9]   9/12 19/15 20/1 20/3 21/3 21/6 21/8 21/12 22/22 22/22
interesting [3] 19/5 21/18 31/24
interests [2]   31/10 31/12
internal [1]   29/23
internet [1]   32/16
interpreted [1]   4/3
into [3]   18/3 18/13 19/13
intrusive [1]   22/12
INVESTIGATION [2] 1/7 2/3
investigations [1] 19/21
investigative [5] 21/9 21/16 22/5 22/12 22/19
invite [2]   13/25 22/20
involve [2]   32/2 34/1
involved [10]   14/15 16/17 18/1 19/19 24/4 25/14 26/2 33/8 34/3 35/18
involves [1]   32/11
involving [1]   33/2
ISAAC [2]   1/16 2/10
isn't the [1]   8/16
issue [11]   2/17 13/10 14/2 14/24 18/22 25/1 26/19 33/19 33/22 34/5 34/7
issued [2]   2/23 14/3
issues [5]   13/13 14/22 19/20 25/16 27/4

**J**

JEFF [3]   1/22 37/3

37/10
joint [1]   35/14
Josh [1]   2/6
JOSHUA [1]   1/13
judge [6]   1/11 4/19 5/3 27/12 28/16 31/15
judges [2]   33/6 35/17
judgment [5]   2/16 5/11 5/12 17/24 25/6
Justice [2]   12/24 22/17

**K**

kind [17]   4/10 8/2 8/3 9/5 13/9 13/10 16/8 17/20 17/22 18/5 18/12 19/13 19/21 21/25 24/2 32/11 32/16
Kristin [1]   2/12

**L**

language [8]   4/20 12/15 16/12 16/14 17/13 18/16 27/25 30/24
largely [1]   30/15
later [1]   13/23
launched [1]   19/22
law [7]   4/4 5/7 12/5 23/9 23/10 27/3 31/8
layouts [1]   32/9
least [10]   2/25 10/10 13/6 13/7 14/25 20/22 24/12 27/19 34/17 35/25
led [1]   24/3
legislative [1] 29/4
length [1]   34/13
less [1]   36/3
level [1]   21/14
liberty [1]   23/10
lies [1]   22/10
light [4]   2/19 4/7 19/6 21/21
likely [2]   9/12 10/6
likewise [1]   32/8
limiter [1]   23/6
limiting [1]   26/20
limits [1]   20/21
line [3]   5/3 6/12 10/12
lines [2]   15/10 18/20
listening [1]   25/16
lists [1]   24/7
literal [1]   25/19
little [1]   13/23
locate [3]   7/14 29/22 30/12
located [3]   5/24 28/3 28/10
locating [3]   17/2 26/3 26/8

LOEVY [11]   1/13 1/14 1/14 2/6 2/8 15/23 17/10 31/21 33/13 34/10 36/4
long [1]   12/11
look [8]   6/2 6/3 18/19 27/24 30/22 31/7 33/25 35/23
looked [1]   17/11
looking [6]   6/14 6/22 12/23 23/3 24/19 27/9
looming [1]   27/19
lot [9]   6/15 10/10 12/18 17/25 19/5 24/5 24/14 33/12 34/2
luck [1]   11/21

**M**

magistrate [4] 27/11 31/15 33/6 35/17
main [2]   2/25 3/1
maintain [1]   18/16
maintained [1]   5/25
maintains [3]   6/5 18/17 29/18
majority [1]   9/15
makes [2]   23/16 34/25
making [1]   21/2
manage [1]   31/3
manageable [3] 23/18 23/20 25/13
manner [4]   18/3 28/2 28/9 28/14
many [8]   4/17 5/4 12/10 12/10 13/6 14/12 18/8 25/7
March [1]   1/6
material [2]   7/16 30/13
materials [2]   26/4 30/18
matter [19]   3/1 6/21 8/15 9/3 9/6 10/10 11/7 11/8 12/5 16/1 18/24 19/2 19/23 20/25 24/12 31/8 32/18 33/7 37/5
matters [1]   8/4
may [8]   9/15 11/15 13/16 20/9 21/13 28/20 31/8 33/2
maybe [10]   6/1 6/11 10/2 10/3 15/12 20/25 24/10 28/24 34/20 35/1
mean [8]   10/17 11/18 12/1 12/16 15/3 20/8 22/22 27/23
meaning [2]   3/22 3/25
means [2]   12/3 15/20
Mediation [2]   33/8 35/18

**M**

mediator [2]   31/18 31/23
mention [1]   19/16
might [6]   13/22 16/10 18/2 30/6 32/15 32/17
millennia [1]   14/12
million [4]   9/9 9/9 9/21 10/4
millions [3]   9/25 9/25 20/10
mind [3]   12/15 24/2 33/22
misconduct [1]   19/19
misrepresent [1]   3/14
misspells [1]   5/11
money [2]   16/2 22/7
month [3]   11/19 20/22 20/22
month-to-month [1]   20/22
monthly [1]   20/21
more [20]   10/10 11/23 13/9 13/19 15/2 15/11 15/22 16/17 18/1 18/5 20/3 22/12 23/18 23/20 24/15 30/14 32/7 33/17 33/25 36/2
morning [5]   2/6 2/8 2/9 2/11 2/12
MOSS [2]   1/10 22/17
most [4]   16/2 16/7 18/21 32/1
motion [4]   1/10 2/21 11/5 25/5
motions [3]   2/16 33/20 35/6
move [1]   33/1
Mr. [18]   2/8 2/11 2/20 15/23 17/10 25/11 26/12 27/23 28/17 28/24 29/8 31/21 32/13 33/13 34/10 35/3 36/4 36/7
Mr. Berhane [11]   2/11 2/20 25/11 26/12 27/23 28/17 28/24 29/8 32/13 35/3 36/7
Mr. Loevy [7]   2/8 15/23 17/10 31/21 33/13 34/10 36/4
much [6]   4/18 4/24 22/14 34/15 35/25 36/10
myself [1]   31/18

**N**

name [1]   2/4
narrow [8]   13/9 13/10 14/1 14/15 15/2 24/6 25/9 27/13
narrower [4]   11/22 13/19 14/8 15/1
narrowly [1]   33/17
natural [1]   28/7
nature [4]   10/1 11/18 22/13 27/12
necessarily [1]   11/16
necessary [2]   22/13 31/5
need [8]   16/6 24/20 24/21 25/1 25/3 28/12 30/3 30/21 18/5
needs [2]   10/12 23/16
negotiate [4]   13/9 14/20 15/22 23/19
negotiating [1]   28/23
negotiation [4]   13/18 14/16 23/17 33/16
negotiations [4]   24/4 24/25 32/23 33/4
neither [1]   30/1
New [1]   12/23
newly [1]   32/18
next [3]   8/23 9/19 20/14
noise [1]   32/16
noted [2]   25/16 25/25
notes [1]   27/1
noting [1]   26/5
number [1]   6/23
numerous [1]   13/25
NW [2]   1/17 1/24

**O**

objections [1]   13/15
objective [1]   23/5
objectives [1]   22/9
obtain [1]   8/9
obvious [1]   30/14
obviously [3]   13/18 31/2 31/10
occasions [1]   14/1
occurred [1]   22/14
off [4]   6/10 15/7 26/13 33/12
offered [3]   15/2 26/20 26/25
office [3]   29/23 29/24 29/24
officers [1]   8/22
offices [2]   5/24 18/4
official [2]   1/23 37/3
officials [1]   22/15
often [1]   21/22
once [5]   24/18 24/18 31/25 34/5 34/7
one [23]   3/25 4/15 7/1 7/3 8/19 11/22
11/23 11/23 13/12 14/13 14/22 15/9 15/9 18/25 19/22 20/20 30/15 31/19 32/6 33/6 34/16 35/17 35/21
ones [1]   11/14
only [5]   5/12 6/17 24/21 30/14 34/2
open [4]   20/16 22/23 27/16 33/10
operation [2]   9/13 10/8
operative [1]   23/7
opinion [3]   7/7 33/19 34/5
opportunity [2]   28/24 28/25
opposing [1]   32/19
opposition [1]   11/5
order [4]   8/10 9/18 11/11 11/18
original [1]   14/6
Orleans [1]   12/23
others [1]   25/25
ought [1]   31/3
out [18]   5/23 8/18 13/8 19/7 20/11 20/17 21/24 22/4 22/7 22/24 25/4 25/13 26/16 29/2 31/14 32/17 34/7 34/19
outcome [1]   32/24
outweighs [1]   21/14
over [4]   4/14 9/19 11/14 17/3
overbroad [2]   9/14 11/12
overly [6]   7/4 8/13 10/13 13/5 13/14 13/16
oversight [1]   22/14
own [4]   17/20 19/18 27/14 34/4

**P**

page [5]   24/12 29/12 29/13 29/17 29/20
pages [2]   4/14 4/24
paper [3]   5/14 9/22 18/3
paragraph [1]   29/11
paragraph you're [1]   29/11
part [4]   5/9 13/6 17/7 18/15
particular [5]   13/21 20/23 22/6 31/9 35/23
particularly [1]   23/7
parties [14]   2/19 3/21 13/18 14/14 14/19 18/12 24/23 26/16 27/14 28/22 33/14 34/3 34/13 35/13
parties' [1]   2/15
party [1]   6/20
past [1]   22/19
pause [1]   4/9
pay [8]   9/8 9/9 9/11 9/24 10/9 11/15 14/10 18/25
people [4]   12/9 19/2 20/17 22/5
per [1]   11/19
percent [2]   12/22 24/19
perhaps [4]   5/6 5/24 27/11 32/22
period [2]   4/14 19/14
perplexed [1]   27/5
person [1]   23/3
personally [1]   27/5
perspective [4]   16/20 16/22 17/1 27/19
pharmaceutical [1]   4/22
phrase [1]   21/22
pick [1]   15/9
piece [1]   5/14
pincite [2]   29/7 29/10
place [4]   3/25 22/14 23/21 33/16
placed [1]   3/9
plaintiff [42]
plaintiff's [14]   2/5 7/2 7/21 10/19 13/5 13/24 14/25 17/1 18/9 19/12 19/25 25/2 26/5 26/22
please [1]   2/4
point [16]   2/25 3/1 5/7 12/22 15/24 16/6 17/22 23/1 25/19 26/10 26/14 29/5 31/17 31/20 32/1 36/1
police [5]   9/4 9/6 10/12 12/3 13/13
political [1]   22/6
portion [1]   10/6
poses [1]   30/24
position [13]   2/23 4/4 12/12 12/13 13/4 15/15 16/23 17/18 18/17 19/12 32/6 32/8 32/10
positive [1]   32/24
possession [1]   5/14
possibility [1]   27/17
possible [3]   16/10 24/5 34/4
potential [2]   23/10 35/13
potentially [2]   19/19 20/25
practicable [1]   15/5
practical [5]   8/24 18/24 18/24 19/2 28/17

**P**

practically [1]   9/4
precedent [3]   12/6
12/7 12/9
precisely [1]   28/2
precision [4]   7/12
7/13 12/17 30/7
premise [1]   23/25
prepared [1]   21/4
preparing [1]   8/3
pretty [5]   4/18
4/19 21/17 22/2
31/7
principal [1]   32/21
principals [3]   32/2
32/12 33/2
prior [1]   14/3
proactive [1]   13/24
probably [10]   4/12
4/15 21/7 21/17
31/18 32/7 32/10
33/23 35/22 36/3
problem [4]   5/15
12/12 15/7 24/13
problems [2]   13/16
13/24
proceed [2]   14/6
34/14
proceeding [1]   14/4
proceedings [2]
36/11 37/5
process [12]   8/19
13/17 16/6 17/7
18/1 18/10 20/2
23/17 25/7 34/17
34/21 35/16
processing [6]
16/11 17/4 20/21
20/22 23/16 24/7
produce [13]   3/5
3/10 4/8 6/10 8/12
9/17 9/23 10/4
10/22 10/22 11/11
11/14 27/21
produced [3]   3/7
26/25 27/7
producible [1]
18/14
producing [4]   7/25
9/17 15/20 28/4
product [1]   4/22
production [7]   4/13
4/16 8/3 17/15
25/20 26/7 28/19
professor [1]   22/3
Program [2]   33/8
35/18
progress [1]   34/23
promotion [1]   30/17
promotion-related [1]
30/17
proper [2]   16/9
36/1
properly [1]   21/1
proposal [1]   24/16
proposals [2]   14/15
26/20
propose [1]   34/17
proposition [2]

11/6 16/14
protocol [1]   8/2
provided [2]   10/18
10/19
public [13]   9/12
9/13 10/7 19/15
20/1 20/3 21/3 21/6
21/7 21/12 21/25
22/21 23/10
pull [1]   12/24
pulled [1]   12/21
purpose [2]   11/3
30/16
purposes [1]   25/3
push [1]   35/6
put [1]   22/20
putting [2]   11/6
14/24

**Q**

quantity [4]   7/15
10/5 26/4 30/13
quarter [1]   11/2
question of [1]
35/25
quite [1]   19/4

**R**

races [1]   22/6
Racial [1]   12/23
rails [1]   33/13
raise [1]   34/10
raises [1]   28/17
raising [1]   8/24
RANDOLPH [2]   1/10
22/16
randomized [3]
26/24 27/7 32/4
rates [1]   20/22
rather [2]   34/3
34/8
rationales [1]   7/3
reach [1]   34/4
reached [1]   13/8
reactions [1]   35/23
read [5]   7/6 12/15
12/19 27/25 28/12
readily [1]   28/3
reading [7]   12/18
16/9 17/13 26/21
28/8 28/16 33/23
realistically [2]
8/13 31/7
realize [1]   31/9
realizes [1]   30/15
realizing [1]   31/7
really [14]   12/18
16/11 16/18 18/7
18/12 20/12 21/15
22/24 26/13 26/14
27/24 28/25 32/12
35/25
reason [1]   30/19
reasonable [3]   3/17
5/8 17/6
reasonably [30]
2/17 2/24 3/4 3/15
4/5 5/8 5/16 6/1
6/8 6/25 7/2 7/22
9/1 9/2 9/3 12/16

15/19 16/5 16/12
17/8 18/16 25/2
25/17 26/6 28/6
28/8 28/20 29/18
30/1 31/4
reasons [2]   15/3
16/7
rebuttal [1]   26/13
received [1]   24/13
record [6]   2/4 5/10
6/5 19/8 23/13 37/5
records [39]
redact [3]   7/14
10/22 30/12
redacting [2]   26/3
26/9
redactions [1]   17/6
refer [2]   27/11
33/7
referring [1]   17/20
regarding [2]   4/22
26/11
rejected [1]   26/24
related [1]   30/17
relating [3]   2/16
5/1 28/19
relatively [1]
34/16
released [1]   11/19
religions [1]   22/6
relying [1]   29/12
render [1]   8/19
report [6]   14/3
14/5 34/13 34/22
35/14 35/15
Reporter [3]   1/22
1/23 37/3
request [50]
requested [5]   2/18
2/25 7/12 19/16
30/7
requester [9]   8/18
17/23 18/25 21/2
21/20 23/8 27/1
27/3 31/12
requester's [1]
19/23
requesters [1]   20/5
requesting [1]   5/20
requests [24]   2/23
7/2 7/10 7/14 7/18
7/21 8/21 10/13
11/17 12/10 13/5
13/10 14/1 15/4
19/23 21/24 24/18
25/2 27/13 29/21
30/6 30/9 30/21
30/23
require [4]   4/12
29/22 30/11 35/13
required [6]   3/24
7/14 8/14 9/11
16/18 30/2
requirement [2]
25/18 28/6
requires [3]   6/15
18/5 30/4
reread [1]   29/3
research [1]   32/6
researchers [1]

22/20
resolution [3]
10/15 34/4 35/13
resolve [3]   31/19
32/22 34/9
resource [1]   22/18
respect [1]   33/15
respond [4]   11/13
13/15 13/20 16/3
response [1]   8/20
responses [1]   12/11
responsive [8]   3/6
3/10 4/8 8/3 11/25
18/9 18/10 26/25
restrictor [1]
23/12
result [1]   23/18
retrieve [1]   8/10
review [9]   7/14
8/11 10/4 10/22
17/15 17/19 28/19
30/12 35/20
reviewed [3]   11/18
12/5 28/11
reviewing [4]   20/24
26/3 26/9 28/4
right [11]   6/12
10/9 10/24 16/4
17/17 21/7 21/22
23/11 26/1 29/15
31/1
risk [1]   30/24
risks [1]   31/8
Room [1]   1/24
rule [2]   4/17 4/18
ruling [1]   7/3
run [1]   16/21

**S**

same [2]   15/3 19/13
sample [1]   32/4
sampling [2]   26/24
27/7
satisfy [1]   9/16
saying [8]   3/21
5/10 5/15 8/4 8/10
14/20 19/4 24/19
scenario [1]   28/5
scope [1]   23/20
scraps [1]   9/22
search [15]   5/13
16/19 16/20 16/23
16/24 17/1 17/3
17/7 17/14 18/1
18/4 25/19 25/20
30/5 36/2
searches [2]   16/17
17/21
searching [1]   18/5
second [4]   4/10
8/16 15/1 26/10
section [3]   29/16
29/17 30/3
seeking [4]   5/1 5/4
6/9 29/19
seem [2]   9/3 14/19
seemed [1]   17/19
seems [5]   5/3 6/17
10/10 18/14 28/7
sees [1]   17/12

**S**

send [2]   31/6 31/13
senior [1]   22/15
sense [3]   13/5
33/11 34/25
sensible [6]   12/13
13/19 15/22 25/12
26/17 27/13
September [2]   26/22
26/23
September 10th [1]
26/22
September 3rd [1]
26/23
serious [2]   19/20
19/20
serve [3]   5/9 11/12
12/9
served [2]   11/3
11/22
Services [1]   6/23
serving [1]   19/3
set [2]   20/21 34/20
settlement [1]
27/12
shed [1]   19/5
sheds [1]   21/21
show [1]   21/20
showing [1]   21/21
side [3]   3/21 14/21
32/20
sides [2]   30/24
31/9
significant [3]
19/15 21/6 22/22
significantly [2]
9/13 10/7
similarly [1]   29/25
simply [2]   7/4 19/3
single [3]   5/14
5/25 19/8
sit [2]   25/12 26/16
sizes [1]   15/13
solution [2]   18/25
33/18
solutions [1]   24/6
somebody [2]   9/20
20/11
someone [7]   4/21
4/25 5/13 8/25
20/17 33/8 35/17
somewhat [1]   31/11
soon [1]   34/16
sorry [3]   8/6 26/12
32/15
sort [6]   10/25 13/9
18/5 24/11 24/25
27/19
sought [1]   9/15
sound [1]   10/15
speak [1]   32/3
specific [4]   19/15
19/23 24/8 26/15
specifically [2]
3/10 20/4
spend [1]   25/7
spending [4]   20/13
22/7 22/8 22/10
spot [1]   24/1

staff [1]   29/24
stage [1]   21/19
stand [1]   2/19
standard [2]   9/16
17/8
start [7]   2/20 4/1
9/16 15/20 23/16
23/24 24/24
started [2]   15/7
23/1
starting [2]   2/5
9/21
state [2]   2/4 3/1
STATES [3]   1/1 1/11
12/25
stating [1]   13/15
status [6]   14/2
14/5 34/13 34/22
35/14 35/15
statute [13]   3/22
3/25 4/1 9/10 10/11
12/14 12/19 16/9
16/12 17/9 27/25
28/16 33/23
statutes [1]   4/3
statutory [1]   4/20
stay [3]   33/3 34/12
35/12
steps [2]   15/8 17/3
stick [1]   20/12
still [6]   13/7 15/2
18/16 21/20 25/9
29/17
straight [1]   14/6
Street [2]   1/14
1/17
stretch [1]   12/15
strikes [2]   28/21
35/24
Studies [2]   6/22
22/17
study [1]   22/4
stuff [1]   22/4
subject [1]   30/2
submitted [1]   5/21
substance [1]   11/4
substantial [2]
10/6 20/1
substantive [1]
16/4
sufficient [3]   7/12
12/3 30/7
suggested [1]   21/2
suggesting [1]
18/20
suggestion [3]
31/17 31/21 33/9
suit [1]   14/15
summary [2]   2/16
25/6
super [1]   35/22
suppose [7]   11/10
14/9 14/13 15/20
29/4 30/23 33/21
supposed [1]   4/20
sure [9]   12/5 15/25
16/15 19/9 20/19
21/19 22/25 28/13
34/7
surveillance [1]

23/9
sweeping [2]   16/14
17/12
sweet [1]   24/1
system [4]   6/1 19/3
23/3 32/9
systems [1]   18/3

**T**

tailored [1]   33/17
talking [3]   6/16
17/14 19/17
targeted [1]   11/23
task [1]   8/13
teams [1]   20/13
telling [3]   22/9
34/6 34/21
tells [1]   6/13
tens [2]   4/13 4/23
term [3]   3/4 3/15
16/21
terms [6]   3/19
16/24 18/9 26/8
34/11 34/12
terribly [4]   5/23
19/7 33/11 34/1
tether [1]   4/19
tethered [2]   3/4
6/17
textual [5]   8/15
9/2 9/6 10/10 16/9
Thanks [1]   36/10
thereabouts [1]
10/18
though [2]   6/9 7/24
thought [1]   7/18
thousands [3]   4/14
4/23 4/24
tied [1]   30/16
timely [1]   11/16
title [1]   24/11
today [3]   15/7 25/5
27/23
tools [1]   22/12
topic [1]   19/23
tough [1]   11/21
transcript [2]   1/10
37/4
transformed [1]
18/13
tried [1]   14/20
true [6]   11/7 15/18
20/8 20/10 20/19
37/4
try [4]   5/17 20/22
24/6 25/12
trying [1]   16/2
turn [1]   5/9
twice [1]   31/25
two [5]   3/7 5/12
17/23 25/16 35/1
type [2]   15/9 16/24
typo [1]   21/5

**U**

U.S [2]   1/23 2/10
U.S.C [1]   30/3
ultimately [5]   3/8
7/1 13/2 23/18 31/2
uncommon [1]   33/14

under [3]   10/8 16/3
28/19
understandings [1]
4/4
understood [3]   4/6
6/18 6/25
understood to [1]
6/25
underway [1]   19/21
undoubtedly [1]
10/25
undue [2]   28/10
28/11
unfortunately [2]
17/25 33/13
union [1]   29/19
UNITED [3]   1/1 1/11
12/25
universe [1]   18/10
unless [1]   23/25
unnecessary [1]
30/15
unreasonable [4]
7/11 7/18 26/6
30/10
unreasonableness [1]
30/13
unreasonably [1]
30/4
up [6]   8/16 9/17
21/22 21/24 22/23
23/1
update [1]   34/23
upon [2]   7/23 30/11
Urban [2]   5/22 6/5
USAO [1]   1/17
use [3]   16/21 23/13
25/10
used [3]   17/22
17/23 20/2
useful [1]   31/5
using [1]   22/11
usually [3]   3/20
3/23 3/24
utilize [1]   27/3

**V**

valuable [1]   32/1
value [2]   32/3 32/4
various [1]   27/3
vast [5]   7/15 9/15
10/4 26/4 30/13
vastly [1]   11/12
versus [3]   6/15
12/25 17/14
vetting [1]   17/4
Vidovich [1]   2/13
view [3]   15/19 16/8
25/19
voice [1]   16/24

**W**

wait [4]   9/24 11/24
12/10 19/1
waiting [1]   34/18
wants [3]   23/12
25/10 27/2
warehouse [2]   6/4
6/7
Washington [3]   1/5

**W**

Washington... [2]
 1/18 1/25
way [19]  5/6 5/13
 6/12 9/5 10/12
 10/12 13/12 14/13
 14/14 16/4 22/2
 27/13 28/13 30/16
 31/19 33/2 34/6
 34/7 35/19
ways [3]  22/8 22/10
 28/20
week [3]  16/25 35/6
 35/7
weeks [2]  34/20
 35/1
weigh [1]  15/23
weighing [1]  21/13
welcome [1]  26/14
what's [5]  11/24
 16/11 18/11 22/24
 23/6
who's [1]  23/3
why is [1]  14/18
withdraw [1]  11/23
withholdings [3]
 8/11 25/20 36/1
without [5]  11/1
 24/7 28/10 28/11
 29/2
wonder [2]  10/24
 11/3
wondering [2]  4/10
 9/5
word [2]  5/11 17/24
words [2]  3/22 3/25
work [9]  18/11
 24/14 25/10 25/13
 26/16 31/13 34/2
 35/3 35/9
worked [2]  23/22
 32/19
Workers' [1]  12/23
working [1]  8/22
works [1]  22/1
world [2]  12/2 25/8
worth [1]  28/12
worthless [1]  9/22
writes [1]  23/8
writing [3]  23/8
 23/13 27/3
wrote [1]  12/14

**Y**

year [1]  15/9
years [15]  4/15
 8/23 9/19 9/24 9/24
 10/21 11/13 11/20
 11/24 12/8 12/10
 20/14 22/19 23/14
 25/7